**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MATTRESS FIRM, INC., *et al.*,[1] | Case No. 18-12241 (CSS) |
| Debtors. | (Jointly Administered) |
|  | Ref. Docket No. 16 |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF BANKRUPTCY CODE AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING AUTOMATIC STAY; (V) SCHEDULING FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**DIP Motion**"), dated October 5, 2018, of Mattress Firm, Inc. (the "**Borrower**") and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court, District of Delaware (the "**Local Rules**") seeking, among other things:

    i.    authorization for the Borrower to obtain a first priority senior secured asset-based debtor in possession credit facility (the "**ABL DIP Facility**") consisting of up to $150 million in revolving credit commitments (the commitments thereunder the "**Revolving DIP Commitments**" and the loans thereunder the "**Revolving DIP Loans**"),

---

[1] The last four digits of Mattress Firm, Inc.'s federal tax identification number are 6008. The Debtors' mailing address is 10201 S. Main Street, Houston, Texas 77025. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. This information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq.com/MattressFirm or by contacting counsel for the Debtors.

Error!

which shall include (a) a roll up of all outstanding Prepetition ABL Credit Agreement Indebtedness (as defined below) upon entry of this Interim Order, (b) a $15,000,000 swing line sub-facility, and (c) an amount equal to $30,000,000 of the Revolving DIP Commitments available in the form of standby letters of credit, inclusive of all outstanding letters of credit existing under the Prepetition ABL Credit Agreement (as defined herein) converting to letters of credit under the ABL DIP Facility, provided by Barclays Bank PLC ("**Barclays**"), as administrative agent and co-collateral agent (in such capacity, the "**ABL DIP Admin Agent**") and Citizens Bank, N.A., as co-collateral agent ( together with Barclays, the "**ABL DIP Co-Collateral Agents**" and together with the ABL DIP Admin Agent, the "**ABL DIP Agents**"), and the lenders thereunder (collectively, and together with Barclays, in such capacity, the "**ABL DIP Lenders**");

     ii.    authorization for the Debtors to enter into the ABL DIP Facility, and approving the terms and conditions thereof, as set forth in this Interim Order and the ABL DIP Agreement (as defined herein) entered into, by and among the Borrower, Mattress Holding Corp. ("**Holdings**"), certain U.S. subsidiaries of Holdings as guarantors, the ABL DIP Agents, and the ABL DIP Lenders (substantially in the form attached hereto as **Exhibit 1**, and as hereafter amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**ABL DIP Agreement**," and, together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "**ABL DIP Documents**"), including, without limitation, any fee letters executed by the Debtors,

the ABL DIP Agents, and the ABL DIP Lenders, as necessary (collectively, the "**ABL Fee Letters**");

iii.     authorization for the Debtors to execute and deliver the ABL DIP Agreement and the other ABL DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

iv.     authorization for the ABL DIP Agents to terminate the ABL DIP Agreement in accordance with the terms thereof;

v.     subject to entry of the Final Order (as defined herein), authorization to grant liens to the ABL DIP Agents and ABL DIP Lenders on all of the proceeds or property recovered (collectively, the "**Avoidance Proceeds**") on account of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code (collectively, the "**Avoidance Actions**");

vi.     allowance of the ABL DIP Superpriority Claims (as defined herein) in favor of the ABL DIP Agents and the ABL DIP Lenders;

vii.     authorization for the Borrower to obtain a second priority senior secured term loan debtor in possession credit facility (the "**Term Loan DIP Facility**" together with the ABL DIP Facility, the "**DIP Facilities**") consisting of up to $100 million in term loan credit commitments (the commitments thereunder the "**Term Loan DIP Commitments**" together with the ABL DIP Commitments, the "**DIP Commitments**" and the loans thereunder the "**Term DIP Loans**" together with the ABL DIP Loans, the "**DIP Loans**")), provided by Barclays, as administrative agent and collateral agent (in such capacity, the "**Term Loan DIP Agent**") (collectively, the Term Loan DIP Agent,

Error!

with the ABL DIP Agents, the "**DIP Agents**"), and the lenders thereunder (collectively, and together with Barclays, in such capacity, the "**Term Loan DIP Lenders**" and together with the ABL DIP Lenders, the "**DIP Lenders**");

      viii.     authorization for the Debtors to enter into the Term Loan DIP Facility, and approving the terms and conditions thereof, as set forth in this Interim Order and the Term Loan DIP Agreement (as defined herein) entered into, by and among the Borrower, Holdings, certain U.S. subsidiaries of Holdings as guarantors, the Term Loan DIP Agent, Co-Collateral Agents and the Term Loan DIP Lenders (substantially in the form attached hereto as **Exhibit 2**, and as hereafter amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**Term Loan DIP Agreement**," together with the ABL DIP Agreement, the "**DIP Agreements**") and, together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, (collectively, the "**Term Loan DIP Documents**" together with the ABL DIP Documents, the "**DIP Documents**"), including, without limitation, any fee letters executed by the Debtors, the Term Loan DIP Agent, and the Term Loan DIP Lenders, as necessary (collectively, the "**Term Loan Fee Letters**" and together with the ABL Fee Letters, the "**Fee Letters**");

      ix.     authorization for the Debtors to execute and deliver the Term Loan DIP Agreement and the other Term Loan DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

x.      approving that certain DIP Intercreditor Agreement by and between the ABL DIP Admin Agent, the Term Loan DIP Agent and the Co-Collateral Agents, as amended and in effect from time to time (the "**DIP Intercreditor Agreement**");

xi.      authorization for the Term Loan DIP Agent to terminate the Term Loan DIP Agreement in accordance with the terms thereof;

xii.      subject to entry of the Final Order (as defined herein), authorization to grant liens to the Term Loan DIP Agent and Term Loan DIP Lenders on the Avoidance Proceeds;

xiii.      allowance of the Term Loan DIP Superpriority Claims (as defined herein) in favor of the Term Loan DIP Agent and the Term Loan DIP Lenders;

xiv.      authorization, subject to the terms and provisions hereof, for the Debtors to use, among other things, Cash Collateral (as defined herein), within the meaning of section 363(a) of the Bankruptcy Code;

xv.      the granting of adequate protection to the (a) lenders under the Prepetition ABL Credit Agreement (as defined herein), and (b) lender under the Prepetition Second Lien Term Loan Credit Agreement (as defined herein);

xvi.      subject to and only effective upon the entry of a Final Order granting such relief, (a) the waiver by the Debtors of any right to surcharge against the DIP Collateral (as defined herein), including pursuant to section 506(c) of the Bankruptcy Code or otherwise, (b) providing that the Prepetition Secured Parties are not subject to the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code, and (c) providing that the Prepetition Secured Parties (as defined herein) are not subject to the

equitable doctrine of "marshaling," or any other similar doctrine with respect to the DIP Collateral;

xvii.     pursuant to Bankruptcy Rule 4001(c)(2), requesting an interim hearing on the DIP Motion be held before this Court to consider entry of this interim order (the "**Interim Order**") (A) (i) authorizing the Borrower, on an interim basis, to borrow under the ABL DIP Facility an amount not to exceed $65,000,000 (the "**Interim ABL Commitment Amount**"), and (ii) authorizing the Borrower, on an interim basis, to borrow under the Term Loan DIP Facility an amount not to exceed $100,000,000 (the "**Interim Term Loan Commitment Amount**" and together with the Interim ABL Commitment Amount, the "**Interim Order Commitment Amount**"), which amounts shall be accessed to effectuate the roll up of all existing outstanding obligations under the Prepetition ABL Credit Agreement, and to meet the Debtors' working capital and other needs pending the final hearing and as set forth in the Budget (as defined herein), (B) authorizing the Debtors' use of Cash Collateral, and (C) granting the adequate protection and other relief described therein;

xviii.     scheduling a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") approving the DIP Motion and approving the Debtors' notice with respect thereto; and

xix.     granting related relief.

The Court having held an interim hearing pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) (the "**Interim Hearing**") to consider the relief requested in the DIP Motion; and upon the record of the Interim Hearing and upon the Court's consideration of the DIP Motion and all

**Error!**

6

exhibits thereto; and upon the First Day Declaration and the Savini Declaration; and upon due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[2]

A.     Petition Date:    On October 5, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.  No official committee of unsecured creditors (upon any appointment thereof, the "**Committee**") as provided for under section 1102 of the Bankruptcy Code has been appointed.

B.     Jurisdiction.  This Court has core jurisdiction over these Cases, this DIP Motion, and the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

C.     Notice.  The notice given by the Debtors of the DIP Motion and the Interim Hearing was proper, timely, and adequate and sufficient notice under the circumstances and complies with Bankruptcy Rules 4001(b) and (c).

D.     Debtors' Stipulations.  Without prejudice to the rights of any other party in interest (but subject to the limitations thereon contained in paragraph 31 below), the Debtors admit, stipulate and agree that:

---

[2]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Error!

(a)     Prepetition ABL Credit Agreement and Prepetition Term Loan Credit Agreement.

(i)     The Borrower, Holdings and the Guarantors (collectively, the "**Prepetition ABL Credit Parties**"), Barclays Bank PLC, as administrative agent (in such capacities, the "**Prepetition ABL Agent**"), and the lenders from time to time party thereto (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agent, the "**Prepetition ABL Secured Parties**"), are party to that certain ABL Credit Agreement, dated as of December 22, 2017 (as the same has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified prior to the Petition Date, the "**Prepetition ABL Credit Agreement**") and, together with all agreements, documents, certificates and instruments delivered or executed from time to time in connection therewith (including the Prepetition ABL Security Agreement (as defined below)), as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, the "**Prepetition ABL Documents**").

(ii)     As of the Petition Date, the outstanding aggregate principal amount under the Prepetition ABL Credit Agreement was not less than $100,226,151, consisting of $86,781,250 in revolving loans and $13,444,901 in letters of credit (together with all other outstanding Obligations, as defined in the Prepetition ABL Credit Agreement, including interest, fees and expenses, the "**Prepetition ABL Credit Agreement Indebtedness**").

(iii)     To secure the Prepetition ABL Credit Agreement Indebtedness, the Prepetition ABL Credit Parties and the Prepetition ABL Agent entered into that certain Security Agreement, dated as of December 22, 2017 (as amended, and together with any

Error!

ancillary collateral documents, the "**Prepetition ABL Security Agreement**"), pursuant to which the Prepetition ABL Credit Parties granted to the Prepetition ABL Agent, for the benefit of such agent and the Prepetition ABL Lenders, valid, binding, perfected, first priority security interests in and continuing liens (the "**Prepetition ABL Credit Agreement Liens**") on substantially all of their assets and property including the Collateral (as defined in the Prepetition ABL Credit Agreement), which includes, without limitation, Mortgaged Properties (as defined in the Prepetition ABL Credit Agreement), Pledged Collateral and Article 9 Collateral  (each as defined in the Prepetition ABL Security Agreement), all collateral as defined in any other Collateral Document (as defined in the Prepetition ABL Credit Agreement) and Cash Collateral (as defined herein) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition ABL Credit Agreement Collateral**").

(iv)    The Borrower, Holdings and the Guarantors (collectively, the "**Prepetition Term Loan Credit Parties**" together with the Prepetition ABL Credit Parties, the "**Prepetition Credit Parties**"), Steinhoff International Holdings N.V., as the second lien representative and second lien lender thereunder (the "**Second Lien Representative**," together with the Prepetition ABL Agent, the "**Prepetition Agents**" and together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**"), are party to that certain Term Loan Credit Agreement, dated as of March 26, 2018 (as the same has been and may be amended, restated, amended and restated, refinanced, replaced, supplemented, or otherwise modified prior to the Petition Date, the "**Prepetition Term Loan Credit Agreement**") and, together with all agreements,

Error!

documents, certificates and instruments delivered or executed from time to time in connection therewith (including the Prepetition Term Loan Security Agreement (as defined below)), as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, the "**Prepetition Term Loan Documents**", together with the Prepetition ABL Documents, the "**Prepetition Credit Documents**").

(v)     As of the Petition Date, the outstanding aggregate principal amount of term loans under the Prepetition Term Loan Credit Agreement was not less than $83,016,555.31 (together with all other outstanding obligations including all accrued and unpaid interest, fees, costs, charges, premiums and expenses, the ("**Prepetition Term Loan Credit Agreement Indebtedness**" together with the Prepetition ABL Credit Agreement Indebtedness, the "**Prepetition Credit Agreement Indebtedness**")).

(vi)     To secure the Prepetition Term Loan Credit Agreement Indebtedness, the Prepetition Term Loan Credit Parties and the Second Lien Representative entered into that certain Second Lien Security Agreement, dated as of March 26, 2018 (as amended, and together with any ancillary collateral documents, the "**Prepetition Term Loan Security Agreement**"), pursuant to which the Prepetition Term Loan Credit Parties granted to the Second Lien Representative, for the benefit of such representative and the lenders, valid, binding, perfected, second priority security interests in and liens (the "**Prepetition Term Loan Credit Agreement Liens**" together with the Prepetition ABL Credit Agreement Liens, the "**Prepetition Credit Agreement Liens**") on the Prepetition ABL Credit Agreement Collateral (subject to certain excluded collateral as set forth in the Prepetition Term Loan Security Agreement and other related

Error!

collateral documents), subject in all respects to the first priority liens of the Prepetition ABL Administrative Agent on such collateral (the "**Prepetition Term Loan Credit Agreement Collateral**" and together with the Prepetition ABL Credit Agreement Collateral, the "**Prepetition Credit Agreement Collateral**").

(vii)    The Prepetition ABL Administrative Agent and the Second Lien Representative entered into that certain Prepetition Intercreditor Agreement dated as of March 26, 2018 (the "**Prepetition Intercreditor Agreement**") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors and other obligors.  Each of the Prepetition Credit Parties under the Prepetition Credit Documents acknowledged and agreed to the Prepetition Intercreditor Agreement.

(b)    The Prepetition ABL Credit Agreement Indebtedness constitutes the legal, valid and binding obligations of the Prepetition ABL Credit Parties, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition ABL Credit Agreement Indebtedness is subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(c)    The Debtors acknowledge and agree that as of the Petition Date: (i) the Prepetition ABL Credit Agreement Liens and the Prepetition ABL Credit Agreement Indebtedness were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Lenders; (ii) the Prepetition ABL Credit Agreement Liens were senior in priority over any and all other liens in the Prepetition ABL Credit Agreement Collateral; (iii) no offsets, recoupments, challenges, objections, defenses,

Error!

claims, or counterclaims of any kind or nature to any of the Prepetition ABL Credit Agreement Liens or Prepetition ABL Credit Agreement Indebtedness exist, and no portion of the Prepetition ABL Credit Agreement Liens, Prepetition ABL Credit Agreement Indebtedness or any amounts paid to the Prepetition ABL Secured Parties or applied to the obligations owing under the Prepetition ABL Documents prior to the Petition Date is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, subordination (equitable or otherwise), recovery, attack, offset, contest, objection, reclassification, reduction or counterclaim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtors and their estates have no claims, objections, challenges, defenses, setoff rights, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Credit Agreement; and (v) the Prepetition ABL Credit Agreement Indebtedness constitutes an allowed, secured claim within the meaning of sections 502 and 506 of the Bankruptcy Code.

(d)     The Prepetition Term Loan Credit Agreement Indebtedness constitutes the legal, valid and binding obligations of the Prepetition Term Loan Credit Parties, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Term Loan Credit Agreement Indebtedness is subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

Error!

(e)    The Debtors acknowledge and agree that as of the Petition Date: (i) the Prepetition Term Loan Credit Agreement Liens and the Prepetition Term Loan Credit Agreement Indebtedness were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Second Lien Representative; (ii) the Prepetition Term Loan Credit Agreement Liens were senior in priority over any and all other liens in the Prepetition Term Loan Credit Agreement Collateral (other than the first priority Prepetition ABL Credit Agreement Liens); (iii) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Credit Agreement Liens or Prepetition Term Loan Credit Agreement Indebtedness exist, and no portion of the Prepetition Term Loan Credit Agreement Liens or Prepetition Term Loan Credit Agreement Indebtedness or any amounts paid to the Second Lien Representative or applied to the obligations owing under the Prepetition Term Loan Documents prior to the Petition Date is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, subordination (equitable or otherwise), recovery, attack, offset, contest, objection, reclassification, reduction or counterclaim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iv) the Debtors and their estates have no claims, objections, challenges, defenses, setoff rights, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Second Lien Representative or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Credit Agreement; and (v) the Prepetition Term Loan Credit Agreement Indebtedness constitutes an allowed, secured claim within the meaning of sections 502 and 506 of the Bankruptcy Code.

Error!

(f)    Subject to entry of the Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns hereby unconditionally, irrevocably and fully, forever waives, discharges, and releases (i) any right to challenge any of the Prepetition Credit Agreement Indebtedness, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Credit Agreement Indebtedness and (ii) each of the Prepetition Agents and the other Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accounts, attorneys, affiliates, and predecessors in interest of any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Credit Documents or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of state or federal law and any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Prepetition Secured Parties and Prepetition Agents.

(g)    <u>Prepetition Intercreditor Agreement</u>.    Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Credit Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of

Error!

the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and the modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth herein or therein.    The DIP ABL Credit Facility is deemed a "refinancing" of the First Lien Credit Agreement Obligations as such term is used in the Prepetition Intercreditor Agreement, and the roll-up of the First Lien Credit Agreement Obligations (as defined in the Prepetition Intercreditor Agreement) pursuant to the Interim Order does not constitute a "Discharge of First Lien Obligations" (as defined in the Prepetition Intercreditor Agreement)

(h)    Subject to paragraph 31 hereof, the Debtors' acknowledgements, stipulations and releases (as set forth in this paragraph) shall be binding on the Debtors and their respective representatives, successors and assigns, and on each of the Debtors' estates, all creditors thereof and each of their respective representatives, successors and assigns, including, without limitation, any trustee or other representative appointed in the Cases, whether such trustee or representative is appointed in chapter 7 or chapter 11.

E.    <u>Findings Regarding DIP Facilities and Use of Cash Collateral</u>.

(a)    Good cause has been shown for the entry of this Interim Order.

(b)    The Debtors have an immediate and critical need to obtain the DIP Facilities and to use Cash Collateral as well as other collateral to continue the operation of their businesses.  Without such funds, the Debtors will not be able to meet their payroll obligations or to pay operating and other expenses during this critical period.  The ability of the Debtors to

Error!

finance their operations through the incurrence of new indebtedness is vital to the preservation and maintenance of the going concern value of the Debtors' estates and necessary to avoid immediate and irreparable harm to the estates.

(c)    The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code.

(d)    The DIP Agents and the DIP Lenders are willing to provide the DIP Facilities, and the Prepetition Secured Parties are willing to consent to the use of their Cash Collateral and other collateral, subject to the terms and conditions set forth in the DIP Documents and the provisions of this Interim Order, as applicable, and provided that the DIP Liens, the DIP Superpriority Claims and other protections granted by this Interim Order and the DIP Documents will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facilities and the Cash Collateral use approved by this Interim Order. The DIP Agents and the DIP Lenders have acted in good faith in agreeing to provide the DIP Facilities approved by this Interim Order and to be further evidenced by the DIP Documents, and the Prepetition Secured Parties have acted in good faith in consenting to the Debtors' use of their Cash Collateral and other collateral pursuant to the terms of this Interim Order, and their reliance on the assurances referred to above is in good faith.

(e)    Among other things, entry of this Interim Order will minimize disruption of the Debtors' businesses and operations by enabling them to meet payroll and other critical

Error!

expenses, including vendor and professional fees.  The DIP Facilities and the use of Cash Collateral as set forth herein are vital to avoid immediate and irreparable loss or harm to the Debtors' estates, which will otherwise occur if immediate access to the DIP Facilities and to the use of Cash Collateral is not obtained.  Consummation of the DIP Facilities and the use of Cash Collateral pursuant to the terms of this Interim Order therefore are in the best interests of the Debtors' estates.

(f)      The DIP Documents and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, the Term Loan DIP Lenders, the backstop parties (the "**Backstop Parties**") under that certain backstop commitment letter (the "**Backstop Commitment Letter**"), the steering committee of the Backstop Parties (the "**Backstop Group**"), and the Prepetition Secured Parties, respectively, among others, and the terms of the ABL DIP Facility, the Term Loan DIP Facility and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. All of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facilities and the DIP Documents including without limitation, all loans, including the roll up of the Prepetition ABL Credit Agreement Indebtedness, made to, guarantees issued by, and all letters of credit issued (or deemed issued) for the account of, the Debtors pursuant to the DIP Documents, and any other obligations under the DIP Documents, including bank products and hedging obligations (individually, the "**ABL DIP Obligations**" and the "**Term Loan Obligations**", and collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their

Error!

17

affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal.

(g)    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). The permission granted herein on an interim basis to use Cash Collateral and to enter into the DIP Documents and to borrow an amount up to the Interim Order Commitment Amount is necessary to avoid immediate and irreparable harm to the Debtors and their estates. This Court concludes that entry of this Interim Order is in the best interests of the Debtors and their estates and creditors as its implementation will, among other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value of their assets.

(h)    To the extent necessary, the Prepetition Secured Parties have either consented to the DIP Facilities and the Debtors' use of the Prepetition Credit Agreement Collateral, including Cash Collateral, or their respective interests therein are being adequately protected by, among other things, the adequate protection described by this Interim Order. This Court concludes that the adequate protection provided to the Prepetition Secured Parties hereunder for, among other things, the Debtors' incurrence of the DIP Obligations on a priming basis, as described herein, and the Debtors' use of the Prepetition Credit Agreement Collateral, including Cash Collateral, is consistent with and authorized by sections 361, 362, 363, and 364 of the Bankruptcy Code.

F.    <u>Filing of Plan of Reorganization</u>.    On the Petition Date, the Debtors filed the Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and its Debtor

Error!

18

Affiliates (as it may be amended, modified, or supplemented from time to time, the "**Plan**").  The Plan provides, among other things, that no class of claims is impaired under the Plan.

G.    Exit Commitment Letter.  The Debtors acknowledge and agree that the exit commitment letter ("**Exit Commitment Letter**"), as amended, is in full force and effect as a prepetition agreement of the Debtors; provided, for the avoidance of doubt, that administrative expense priority with respect to claims under the Exit Commitment Letter (including, without limitation, claims under the related exit fee letter) remains subject to entry of an order of the Court.

H.    Based on the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    Approval of DIP Motion.  The DIP Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order and the DIP Documents; *provided, however,* that if there are any inconsistencies between the terms of this Interim Order and the DIP Documents, the terms of this Interim Order shall govern.  Any objections or responses to the relief requested in the DIP Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the Final Hearing.  This Interim Order shall become effective immediately upon its entry.

2.    Authorization of DIP Facilities and DIP Documents.

(a)    The Debtors are hereby authorized to execute, issue, deliver, enter into and adopt, as the case may be, the ABL DIP Agreement, all ABL DIP Documents, the Term Loan

Error!

DIP Agreement and all Term Loan DIP Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Budget (as defined herein). The Borrower is hereby authorized to borrow money under the ABL DIP Facility and the Term Loan DIP Facility, on an interim basis, up to the Interim Order Commitment Amount. The ABL DIP Facility and the Term Loan DIP Facility are each hereby approved on an interim basis. The Debtors that are Guarantors are hereby authorized to guaranty such borrowings and the other DIP Obligations, all in accordance with the terms of this Interim Order, the DIP Agreements, and all other DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and, without further application to the Court, to pay all fees referred to in this Interim Order, the ABL DIP Agreement, the ABL DIP Documents, the Term Loan DIP Agreement and the Term Loan DIP Documents including, without limitation, the reasonable and documented fees and out-of-pocket expenses of the professionals of the (i) DIP Agents and the DIP Lenders, including Paul Hastings LLP, Richards, Layton & Finger LLP, Morgan, Lewis & Bockius LLP, and Berkeley Research Group LLC, and (ii) the Backstop Group including Latham & Watkins LLP, PJT Partners, and Ashby & Geddes, P.A. (the "**Backstop Group Professionals**") and (iii) the Prepetition ABL Secured Parties (subject to the same procedures, including with respect to the ability to object, provided for in paragraph 21(d) regarding payment of the fees and expenses of the Prepetition Secured Parties).

(c)    Subject to the provisions contained in paragraph 37 hereof, the Debtors are further hereby authorized to execute, deliver and perform one or more amendments or

Error!

modifications to the ABL DIP Documents and/or Term Loan DIP Documents for the purpose of adding additional financial institutions as ABL DIP Lenders and/or Term Loan DIP Lenders and reallocating the commitments for the ABL DIP Facility among the ABL DIP Lenders and/or the Term Loan DIP Facility among the Term Loan DIP Lenders, in each case in such form as the Debtors, the ABL DIP Agents and the ABL DIP Lenders or the Term Loan DIP Agent and the Term Loan DIP Lenders, as applicable, may agree (it being understood that no further approval of this Court shall be required for non-material amendments to the ABL DIP Documents and/or the Term Loan DIP Documents).

(d)     Subject to the provisions contained in paragraph 37 hereof, material amendments to either of the DIP Agreements or modifications of the Budget (as defined herein) shall be filed with the Court and served upon counsel to the Committee (if any), the Prepetition Agents, those persons who have formally appeared and requested service in the Cases pursuant to Bankruptcy Rule 2002 and the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

3.      <u>Binding Effect</u>.   Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with their terms.   No obligation, payment, transfer or grant of a security or other interest under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment or counterclaim.

4.    ABL DIP Loans and Roll-Up.

(a)    All loans made or monies advanced under the ABL DIP Facility to or for the benefit of the ABL DIP Loan Parties on or after the Petition Date including, without limitation, loans made or monies advanced or deemed advanced under or in connection with the ABL DIP Facility, shall (a) be evidenced by the books and records of the ABL DIP Admin Agent; (b) bear interest payable at the rates set forth in the ABL DIP Agreement; (c) be secured in the manner set forth in this Interim Order and in the ABL DIP Documents; (d) be payable in accordance with the terms of the ABL DIP Documents; and (e) otherwise be governed by the terms set forth in this Interim Order and in the ABL DIP Documents.

(b)    The Pre-Petition Revolving Loans (as defined in the ABL DIP Agreement) outstanding as of the Petition Date under the Prepetition ABL Credit Agreement constitute a portion of the Revolving DIP Loans outstanding under the ABL DIP Facility. For all purposes of the ABL DIP Documents, the sum of the Pre-Petition Revolving Loans and any other Revolving DIP Loans made on the Closing Date shall constitute all of the Revolving DIP Loans outstanding on the Closing Date.  Each Pre-Petition Letter of Credit (as defined in the ABL DIP Agreement) shall constitute a "Letter of Credit" for all purposes of the ABL DIP Documents and shall be deemed issued under the ABL DIP Agreement as of the Closing Date. All Pre-Petition Letter of Credit Borrowings (as defined in the ABL DIP Agreement) shall constitute "Letter of Credit Borrowings" for all purposes of the ABL DIP Documents.

5.    Use of ABL DIP Loans.  Subject to the terms and conditions of this Interim Order and the ABL DIP Agreement (including, without limitation, satisfaction of the conditions precedent to borrowing set forth therein), an amount not to exceed $65,000,000 of the ABL DIP Loans shall be available on or after the Closing Date and shall be used by the Borrower, in each

case in accordance with the Budget (as defined herein) to (a) roll up all outstanding Prepetition ABL Credit Agreement Indebtedness as set forth in the ABL DIP Agreement and Paragraph 4(b) of this Order, (b) fund general corporate needs, including, without limitation, working capital needs, (c) pay administrative expenses of the Cases, including reasonable fees and expenses of professionals, and (d) pay any prepetition obligations authorized to be paid pursuant to any "First Day Order" entered by the Court.

6.     Term DIP Loans.  All loans made or monies advanced under the Term Loan DIP Facility to or for the benefit of the Term DIP Loan Parties on or after the Petition Date including, without limitation, loans made or monies advanced or deemed advanced under or in connection with the Term Loan DIP Facility, shall: (a) be evidenced by the books and records of the Term Loan DIP Agent; (b) bear interest payable at the rates set forth in the Term Loan DIP Agreement; (c) be secured in the manner set forth in this Interim Order and in the Term Loan DIP Documents; (d) be payable in accordance with the terms of the Term Loan DIP Documents; and (e) otherwise be governed by the terms set forth in this Interim Order and in the Term Loan DIP Documents.

7.     Use of Term DIP Loans.  Subject to the terms and conditions of this Interim Order and the Term Loan DIP Agreement (including, without limitation, satisfaction of the conditions precedent to borrowing set forth therein), the proceeds of the Term DIP Loans shall be available on or after the Closing Date and shall be used by the Borrower, in each case in accordance with the Budget (as defined herein) to (a) repay in full all outstanding Prepetition ABL Obligations, as such Prepetition ABL Obligations may be rolled up as provided herein and in the ABL DIP Facility, (b) fund general corporate needs, including, without limitation, working capital needs, (c) pay administrative expenses of the Cases, including reasonable fees and expenses of

professionals, and (d) pay any prepetition obligations authorized to be paid pursuant to any "First Day Order" entered by the Court, in each case, in accordance with the Budget (as defined herein).

8.    <u>Payment of DIP Fees and Expenses</u>.    The Fee Letters are hereby approved. Immediately upon entry of this Interim Order, the Debtors are authorized to pay or otherwise incur all fees, expenses, and other amounts payable under the Fee Letters and under the terms of the ABL DIP Agreement, any other ABL DIP Documents, the Term Loan DIP Agreement and any other Term Loan DIP Documents including, without limitation, the commitment fee, the upfront fee, the backstop premium, the arranger fee, and any letter of credit fees (collectively, the "**DIP Fees**") as well as all reasonable and documented out-of-pocket costs and expenses of the DIP Agents and the DIP Lenders in accordance with the terms of the DIP Agreements including, without limitation, the Backstop Group Professionals (collectively, the "**Expenses**").  The DIP Fees and Expenses approved pursuant to this paragraph shall include, without limitation, the reasonable and documented prepetition and postpetition fees and expenses of counsel and financial advisors retained by the DIP Agents including the DIP Lenders and the Backstop Group (including the Backstop Professionals) associated with the arrangement, preparation, execution, delivery and administration of the DIP Documents (and any amendment or waiver with respect thereto), the Exit Commitment Letter, the Backstop Commitment Letter, the Plan and the Cases and, subject to the same procedures provided in paragraph 21(d) regarding payment of the fees and expenses of the Prepetition Secured Parties, none of the DIP Fees and Expenses shall be subject to Court approval or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with this Court with respect to such fees and expenses.  In addition, the Debtors are hereby authorized to indemnify the DIP Agents,

the DIP Lenders, and their respective affiliates and other parties, as provided in the DIP Agreements. All fees and expenses approved pursuant to this paragraph shall constitute DIP Obligations and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Documents. The Debtors are hereby authorized to pay all DIP Fees and Expenses in accordance with the DIP Documents.

9.     ABL DIP Superpriority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the ABL DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Provisions (as defined herein)), and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 or 1114 or any other provision of the Bankruptcy Code (the "ABL DIP Superpriority Claims"), ~~whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment,~~ which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, subject only to the Carve Out.

10.     Term Loan DIP Superpriority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Term Loan DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Provisions (as defined herein)), and all other claims against the Debtors, now existing or hereafter arising, in these Cases or a Successor Case (as defined herein), of any kind whatsoever, including, without limitation, all

Error!

25

administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 or 1114 or any other provision of the Bankruptcy Code (the "**Term Loan DIP Superpriority Claims**" and together with the ABL DIP Superpriority Claims, the "**DIP Superpriority Claims**")), ~~whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment,~~ which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, subject only to the Carve Out and the ABL DIP Superpriority Claims.

    11.    <u>Carve Out</u>.

        (a)    For purposes hereof, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, unpaid fees and expenses, which shall not exceed $5,000,000 in the aggregate (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to sections 327 or 328 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee (if appointed), pursuant to sections 328 or 1103 of the Bankruptcy Code and, with respect to Committee professionals (the "**Committee Professionals**") and the Debtor Professionals (together with the Committee Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by a Creditor Representative of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after

Error!

26

delivery of a Carve Out Trigger Notice; provided, that all fees including, without limitation, any success fee, restructuring fee, transaction fee, sales fee or similar fees incurred and/or earned by Guggenheim Securities, LLC (excluding their monthly fees), AlixPartners LLP (excluding their hourly fees), A&G Realty Partners, and Gordon Brothers Retail Partners LLC during these Cases shall not be (a) included in the Carve Out, and (b) paid prior to the payment in full, in cash, of all DIP Obligations, and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by one of the Creditor Representatives of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by e-mail (or other electronic means) by any of the ABL DIP Agent, the Term Loan DIP Agent, or Term Loan DIP Lenders holding outstanding Term Loan DIP Obligations representing more than 50% of all Term Loan DIP Obligations outstanding at such time (each, a "Creditor Representative") to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the ABL DIP Facility and/or the Term Loan DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by a Creditor Representative to the Debtors (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for ABL DIP Loans under the ABL DIP Credit Agreement, in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced

shall constitute ABL DIP Loans), as provided for in paragraph 11(a)(iii) of the Carve Out and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which collectively under paragraph 11(b)(i) and 11(b)(ii) shall not exceed $5,000,000). The Debtors shall deposit and hold such amounts in a segregated account at the ABL DIP Agents in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for ABL DIP Loans under the ABL DIP Agreement (on a *pro rata* basis based on the then outstanding ABL DIP Loans), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute ABL DIP Loans). The Debtors shall deposit and hold such amounts in a segregated account at the ABL DIP Agents in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims, and the $7,000,000 in Carve Out Reserves shall reduce the Borrowing Base (as provided for in the ABL DIP Agreement, and such term is defined therein) immediately upon entry of the Interim Order. On the first business day after the ABL DIP Agents give such notice to such ABL DIP Lenders, notwithstanding anything in the DIP Agreement to the contrary, including with respect to the existence of a Default (as defined in the ABL DIP Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for ABL DIP Loans under the ABL DIP Facility, any termination of the ABL DIP Loan Commitments following an Event of Default, or the occurrence of the Maturity Date, each ABL DIP Lender

with an outstanding ABL DIP Loan Commitment (on a *pro rata* basis based on the then outstanding ABL DIP Loan Commitments) shall make available to the ABL DIP Agents such ABL DIP Lender's *pro rata* share with respect to such borrowing in accordance with the ABL DIP Facility; *provided, however*, that notwithstanding anything to the contrary in this paragraph 11, no ABL DIP Lender shall be required to make ABL DIP Loans in excess of its ABL DIP Loan Commitment. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the ABL DIP Agents for the benefit of the ABL DIP Lenders, unless the ABL DIP Obligations have been indefeasibly paid in full, in cash and all ABL DIP Loan Commitments have been terminated, in which case any such excess shall be paid to the Term Loan DIP Agent for the benefit of the Term DIP Lenders in accordance with their rights and priorities as of the entry of this Interim Order. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the ABL DIP Agents for the benefit of the ABL DIP Lenders, unless the ABL DIP Obligations have been indefeasibly paid in full, in cash and all ABL DIP Loan Commitments have been terminated, in which case any such excess shall be paid to the Term Loan DIP Agent for the benefit of the Term Loan DIP Lenders. Notwithstanding anything to the contrary in the ABL DIP Documents or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 11, then, any excess funds in one of the Carve Out Reserves following the

Error!

29

payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 11, prior to making any payments to the ABL DIP Agents or the Term Loan DIP Agent, as applicable. Notwithstanding anything to the contrary in the ABL DIP Documents, this Interim Order, or the Final Order, following delivery of a Carve Out Trigger Notice, the ABL DIP Agents and the Term Loan DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the ABL DIP Agents for application in accordance with the ABL DIP Documents and thereafter to the Term Loan DIP Agent for application in accordance with the Term Loan DIP Documents. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the ABL DIP Agreement) or increase or reduce the ABL DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the ABL DIP Agreement, or in the Term Loan DIP Agreement, the Carve Out shall be senior to all liens and claims securing the DIP Facilities, the DIP Liens, the DIP Superpriority Claims, and the Adequate Protection Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Credit Agreement Indebtedness.

(c)    No Direct Obligation To Pay Allowed Professional Fees; No Waiver of Right to Object to Fees. The DIP Agents and the DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Case (as defined herein) under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall (a) be construed to obligate the DIP Agents or the DIP Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement or (b) require any DIP Lender to make DIP Loans in excess of its DIP Commitment. Notwithstanding any provision in this Paragraph 11 to the contrary, no portion of the Carve-Out, any Cash Collateral, any DIP Collateral, any proceeds of the DIP Facilities or any unencumbered assets (or the proceeds thereof) that are subject to the DIP Superpriority Claims (including any disbursements set forth in the Budget or obligations benefitting from the Carve-Out) shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 32 hereof. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases or any Successor Case (as defined herein) or of any other person or entity, or shall affect the right of the DIP Agents or the DIP Lenders to object to the allowance and payment of any such fees and expenses.

(d)    Payment of Allowed Professional Fees Prior to Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    Payment of Carve Out On or After Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date

in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the ABL DIP Obligations secured by the ABL DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the ABL DIP Documents, the Bankruptcy Code, and applicable law.

12.    <u>DIP Liens</u>. As security for the ABL DIP Obligations and Term Loan DIP Obligations, effective and perfected automatically upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agents of any DIP Collateral (as defined herein), the following security interests and liens (all such liens and security interests granted to the ABL DIP Admin Agent and Term Loan DIP Agent, for its respective benefit and for the benefit of their respective ABL DIP Lenders and Term Loan Lenders, pursuant to this Interim Order and the DIP Documents, (the "**DIP Liens**") are hereby granted to the ABL DIP Agents and Term Loan DIP Agent, for their respective benefit and the benefit of the ABL DIP Lenders and Term Loan DIP Lenders:

(a)    pursuant to section 364(d) of the Bankruptcy Code, perfected senior priming liens on all assets securing the Prepetition Credit Agreement Indebtedness, regardless of whether any lien or any security interest securing or purporting to secure the Prepetition Credit Agreement Indebtedness is valid or invalid, perfected or unperfected, or avoidable or non-avoidable, subject to all perfected non-avoidable senior pre-existing liens as of the Petition Date;

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, perfected senior liens on all assets of the Debtors not subject to a valid, perfected, and non-avoidable lien in

Error!

32

existence as of on the Petition Date (or as such lien may be perfected after the Petition Date to the extent permitted by section 546 of the Bankruptcy Code) including, and effective upon entry of a Final Order, the Avoidance Proceeds; and

(c)     pursuant to section 364(c)(3) of the Bankruptcy Code, perfected junior security interests on other assets of the Debtors subject to permitted liens (excluding the Prepetition Credit Agreement Liens) on the Petition Date (the assets referenced in clauses (a)-(c) of this Section 12 collectively, the "**DIP Collateral**").

For the avoidance of doubt, all DIP Liens securing ABL DIP Obligations are senior in priority to all DIP Liens securing Term Loan DIP Obligations, and each of the DIP Agents, the DIP Lenders and the Debtors are bound by the DIP Intercreditor Agreement.

13.     The DIP Collateral includes all tangible and intangible prepetition and postpetition property and interests in property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, including, without limitation, (i) all accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, intellectual property, instruments, insurance, inventory, investment property, letter-of-credit rights, money and any supporting obligations related thereto; (ii) all commercial tort claims; (iii) all books and records pertaining to the DIP Collateral; (iv) all property of any Prepetition Credit Party held by the ABL DIP Agents, the ABL DIP Lenders, any ABL Prepetition Secured Party, the Term Loan DIP Agent, Term Loan DIP Lenders or the Second Lien Representative, including all property of every description, in the custody of or in transit to the DIP Agents, the DIP Lenders or any ABL Prepetition Secured Party or the Second Lien Representative for any purpose, including safekeeping, collection or pledge, for the account of such party or as to which such party may have any right or power, including, but not limited to cash; (v) all other goods (including, but not

limited to, fixtures) and personal property, whether tangible or intangible and wherever located; (vi) all owned real property interests, and to the extent subject to a prepetition mortgage in favor of the Prepetition ABL Administrative Agent, leased real property (including, for the avoidance of doubt, any ground leases) and all proceeds of all other leased property;[3] (vii) any Indebtedness of any Restricted Subsidiary that is not an ABL DIP Loan Party owing to an ABL DIP Loan Party or a Term Loan DIP Loan Party owing to a Term Loan DIP Loan Party postpetition evidenced by one or more promissory notes (which may be a global intercompany note) in form and substance reasonably acceptable to the ABL DIP Agents and/or Term Loan DIP Agent; (viii) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; and (ix) all proceeds of the foregoing, plus all Prepetition Credit Agreement Collateral. Subject to and effective only upon entry of the Final Order, the DIP Collateral shall include the Avoidance Proceeds, which includes any proceeds or property recovered, unencumbered or otherwise that is the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

14.    Notwithstanding anything herein to the contrary, the DIP Liens shall be subordinate to the Carve Out.

15.    <u>Remedies</u>. (a) Any automatic stay otherwise applicable to the DIP Agents and the DIP Lenders is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Agents and the DIP Lenders to (i) declare all DIP Obligations to be due and payable, (ii) declare the termination, reduction, or restriction of any further commitment to extend credit to the Debtors, to the extent any such commitment remains,

---

[3]    For the avoidance of doubt and notwithstanding anything to the contrary contained herein, unless otherwise expressly permitted by the terms of the applicable lease, any liens granted under this Interim Order shall not include the Debtors' real property leases (including, for the avoidance of doubt, any ground leases), but shall include the proceeds from the disposition of all such leases.

and/or (iii) terminate the applicable DIP Documents as to any future liability or obligation of the DIP Agents and the DIP Lenders, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations.

(b) In addition to the rights and remedies described above, upon not less than five (5) business days' prior written notice to the Debtors (with a copy to counsel to each of the Prepetition Agents, the Committee, if any, and the U.S. Trustee) following the occurrence and continuance of an Event of Default (as defined in paragraph 33), the DIP Agents are hereby granted relief from the automatic stay provisions of section 362 of the Bankruptcy Code without further notice, hearing, motion, order or together action of any kind, to foreclose on, or otherwise enforce and realize on, their DIP Liens on all or any portion of the DIP Collateral, including by collecting accounts receivable and applying the proceeds thereof to the applicable DIP Obligations, and by occupying the Debtors' premises (subject to paragraph 15(c) below) to sell or otherwise dispose of the DIP Collateral, with the exercise of remedies as among the ABL DIP Agent and Term Loan DIP Agent being subject to the Intercreditor Agreement.  Solely during the foregoing five (5) business day period objections may be raised by the parties receiving written notice; however, the only issue that may be raised by the Debtors in opposition to the exercise of rights and remedies shall be whether an Event of Default has in fact occurred and is continuing, and other than as set forth in the prior clause of this proviso, the Debtors hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of the DIP Agents and the DIP Lenders under the DIP Documents or this Interim Order; provided, further that during such five (5) day period, the Debtors may not use Cash Collateral except to pay regular payroll and other expenses critical to keep the business of

the Debtors operating in accordance with the Budget. Except as expressly provided herein, any exercise of remedies by one or more of the DIP Agents is subject to the DIP Intercreditor Agreement.

(c)     Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agents and the DIP Lenders contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon five business days' written notice to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Cash Collateral Termination Event has occurred and is continuing, the DIP Agents (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agents (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to any DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors that are owned by or subject to a Lien of any third party and that are used by Debtors in their businesses, in the case of either subparagraph (i) or (ii) of this Paragraph 15(b) without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, the DIP Agents and DIP Lenders can only enter onto any leased premises after a Cash Collateral Termination Event has occurred and is continuing, in accordance with (i) a separate agreement with the landlord of the applicable leased premises; (ii) upon entry of an order of this Court after the filing of a motion and appropriate notice and an opportunity for landlords to object and be heard;

Error!

36

or (iii) as permitted by applicable law; <u>provided</u>, <u>further</u>, that the DIP Agents, on behalf of the DIP Lenders, shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agents and that accrue during the period of such occupancy or use by such DIP Agent calculated on a per diem basis. Nothing herein shall require the Debtors, the DIP Agents, or the other DIP Lenders to assume any lease, license or other contract under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agents and the DIP Lenders in this Paragraph 15(c).

16.    **Budget**. For purposes of this Interim Order, the term "Budget," attached hereto as **Exhibit 3**, means the 13-week cash flow forecast detailing cash receipts, cash disbursements, inventory levels and accrued and unpaid professional fees on a weekly basis for such weekly period on a regional and consolidated basis, in each case consistent with the manner in which such information is presented in the Budget filed with the Bankruptcy Court on the Interim Order Date, and in form and substance acceptable to the ABL DIP Agents and the Term Loan DIP Agent, acting at the direction of the DIP Lenders, in each case, in their sole and absolute discretion. The "Budget" shall initially refer to the Budget delivered by Borrower on the Closing Date and thereafter shall refer to the Budget delivered by Borrower pursuant to Section 7.1(h) of the ABL DIP Agreement. On each Friday on or before 5:00 p.m., New York City time, delivery of the following will be made to the ABL DIP Agents and the Term Loan DIP Agent and the DIP Lenders: (a) the DIP Loan Parties' rolling 13-week cash flow projections (together with a reporting package which shall include a weekly and cumulative budget variance (as compared to the Budget in effect on the Petition Date and the Budget in effect immediately prior to such updated projections) discussion and such other information related to any budget variances as the

ABL DIP Agents or the Term Loan DIP Agent may reasonably request) (which may be updated at the reasonable request of the ABL DIP Lenders or the Term Loan DIP Lenders); and (b) certification that no proceeds of the ABL Revolving Loans or the Term DIP Loans have been used for purposes other than as set forth in the Budget.

17.    <u>Budget Covenants</u>.

(d)    Except as otherwise provided in the DIP Agreements or approved by the DIP Agents and their respective Requisite Lenders (and regardless of whether or not a Carve Out Trigger Notice has been delivered), Borrower and its Subsidiaries shall not, directly or indirectly (i) use any cash or the proceeds of any DIP Loans in a manner or for a purpose other than those consistent with the DIP Agreements, this Interim Order, the Final Order, and the Budget (and any variances permitted thereunder), (ii) permit a disbursement causing any variance other than any variances permitted thereunder without the prior written consent of the ABL DIP Agents and the Requisite Lenders or (iii) make any payment (as adequate protection or otherwise), or application for authority to pay, on account of any claim or Indebtedness arising prior to the Petition Date other than payments set forth in the Budget and authorized by the Bankruptcy Court.

(e)    Prior to the occurrence of an Event of Default, Borrower shall be permitted to pay compensation and reimbursement of fees and expenses of Professional Persons solely to the extent that such fees and expenses are in accordance with the Budget and authorized to be paid under sections 330 and 331 of the Bankruptcy Code pursuant to an order of the Court, as the same may be due and payable. Upon the occurrence of an Event of Default and delivery of a Carve Out Trigger Notice, the right of Borrower to pay professional fees of Professional Persons outside the Carve Out shall terminate, and Borrower shall provide immediate notice to

all Professional Persons informing them that Borrower's ability to pay such Professional Persons is subject to and limited by the Carve Out.

(f)        Following the Petition Date:  (i) total operating expenses or disbursements (excluding interest expense and professional fees and expenses) paid by the Loan Parties shall not exceed the amounts in the Budget by more than (a) 17.5% for the period through October 12, 2018, calculated on a cumulative basis for such period, (b) 15% for the period through October 19, 2018, calculated on a cumulative basis for such period, (c) 12.5% for the period through October 26, 2018, calculated on a cumulative basis for such period, and (d) 10% at all times thereafter, in each case on a rolling four week cumulative basis; (ii) sales receipts shall not be less than (a) 90% of the amounts in the DIP Budget, solely during each of the first two weeks ending after the Petition Date, calculated on a cumulative basis for such one or two week period, (b) 90% of the amounts in the DIP Budget during the succeeding week, calculated on a cumulative basis for such three week period, and (c) at all times thereafter, 90% of the amounts in the DIP Budget calculated on a rolling four week cumulative basis; and  (iii) inventory levels shall not be less than (a) 90% of the amounts in the DIP Budget, solely during each of the first two weeks ending after the Petition Date, calculated on a cumulative basis for such one or two week period, (b) 90% of the amounts in the DIP Budget during the succeeding week, calculated on a cumulative basis for such  three week period, and (c) at all times thereafter, 90% of the amounts in the DIP Budget, calculated on a rolling four week cumulative basis.

18.        <u>Limitation on Charging Expenses Against DIP Collateral</u>.    Subject to and effective only upon entry of the Final Order, no expenses of administration of the Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of

the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Agents, and no consent shall be implied from any action, inaction or acquiescence by the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, the Term Loan DIP Lenders, or the Prepetition Secured Parties. Subject to and effective only upon entry of the Final Order, in no event shall the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties be subject to (a) the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or (b) the equitable doctrine of "marshaling," or any other similar doctrine with respect to the DIP Collateral.

19.    <u>Cash Collateral</u>.  All cash and cash equivalents of the Debtors, whenever and wherever acquired, and the proceeds of all DIP Loans and DIP Collateral constitute cash collateral as contemplated by section 363 of the Bankruptcy Code (the "<u>Cash Collateral</u>"). Subject to the terms of this Interim Order and the Budget, the Debtors are hereby authorized to use all Cash Collateral in which the Prepetition Agents or any other Prepetition Secured Party has, and in which the DIP Agents and DIP Lenders have, a perfected security interest as of the Petition Date or at any time thereafter, including any cash on deposit in any deposit account or other account over which any the Prepetition Agents or DIP Agents have control.

20.    <u>Use of Cash Collateral</u>.  Cash Collateral may be used only (a) to roll up all obligations under the Prepetition ABL Credit Agreement; (b) to pay the Adequate Protection Provisions, (c) to pay the DIP Obligations, including, without limitation, to pay principal, interest, reimbursement obligations on account of letters of credit, fees, costs and expenses under the DIP Facilities; (d) for working capital and other general corporate purposes of the Debtors in accordance with the Budget and the DIP Documents; (e) to pay the allowed administrative costs

and expenses of the Cases; (f) to pay prepetition obligations authorized pursuant to "First Day

Orders;" and with respect to (d), (e), and (f) above, solely in accordance with the Budget, the

DIP Documents, and this Interim Order, OR AS OTHERWISE ORDERED BY THE COURT AFTER NOTICE AND A HEARING.

21.    <u>Prepetition Secured Parties' Adequate Protection</u>.  The Prepetition Secured Parties

are entitled, until the indefeasible repayment in full in cash of (i) in the case of the Prepetition

ABL Secured Parties, the Prepetition ABL Credit Agreement Indebtedness and (ii) in the case of

the Second Lien Representative, the Prepetition Term Loan Credit Agreement Indebtedness,

pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of

their respective interests in the Prepetition Credit Agreement Collateral, including Cash

Collateral, for any diminution in the value of their respective interests in the Prepetition Credit

Agreement Collateral, including, without limitation, any such diminution resulting from the sale,

lease or use by the Debtors of Cash Collateral and any other Prepetition Credit Agreement

Collateral, the priming liens on the Prepetition Credit Agreement Collateral granted to the DIP

Agents and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the

imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and in each

case to the extent required by the Bankruptcy Code (each, a "<u>Diminution Claim</u>").  As adequate

protection for and to secure payment of an amount equal to, such Diminution Claims, the

Prepetition Secured Parties are granted, *nunc pro tunc* as of the Petition Date, the following

adequate protection (collectively, the "<u>Adequate Protection Provisions</u>"):

(a)    <u>Adequate Protection Liens</u>.

(i)    As adequate protection of the interests of the Prepetition ABL

Agent and the Prepetition ABL Lenders in the Prepetition ABL Credit Agreement

Collateral for their Diminution Claims, the Prepetition ABL Agent, for itself and

for the benefit of the Prepetition ABL Lenders, is hereby granted valid and perfected security interests in and liens on the DIP Collateral (the "**ABL Adequate Protection Liens**"), subordinate only to the liens in favor of (1) the ABL DIP Facility and (2) the Carve Out and subject to all perfected non-avoidable senior pre-existing liens as of the Petition Date.

(ii)    As adequate protection of the interests of the Second Lien Representative in the Prepetition Term Loan Credit Agreement Collateral for its Diminution Claims, the Second Lien Representative is hereby granted valid, binding, continuing, enforceable and fully-perfected security interests in and liens on the DIP Collateral (the "**Term Loan Adequate Protection Liens**"), subordinate only to the liens in favor of the (1) ABL DIP Facility, (2) Term Loan DIP Facility, (3) Prepetition ABL Credit Facility and (4) the Carve Out, and subject to all perfected non-avoidable senior pre-existing liens as of the Petition Date.

(b)    Section 507(b) Claim.

(i)    As adequate protection for, and to secure payment of an amount equal to, the Prepetition ABL Secured Parties' Diminution Claims the Prepetition ABL Secured Parties are hereby granted as and to the extent provided by Bankruptcy Code Section 507(b) allowed superpriority administrative expense claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the

Error!

Bankruptcy Code (the "ABL Adequate Protection Superpriority Claims"), ~~whether or not such expenses or claims may become secured by a judgment lien , or other non-consensual lien, levy or attachment,~~ which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates ~~(subject to all perfected non-avoidable senior pre-existing liens as of the Petition Date and excluding the Debtors' real property leases (including for the avoidance of doubt, any ground leases) but shall include the proceeds from the disposition of all such leases)~~ and all proceeds thereof, including without limitation, the Avoidance Proceeds, but subject to the payment of the Carve Out, the ABL DIP Superpriority Claims and the ABL DIP Obligations.

(ii)      As adequate protection for, and to secure payment of an amount equal to, the Second Lien Lender's Diminution Claim the Prepetition Term Loan Secured Parties are hereby granted as and to the extent provided by Bankruptcy Code Section 507(b), allowed superpriority administrative expense claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code (the "Term Loan Adequate Protection Superpriority Claims"), ~~whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment,~~ which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and

their estates (~~subject to all perfected non-avoidable senior pre-existing liens as of the Petition Date and excluding the Debtors' real property leases (including for the avoidance of doubt, any ground leases) but shall include the proceeds from the disposition of all such leases~~)and all proceeds thereof, including without limitation, Avoidance Proceeds, but subject to the payment of the Carve Out, the ABL DIP Superpriority Claims, the ABL DIP Obligations, ABL Adequate Protection Superpriority Claims, the ABL Prepetition Obligations, the Term Loan DIP Superpriority Claims, and the Term Loan DIP Obligations.

(c)    _Interest, Fees, and Expenses_.  Without further application to this Court, the Debtors are authorized to pay forthwith in cash (i) all accrued and unpaid interest through the Petition Date owed under the Prepetition ABL Credit Agreement (including, without limitation, payment of all outstanding default interest); and (ii) all accrued and unpaid fees and disbursements owed to the Prepetition ABL Agent, including all reasonable and documented out-of-pocket fees and expenses of counsel and other professionals of the Prepetition ABL Agent, as provided under the Prepetition ABL Credit Agreement, as applicable and, in each case, whether incurred before or after the Petition Date.

(d)    _Payment of Prepetition Secured Parties' Professional Fees and Expenses_. The Debtors shall pay the Prepetition Secured Parties' Professional Fees and Expenses within five (5) business' days (if no written objection is received within such five (5) business day period) after such professional has delivered an invoice substantially in the form provided to the Debtors to date describing such fees and expenses; _provided, however_, that any such invoice may be redacted to protect privileged, confidential or proprietary information, with a copy of such invoice to the DIP Agents, the Second Lien

Representative, the Backstop Group, the U.S. Trustee, and the Committee (if appointed). Written objections to payment of such fees and expenses, which may only be asserted by the Debtors, the DIP Agents, the Backstop Group, the U.S. Trustee and the Committee (if appointed), must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of the fees and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, if an objection to a professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

22.    <u>Credit Bid</u>.  The DIP Agents and the Prepetition Secured Parties, respectively, shall have the right to credit bid under section 363(k) of the Bankruptcy Code all of their respective claims (subject to the provisions of paragraph 31) in connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a chapter 11 plan or otherwise, UNLESS THE COURT ORDERS OTHERWISE.

23.    <u>Reservation of Rights of Prepetition Secured Parties</u>.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of any of the Prepetition Secured Parties to seek

Error!

45

modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

24.     Perfection of DIP Liens and Adequate Protection Liens.  The DIP Agents, the DIP Lenders, and the Prepetition Agents are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agents, the DIP Lenders, or the Prepetition Agents choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of this Interim Order, but subject in all respects to the provisions of this Interim Order.

25.     Optional Recordation.   A certified copy of this Interim Order may, in the discretion of the DIP Agents or the Prepetition Agents be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

26.     Delivery of Instruments and Documents.  The Debtors shall execute and deliver to the DIP Agents or the Prepetition Agents, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agents or the Prepetition Agents may

Error!

reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens.

27.     <u>Preservation of Rights Granted Under the Interim Order</u>.  Except with respect to the Carve Out, any replacement financing that indefeasibly repays in full in cash the DIP Obligations and the Diminution Claims prior to or simultaneously with the allowance of any claims or expenses in connection with such financing, or as expressly provided herein or in the DIP Agreements, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order shall be granted or allowed while any portion of the DIP Obligations or the Diminution Claims, as the case may be, remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinate to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, in each case, whether in these Cases or any Successor Case (as defined herein), without the express written consent of the DIP Agents given in accordance with the DIP Documents (which consent may be withheld in each DIP Agent's sole discretion).

28.     <u>Certain Limits on Rights of Debtors</u>.  Unless all DIP Obligations and Diminution Claims shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreements and a Cash Collateral Termination Event hereunder if any of the Debtors seek, or if there is entered (a) any stay, vacatur, rescission, or modification of this Interim Order without the prior written consent of the DIP Agents and the Prepetition Secured Parties that is not reversed or vacated within five (5) days, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agents or the

Prepetition Secured Parties; or (b) an order converting the Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of the Cases that is not reversed or vacated within five (5) days.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the DIP Superpriority Claims and other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Diminution Claims shall have been paid and satisfied in full (and that such DIP Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

29.    Effect of Reversal, Etc.    *Upon any* ~~The~~ reversal or modification on appeal of ~~an~~ *this Interim Order,* *Section 364(e) of the Bankruptcy Code applies to* ~~authorization under section 364 of the Bankruptcy Code to obtain credit or incur debt, or of a grant under section 364 of the Bankruptcy Code of a priority or a lien,~~ does not affect the validity ~~of~~ any DIP Obligations, ~~or~~ the Adequate Protection Provisions ~~so incurred,~~ ~~or~~ the DIP Liens, ~~or~~ the Adequate Protection Liens ~~so granted to~~ *and* the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, Term Loan DIP Lenders, ~~or~~ *and* the Prepetition Secured Parties, ~~whether or not the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, Term Loan DIP Lenders or the Prepetition Secured Parties knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.~~ *and are entitled to all of the benefits and protections afforded by Section 364(e)*

30.     <u>Survival of Rights</u>.  Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Provisions, and all other rights and remedies of the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, Term Loan DIP Lenders, or the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents and any actions taken pursuant hereto shall survive, and shall not be modified, impaired, or discharged by (a) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, or by any other act or omission, (b) the entry of an order confirming a plan of reorganization in any of the Cases or (c) consummation of any chapter 11 plan(s).  The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code (each, a "**<u>Successor Case</u>**"), and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the DIP Superpriority Claims, and all other administrative claims granted pursuant to this Interim Order and all other rights and remedies of the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, Term Loan DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, all Diminution Claims, and all allowed claims payable in cash arising from the Adequate Protection Provisions are indefeasibly paid in full in cash.

31.     <u>Effect of Stipulations on Third Parties</u>.  The stipulations and admissions contained in paragraph D of this Interim Order shall be binding on the Debtors and all parties in interest, including, without limitation, any Committee, unless, and solely to the extent that an adversary proceeding or other contested matter has been commenced by a party in interest (other than the

Debtors) with the requisite standing and authority, against the Prepetition Secured Parties in connection with any matter related to the Prepetition Credit Agreements, by the earlier of (a) the date of the hearing scheduled to consider confirmation of the Plan and (b) (i) in the case of such adversary proceeding or other contested matter filed by a party in interest with required standing other than the Committee (if any), no later than seventy-five (75) days from the date of entry of this Interim Order, or (ii) in the case of an adversary proceeding or other contested matter filed by the Committee (if any), no later than sixty (60) days after the appointment of the Committee (if any) (the earlier to occur of (a) and(b), the "Challenge Deadline"). The Challenge Deadline may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Credit Agreement), the Second Lien Representative (with respect to the Prepetition Term Loan Credit Agreement), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline. If no such adversary proceeding or contested matter is timely and properly filed by the Challenge Deadline or the Court does not rule in favor of the plaintiff in any such proceeding (which ruling on standing, if appealed, shall not stay or delay the Cases or confirmation of a chapter 11 plan), then the (a) stipulations, admissions and releases contained in paragraph D of this Interim Order shall become binding on all parties in interest, including, for the avoidance of doubt, any Committee appointed in the Cases, (b) Prepetition Credit Agreement Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (c) Prepetition Credit Agreement Liens on the Prepetition Credit Agreement Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph D, not subject to defense, counterclaim,

Error!

recharacterization, subordination or avoidance, and (d) Prepetition Credit Agreement Indebtedness and the Prepetition Credit Agreement Liens shall not be subject to any other or further challenge by the Debtors, any Committee, or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto). If any such adversary proceeding or contested matter is timely and properly filed, the stipulations, admissions and releases contained in paragraph D of this Interim Order shall nonetheless remain binding and preclusive on the Debtors, any Committee, and any other person or entity, except as to any such stipulations and admissions that were expressly and successfully challenged in such timely and properly filed adversary proceeding or contested matter. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Credit Agreement Indebtedness or the Prepetition Credit Agreement Liens.

32.     <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, without the prior written consent of the DIP Agents or the Prepetition Agent, none of the DIP Obligations, the Cash Collateral, DIP Collateral, or the Carve Out may be used for the following purposes: (a) to object to or contest the validity or enforceability of the Interim Order or Final Order or any obligations outstanding under the DIP Documents or the Prepetition Credit Agreement; *provided, however*, that the Committee, if any, may expend up to $50,000 (the "<u>Investigation Budget</u>") for the fees and expenses incurred in connection with the investigation of, but not litigation,

Error!

objection or any challenge to, the stipulations and admissions contained in paragraph D; (b) to assert or prosecute any claim or cause of action against the DIP Agents, any DIP Lender, or any Prepetition Secured Party; (c) to seek to modify any of the rights granted under the Interim Order or Final Order to the DIP Agents, any DIP Lender or any Prepetition Secured Party; (d) to make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the covenants related to the Budget (as set forth herein or in the DIP Agreements) and, with respect to the payment of any prepetition claim or non-ordinary course administrative claim, separately approved by this Court; (e) to object to, contest, delay, prevent or interfere in any way with the exercise of rights and remedies by the ABL DIP Agents, the ABL DIP Lenders, Term Loan DIP Agent, or Term Loan DIP Lenders under the DIP Documents or with respect to the DIP Collateral once an Event of Default has occurred and any applicable notice period has expired (except that, prior to the expiration of such notice period, the rights of the Debtors and other parties in interest with respect to any such exercise of remedies are preserved); or (f) except as expressly provided or permitted under the DIP Agreements and the Budget, to make any payment or distribution to any non-Debtor affiliate, equity holder, or insider of any Debtor outside of the ordinary course of business.

33.    Events of Default.  Except as otherwise provided in this Interim Order, unless waived by the DIP Agents in writing and in accordance with the terms of the DIP Agreements, each of the following shall constitute an event of default (collectively, "Events of Default") (a) failure of the Debtors to perform or comply with any of the terms, provision, conditions, covenants, or obligations under this Interim Order or (b) the occurrence of an Event of Default as defined in the DIP Agreements.

Error!

52

34.    <u>Termination of Cash Collateral Use</u>.  In the absence of a further order of this Court, and notwithstanding anything herein or in the DIP Documents to the contrary, and after delivery (including delivery by electronic mail or facsimile) of notice of the occurrence of a Cash Collateral Termination Event by one or more of the DIP Agents, as applicable, to the Debtors, the Committee (if appointed), the Second Lien Lender and the U.S. Trustee, the Debtors shall no longer be authorized pursuant to this Interim Order to use Cash Collateral other than with respect to the Carve Out and such Cash Collateral use shall automatically terminate the date upon which any of the following events occurs (such date being referred to herein as the "<u>Cash Collateral Termination Date</u>," and each of the following events, a "<u>Cash Collateral Termination Event</u>"):

(g)    the appointment of a trustee or the appointment of an examiner with enlarged powers in any of the Cases unless such appointment is approved by the Prepetition Agents;

(h)    the delivery of a Carve Out Trigger Notice;

(i)    the Debtors' breach of any affirmative or negative covenant contained in the DIP Agreements (subject to any applicable grace period therein);

(j)    the Debtors' failure to comply with any of the terms or provisions of this Interim Order in any material respect, unless waived or otherwise modified with the prior written consent of the DIP Agents or the Prepetition Agents, as applicable;

(k)    entry of an order by this Court or any other Court having jurisdiction over these Cases granting other superpriority liens with priority over or *pari passu* with the DIP Liens;

(l)    the filing by the Debtors of a motion to approve postpetition financing without the prior written consent of the DIP Agents acting at the direction of the relevant required DIP Lenders;

(m)    the filing by the Debtors of a motion to approve any material sale of assets of the Debtors under section 363 of the Bankruptcy Code, pursuant to a chapter 11 plan, or otherwise, in each case without the prior written consent of the DIP Agents acting at the direction of the relevant required DIP Lenders;

(n)    entry of an order granting relief from the automatic stay to the holder or holders of security interests to permit foreclosures (or granting similar relief) on any property of the Debtors having a value in excess of $1 million, except as permitted by the DIP Agreements;

(o)    after entry of the Final Order, the filing of a motion by any Debtor (or any party in interest) that is not dismissed or denied within thirty (30) days after the date of filing such motion seeking, or the entry of any order permitting, recovery from any portion of the Prepetition Credit Agreement Collateral (or from any Prepetition Secured Party directly) any costs or expenses of preserving or disposing of the Prepetition Credit Agreement Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(p)    the termination of the commitments under the DIP Documents or acceleration of the DIP Obligations; or

(q)    any of the liens securing the Prepetition Credit Agreement Indebtedness or the Adequate Protection Liens granted to the Prepetition Secured Parties shall cease to be valid, binding, and perfected liens with the priority and to the extent provided in this Interim Order.

35.    <u>Rights of Prepetition Agents</u>.    Notwithstanding the occurrence of the Cash Collateral Termination Date, all of the rights, remedies, benefits and protections provided to the

**Error!**

Prepetition Agents under this Interim Order as of such Cash Collateral Termination Date shall survive the Cash Collateral Termination Date.

36.     Access to the Debtors.  In accordance with the terms of the DIP Documents and the Prepetition Credit Agreements, the DIP Agents and the Prepetition Agents, respectively, and their respective professionals shall be afforded continued reporting as to DIP Collateral amounts and reasonable access to the DIP Collateral and the Debtors' business premises, during normal business hours and upon reasonable advance notice, for purposes of verifying the Debtors' compliance with the terms of this Interim Order.

37.     Modifications of DIP Documents.  The Debtors, the DIP Agents, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the respective DIP Documents, any non-material modifications of the respective DIP Documents without further order of this Court; *provided, however*, that notice of any material modification or amendment to the respective DIP Documents shall be provided to counsel to the Committee, if any, the Prepetition Agents, and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment.  If the Committee, either of the Prepetition Agents, or the U.S. Trustee timely objects to any material modification or amendment to the DIP Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

38.     Continuing Effect of Control Agreements and Credit Card Notifications.  All of the rights and benefits afforded to the Prepetition ABL Agent pursuant to Section 8.12 of the Prepetition ABL Credit Agreement shall be deemed transferred to the ABL DIP Admin Agent upon entry of the Interim Order including with respect to receiving all cash receipts and collections in a Concentration Account identified by the ABL DIP Admin Agent after and during

Error!

the continuance of a Cash Dominion Period (as defined in the Prepetition ABL Facility) from each Credit Card Notification and Deposit Account Control Agreement set forth on Exhibit 4 attached hereto.  All of the agreements set forth on Exhibit 4 shall be enforceable by and against the ABL DIP Admin Agent and by and against the parties to such agreements (other than the Prepetition ABL Agent).  The Debtors have provided notice of the DIP Motion and interim hearing to each of the parties to the agreements set forth on Exhibit 4.

39.    _Binding Effect; Successors and Assigns_.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, any Committee appointed in these Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors; provided, however, for the avoidance of doubt, that the Debtors' acknowledgements, stipulations, and releases set forth in paragraph D, are subject to paragraph 31 hereof) and shall inure to the benefit of the ABL DIP Agents, the ABL DIP Lenders, the Term Loan DIP Agent, Term Loan DIP Lenders, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns; _provided_, _however_, that the DIP Agents and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Agreements or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agents and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive

Error!

Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*, as amended, or any similar federal or state statute).

40.    <u>Master Proof of Claim</u>.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Case to the contrary, none of the Prepetition Secured Parties will be required to file (i) proofs of claim for claims arising under the Prepetition Credit Documents or (ii) requests for payment of administrative expenses in any of the Cases or any Successor Case with respect to any Adequate Protection Obligations or Adequate Protection Payments, and the Debtors' stipulations, admissions, and acknowledgements and the provisions of this Interim Order shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties with regard to all claims arising under the Prepetition Credit Documents.  Notwithstanding the foregoing, each of the Prepetition Agents, for the benefit of itself and its respective Prepetition Secured Parties, are authorized and entitled, in their sole discretion, but are not required, to file (and amend and/or supplement, as each sees fit), for any claim or administrative expense claim described herein (i) a master proof of claim, (ii) proofs of claim and/or (iii) requests for payment of administrative expenses, in each of the Cases or any Successor Case.  The failure to file any such proof of claim or request for payment of an administrative expense shall not affect the validity or enforceability of any of the Prepetition Credit Agreement Indebtedness or this Interim Order.  The DIP Agents and the DIP Lenders shall similarly not be required to file proofs of claim to maintain their respective claims for payment of the DIP Obligations, and the evidence presented with the DIP Motion and the record established at the Interim Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to such obligations and secured status.

Error!

41.    _Effectiveness_. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

42.    _Final Hearing_. The Final Hearing is scheduled for [October 29, 2018 at 10:00 a.m. (ET)] before this Court. The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any other party that has filed a request for notices with this Court, and to the Committee, if appointed, or Committee counsel, if the same shall have been retained. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served no later than [October 24, 2018 at 4:00 p.m. (ET)] upon the Debtors and their proposed counsel, counsel to the ABL DIP Agents and the Term Loan DIP Agent, counsel to the Second Lien Lender and the U.S. Trustee.

Dated:  __10/9__ , 2018
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

Error!