**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MATTRESS FIRM, INC., *et al.*,[1] | Case No. 18-12241 (CSS) |
| Debtors. | (Jointly Administered) |

**Objection Deadline: October 22, 2018 at 4:00 p.m. (ET)**
**Hearing Date: October 29, 2018 at 10:00 a.m. (ET)**

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
PROCEDURES FOR REJECTING UNEXPIRED LEASES OF NONRESIDENTIAL
REAL PROPERTY, (II) AUTHORIZING THE DEBTORS TO ENTER INTO
AMENDMENTS TO CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL
REAL PROPERTY, AND (III) GRANTING RELATED RELIEF**

Mattress Firm, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") submit this motion (this "Motion"), pursuant to sections 105(a), 362(d), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 6004, 6006, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) approving and authorizing the Debtors to implement the Lease Rejection Procedures (as defined herein), (ii) authorizing the Debtors to enter into amendments to certain of their unexpired leases of nonresidential real property to the extent such amendments are deemed to be outside the ordinary course of business, and (iii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of Mattress Firm, Inc.'s federal tax identification number are 6008. The Debtors' mailing address is 10201 S. Main Street, Houston, Texas 77025. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. This information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/MattressFirm or by contacting counsel for the Debtors.

01:23725299.1

## STATUS OF THE CASES AND JURISDICTION

1. On October 5, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested in this Motion are sections 105(a), 362(d), 365(a), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6004, 6006, 6007, and 9014.

## THE DEBTORS' PREPACKAGED PLAN OF REORGANIZATION

5. On the Petition Date, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates* [Docket No. 22] (the "Plan")

01:23725299.1

and the related disclosure statement (the "<u>Disclosure Statement</u>") [Docket No. 23]. On October 9, 2018, the Court entered an order scheduling a combined hearing for November 16, 2018 at 9:30 a.m. (prevailing Eastern Time) to consider approval of the Disclosure Statement and confirmation of the Plan [Docket No. 181]. All classes of claims against the Debtors are unimpaired under the Plan.

## BACKGROUND OF THE DEBTORS

6. Additional information regarding the Debtors' business, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Hendré Ackermann in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 25].

## THE CLOSING STORE LEASES

7. As of the Petition Date, the Debtors operated more than 3,230 stores across 49 states (including franchise locations). As a key component of their restructuring strategy, the Debtors are engaged in ongoing efforts to optimize their retail store network. The Debtors, in consultation with their advisors, have analyzed store-level earnings, occupancy costs, and other data and identified certain stores that are underperforming or competing with other stores operated by the Debtors. On the Petition Date, the Debtors filed three omnibus motions to reject a total of 209 unexpired leases of nonresidential real property that correspond to certain of the Debtors' retail stores (collectively, the "<u>Closing Store Leases</u>"). <u>See</u> Docket Nos. 38, 39 & 40.

## THE REMAINING LEASES

8. In addition to the Closing Store Leases, the Debtors are party to approximately 3,000 additional unexpired leases of nonresidential real property (each a "<u>Remaining Lease</u>" and, collectively, the "<u>Remaining Leases</u>"). Many of the Remaining Leases correspond to the

Debtors' best-performing stores and will be assumed under the terms of the Plan pursuant to section 365(a) of the Bankruptcy Code.  Certain of the Remaining Leases, however, will only be assumed if the Debtors obtain significant economic concessions from the applicable landlords.

9. If the Debtors' negotiations with a landlord under a Remaining Lease are unsuccessful, the Debtors may determine to reject such Remaining Lease in the exercise of their business judgment.  To reject a Remaining Lease, the Debtors would be required, absent the relief requested in this Motion, to file and serve motions to reject such Remaining Lease under section 365(a) of the Bankruptcy Code.[2]  To streamline the rejection process for the Remaining Leases that the Debtors determine to reject and to establish clear procedures for the Debtors and applicable landlords, the Debtors are requesting that the Court approve the Lease Rejection Procedures (as defined below).

10. If negotiations with a landlord under a Remaining Lease are successful, however, the Debtors will amend such Remaining Lease to reflect the revised economic terms and assume the Remaining Lease pursuant to the Plan.  For that reason, to the extent such amendments are deemed to be outside the ordinary course of business, the Debtors are also requesting that the Court authorize the Debtors to enter into one or more amendments of the Remaining Leases on terms that, in the Debtors' business judgment, provide a net benefit to the Debtors' estates without the need for further notice or application to the Court.

11. The Plan includes a mechanism that permits the Debtors to continue negotiations with consenting landlords for a period of 90 days following the effective date of the Plan (such 90-day period, the "Post-Effective Date Lease Negotiation Period").  Specifically, prior to the confirmation hearing, the Debtors will file a schedule of all Remaining Leases as to which the

---

[2] Notwithstanding the proposed lease rejection procedures outlined herein, the Debtors may from time to time during these chapter 11 cases elect to file additional motions to reject unexpired leases.

01:23725299.1

4

applicable counterparty has consented in writing to the Debtors' deferral of their decision on assumption or rejection during the Post-Effective Date Lease Negotiation Period (such schedule, the "Schedule of Post-Effective Date Negotiated Leases"). The Debtors may (a) assume any Remaining Leases listed on the Schedule of Post-Effective Date Negotiated Leases, on such terms as may be agreed with the relevant counterparty, at any time before the termination of the Post-Effective Date Lease Negotiation Period and (b) reject any such Remaining Leases through the Lease Rejection Procedures set forth below at any time up to and including the third business day after the termination of the Post-Effective Date Lease Negotiation Period.

## LEASE REJECTION PROCEDURES

12. By the Motion, the Debtors are requesting that the Court approve and authorize the Debtors to implement the following procedures to reject certain of the Remaining Leases from time to time in their discretion (the "Lease Rejection Procedures"):[3]

> (a) ***Rejection Notice***. To reject an unexpired lease of nonresidential real property (such leases to be rejected, including any guarantees thereof and any amendments or modifications thereto or assignments or subleases thereof, collectively, the "Specified Leases") pursuant to section 365 of the Bankruptcy Code, the Debtors shall file with the Court a notice, substantially in the form attached to the Proposed Order as **Exhibit 1** (each a "Rejection Notice"), which Rejection Notice shall contain, among other things, the following information: (i) the Specified Leases to be rejected, listed on **Annex A** to the Rejection Notice; (ii) the Debtor or Debtors party to such Specified Leases; (iii) the street address of the Debtors' stores subject to the Specified Leases; (iv) the names and contact information of the non-Debtor counterparties to the Specified Leases (the "Lease Counterparties"); (v) the proposed effective date of the rejection for each of the Specified Leases (as applicable, the "Rejection Date"); and (vi) the deadlines and procedures for filing an objection to the Rejection Notice (as set forth below). A Rejection Notice may list multiple Specified Leases; provided, however, that the number of Specified Leases on any Rejection Notice shall not exceed 100. The Debtors may file one or more Rejection Notices after the Effective Date until the date that is

---

[3] All capitalized terms used but not otherwise defined in the Lease Rejection Procedures shall have the meanings ascribed to such terms in the Plan. All of the time periods set forth in the Lease Rejection Procedures shall be computed in accordance with Bankruptcy Rule 9006.

01:23725299.1

three (3) business days after the termination of the Post-Effective Date Lease Negotiation Period to reflect their decision, if any, to reject Specified Leases listed on the Schedule of Post-Effective Date Negotiated Leases with the consent of the applicable Lease Counterparties.

(b) *Service of Rejection Notice*. The Debtors shall cause each Rejection Notice to be served by overnight mail upon (i) the Lease Counterparties affected by the Rejection Notice at the notice address set forth in the applicable Specified Leases, (ii) counsel to the Lease Counterparties, if known to the Debtors, (iii) all parties known or reasonably anticipated to have an interest in the Personal Property (as defined below) that the Debtors intend to abandon, if applicable, (iv) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (v) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis, (vi) counsel to the DIP Agents, (vii) counsel to the Prepetition ABL Agent, (viii) counsel to the Prepetition Term Loan Lender, (ix) the Internal Revenue Service, (x) the United States Attorney's Office for the District of Delaware, (xi) United States Department of Justice, (xii) the United States Securities and Exchange Commission, (xiii) the state attorneys general in which the Debtors conduct business, and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

(c) *Objection Procedures*. Any party objecting to the Debtors' rejection of a Specified Lease and/or abandonment of Personal Property, including, without limitation, Lease Counterparties, shall file with the Court and serve a written objection (each an "Objection") so as to be actually received by the following parties (collectively, the "Objection Service Parties") no later than 4:00 p.m. prevailing Eastern Time on the tenth (10th) day after the Debtors' filing and service of the relevant Rejection Notice (such deadline, the "Objection Deadline"): (i) the Debtors, Mattress Firm, Inc., 10201 S. Main Street, Houston, Texas 77025, Attn: Kindel Elam; (ii) proposed counsel to the Debtors, Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603, Attn: Bojan Guzina and Matthew E. Linder; (iii) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, Attn: Edmon L. Morton and Ashley E. Jacobs; (iv) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer; (v) counsel to the DIP Agent and Prepetition ABL Agent, Paul Hastings LLP, MetLife Building, 200 Park Avenue, New York, New York 10166, Attn: Paul V. Tenzer, and Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110-1726, Attn: Marc R. Leduc; (vi) counsel to the Prepetition Term Loan Lender, Linklaters LLP, 601 13th Street NW #400, Washington, D.C. 20005, Attn: Amy Edgy, and 1345 6th Avenue, New York, New York 10105, Attn: Christopher Hunker; (vii) co-counsel to the

01:23725299.1

exit term loan financing backstop group (the "Backstop Group"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: Adam Goldberg, and Ashby & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, Delaware 19801, Attn: William Bowden; and (viii) the Notice Parties.  Each Objection must state with specificity the legal and factual grounds for the objection to the rejection of the relevant Specified Leases.

(d) *Failure to Timely File Objection*.  If no Objection is timely filed and properly served as specified above with respect to a Specified Lease, the Debtors may, 24 hours after the Objection Deadline has expired, file with the Court under certification of counsel a proposed order, substantially in the form attached to the Rejection Notice as **Annex B**, authorizing the Debtors to reject the Specified Lease as of the Rejection Date, and the Court may enter such order accompanying the certification of counsel without further notice or hearing.

(e) *Rejection Date*.  The Rejection Date for a Specified Lease shall be the latest to occur of the following: (i) the Rejection Date specified in the Rejection Notice; and (ii) the date on which the Debtors surrender possession of the store subject to the relevant Specified Lease to the Lease Counterparty by notifying the affected Lease Counterparty in writing thereof and (A) have turned over the store keys, key codes, or security codes, if any, to the Lease Counterparty or (B) have notified the affected Lease Counterparty in writing that the store keys, key codes, or security codes, if any, are not available and that the Lease Counterparty may re-key the store.

(f) *Timely Objection*.  If an Objection is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such Objection and provide the Lease Counterparty and the Objection Service Parties with at least seven (7) days' notice of such hearing.  If the Objection is overruled or withdrawn, then the Specified Lease to which the Objection relates shall be rejected as of (i) the Rejection Date, (ii) such other date to which the Debtors and the applicable Lease Counterparty may agree, or (iii) as otherwise ordered by the Court.

(g) *Treatment of Deposits*.  If the Debtors have deposited funds with a Lease Counterparty as a security for their performance under a Specified Lease or other similar arrangement (each a "Deposit"), to the extent the Lease Counterparty retains all or a portion of the Deposit as of the Petition Date, such Lease Counterparty shall not be permitted to set off, recoup, apply, or otherwise use such Deposit without the prior authorization of this Court, unless the Debtors and the applicable Lease Counterparty otherwise agree, in consultation with the Backstop Group.

    (h)    ***Abandoned Personal Property***.  The Debtors are authorized, but not directed, at any time on or before the applicable Rejection Date, to abandon any personal property located at the premises subject to a Specified Lease (such property, the "<u>Personal Property</u>").  The Debtors shall generally describe the Personal Property in the Rejection Notice and provide an estimate of the book value of the Personal Property, if practicable.  Absent the timely filing and proper service of an Objection, the Personal Property shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date.  For the avoidance of doubt, any and all property located on the Debtors' leased premises on the Rejection Date of a Specified Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date, regardless of whether such property was described in the applicable Rejection Notice.  A Lease Counterparty may, in its discretion and without further notice to or order of the Court, use and/or dispose of any Personal Property without notice to the Debtors or third parties, and, to the extent applicable, the automatic stay is modified pursuant to section 362(d) of the Bankruptcy Code to allow such use and/or disposition of Personal Property.  The rights, if any, of Lease Counterparties to file claims against the Debtors for the costs of disposal of Personal Property are fully reserved, as are the rights of all parties in interest to object to any such claims.

    (i)    ***Proofs of Claim***.  Claims arising from the rejection of a Specified Lease must be filed on or before 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date (as defined in the Plan); <u>provided</u>, <u>however</u>, that, solely in respect of Specified Leases included on the Schedule of Post-Effective Date Negotiated Leases that are rejected by an order of the Court after the Effective Date, claims must be filed on or before the latest to occur of (a) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of the order approving the rejection of such Specified Lease, and (b) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the effective date of the rejection of such Specified Lease.  If a proof of claim is not timely filed, the claimant shall be forever barred from asserting a claim for damages arising from the rejection of the applicable Specified Lease(s) and from participating in any distributions made in connection with these chapter 11 cases.  Proofs of claim and instructions for submission may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/MattressFirm.

## **RELIEF REQUESTED**

13.    By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (i) approving and authorizing the Debtors to implement

01:23725299.1

the Lease Rejection Procedures, (ii) authorizing the Debtors to enter into one or more amendments of the Remaining Leases on terms that, in the Debtors' business judgment, provide a net benefit to the Debtors' estates without the need for further notice or application to the Court (to the extent such amendments are deemed to be outside the ordinary course of business), and (iii) granting related relief.

14.     For the avoidance of doubt, the relief requested in this Motion, if granted, would not apply to the Closing Store Leases that are the subject of omnibus rejection motions filed on the Petition Date, which are pending before the Court. The relief requested herein applies only to the Remaining Leases, which the Debtors may, in the exercise of their business judgment, determine to assume, amend and assume, or reject in accordance with the Lease Rejection Procedures or pursuant to additional rejection motions.

## BASIS FOR RELIEF

### I. The Lease Rejection Procedures Are in the Best Interests of the Debtors' Estates and Should Be Approved.

15.     As noted above, the Debtors may determine to reject a substantial number of the Remaining Leases in addition to the Closing Store Leases that are the subject of the omnibus rejection motions filed on the Petition Date. The Court's approval of the Lease Rejection Procedures will streamline the administration of these chapter 11 cases and promote the efficiency of the Debtors' reorganization efforts, including by eliminating substantial legal expenses that the Debtors would otherwise incur in connection with multiple lease rejection motions and hearings before the Court thereon. Moreover, the Lease Rejection Procedures are fair and reasonable to Lease Counterparties, as they afford such parties the opportunity to be heard with respect to the rejection of Specified Leases.

16. The Court may approve and authorize the Debtors to implement the Lease Rejection Procedures under section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers and permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court's exercise of its authority under section 105(a) of the Bankruptcy Code is appropriately used to carry out one of the central policies of chapter 11—*i.e.*, to preserve value and maximize property available to satisfy the Debtors' stakeholders. Moreover, Courts in this District have granted similar relief.[4] For these reasons and the reasons set forth below, the Lease Rejection Procedures should be approved.

## II. The Debtors' Rejection of Specified Leases Is an Exercise of the Debtors' Business Judgment.

17. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The purpose of section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." In re Republic Airways Holdings Inc., 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993)); see also Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.");

---

[4] See, e.g., In re Claire's Stores, Inc., Case No. 18-10584 (MFW) (Bankr. D. Del. Apr. 17, 2018) [Docket No. 285] (approving procedures for rejection of leases of nonresidential real property); In re The Walking Co. Holdings, Inc., Case No. 18-10474 (LSS) (Bankr. D. Del. Apr. 4, 2018) [Docket No. 185] (same); In re Charming Charlie Holdings Inc., Case No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) [Docket No. 286] (same); In re RadioShack Corp., Case No. 15-10197 (KJC) (Bankr. D. Del. Feb. 20, 2015 [Docket No. 467] (same).

01:23725299.1

In re Exide Techs., 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization").

18. The standard applied by courts to determine whether to authorize the assumption or rejection of an unexpired nonresidential lease is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate. Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R., 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); accord In re HQ Glob. Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003).

19. In applying the business judgment standard, bankruptcy courts generally will not second-guess a debtor's decision to assume or reject leases. Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.), 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion"). The business judgment standard mandates that a court "summarily affirm" a debtor's business decision to reject an unexpired lease unless the decision is the product of bad faith, whim or caprice. In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001).

20. The Debtors have determined, in their business judgment, that their rejection of Specified Leases in accordance with the Lease Rejection Procedures proposed herein is and will be in the best interests of their estates. The ability of the Debtors to reject leases of nonresidential real property in the exercise of their business judgment is consistent with the

purpose of section 365 of the Bankruptcy Code: to enable a debtor to abandon burdensome property. Because the Debtors will need to reject a significant number of leases during these chapter 11 cases, being constrained to seek separate Court approval of each rejection would be administratively burdensome to the Debtors and the Court and result in unnecessary costs to the Debtors' estates. The Lease Rejection Procedures are designed to minimize unnecessary expenses and streamline the Debtors' reorganization efforts while complying with the applicable requirements of the Bankruptcy Code and Bankruptcy Rules regarding the rejection of leases. Accordingly, the Lease Rejection Procedures should be approved.

### III. The Lease Rejection Procedures Provide Lease Counterparties with Reasonable and Sufficient Notice and Opportunity to Object and Be Heard.

21. The Lease Counterparties will not be prejudiced by the Lease Rejection Procedures. Upon receipt of a Rejection Notice, the Lease Counterparties will have received advance notice of the Debtors' intent to reject the applicable Specified Leases as of the proposed Rejection Date. See In re Mid Region Petroleum, Inc., 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject), aff'd 1 F.3d 1130 (10th Cir. 1993); see also In re Carlisle Homes, Inc., 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding that a debtor may reject an executory contract by clearly communicating its intention to reject). Additionally, the Debtors will likely vacate the stores that correspond to the Specified Leases before or upon serving the Rejection Notice, thereby allowing the Lease Counterparties to take possession of the property. See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 608–09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balancing of equities favored rejection retroactive of a nonresidential lease of real property from the date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); In re New Valley Corp., Case No. 98-982,

2000 U.S. Dist. LEXIS 12663, at *44–46 (D.N.J. Aug. 31, 2000) (holding that bankruptcy court properly exercised its discretion in adjusting the rejection effective date to the date on which the debtor vacated and the landlord exercised control over the property); In re Amber's Stores, Inc., 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that a lease should be deemed rejected as of the petition date due to the equities of the case where the debtor turned over the keys and vacated the premises and served its motion to reject the lease as soon as possible).

22. As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a). Bankruptcy Rule 9014 provides that "[i]n a contested matter . . . , not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). The notice and hearing requirements of Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given *in light of the particular circumstances*. See 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances") (emphasis added). The Lease Rejection Procedures provide for notice to Lease Counterparties and an opportunity to be heard at a hearing, and thus satisfy the requirements of Bankruptcy Rules 6006(a) and 9014.

23. Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume and assign or reject multiple unexpired leases in one motion, subject to Bankruptcy Rule 6006(f). Fed. R. Bankr. P. 6006(e). Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple unexpired leases must satisfy, all of which are procedural in nature. A motion to assume or reject multiple unexpired leases that are not between the same parties shall:

      (i)      state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

      (ii)      list parties alphabetically and identify the corresponding contract or lease;

      (iii)      specify the terms, including the curing of defaults, for each requested assumption or assignment;

      (iv)      specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

      (v)      be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

      (vi)      be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). The purpose of Bankruptcy Rule 6006(f) is to protect the due process rights of Lease Counterparties, who must be able to locate their leases and readily determine whether their leases are being assumed or rejected.

      24.      The Lease Rejection Procedures satisfy Bankruptcy Rule 6006(f), including the 100-lease limit set forth in subsection (6) thereof. Moreover, in accordance with Bankruptcy Rule 6007(a), the Debtors will provide the U.S. Trustee and other parties in interest with the requisite notice and opportunity to object to any proposed abandonment of property.

      25.      The Lease Rejection Procedures protect the due process rights of the Lease Counterparties and all other parties in interest by providing notice and an opportunity to be heard. In the event a Lease Counterparty (or any other party in interest) objects to the rejection of a particular Specified Lease, the Lease Rejection Procedures specify how such objection may be prosecuted, resolved or heard by the Court. For the foregoing reasons, the Court should approve the Lease Rejection Procedures, and the Debtors should be authorized to reject Specified Leases in a manner consistent with the terms of such procedures.

## IV. The Debtors Should Be Permitted to Abandon Personal Property in Accordance with the Lease Rejection Procedures.

26. Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In abandoning property under section 554, "the debtor 'need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon." In re Contract Research Solutions, Inc., Case No. 12-11004 (KJC), 2013 Bankr. LEXIS 1784, at *11 (Bankr. D. Del. May 1, 2013). The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare. See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot. 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

27. Any Personal Property that the Debtors abandon at the stores subject to the Specified Leases is or will be of inconsequential value to the Debtors' estates, and the cost to the Debtors of retrieving, storing, marketing, and reselling the Remaining Property exceeds or will exceed any realistic economic benefit that might be realized by retaining such property. Accordingly, the Debtors have determined, in the exercise of their sound business judgment, that their decision to abandon any Personal Property will be in the best interests of the Debtors and their estates.

## V. The Debtors Should Be Authorized to Enter into Amendments with Respect to the Remaining Leases that Provide a Net Benefit to the Estate.

28. As noted above, before rejecting any Remaining Lease, the Debtors will engage with the relevant Lease Counterparty in an attempt to obtain improved economic terms. If such efforts are successful, then the Debtors and the Lease Counterparty will enter into an amendment

to the Remaining Lease, and the Debtors will assume such Remaining Lease, as amended, under the terms of the Plan.

29.     As an initial matter, the Debtors' entry into amendments to their real property leases on terms that, in the Debtors' business judgment, provide a net benefit to their estates (including the reduction of rent obligations) are ordinary-course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code. To determine whether a transaction falls within the ordinary course of business, the Third Circuit has adopted a two-step inquiry. First, a court will analyze the so-called "vertical dimension" of the transaction, which focuses on whether the transaction "subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." In re Roth Am., Inc., 975, F.2d 949, 953 (3d Cir. 1992). Second, the court will analyze the "horizontal dimension," which is "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." Id. Businesses with extensive brick-and-mortar retail store networks routinely enter into amendments to their real property leases. As of the Petition Date, the Debtors were party to more than 3,200 leases of real property. Like other large retailers, the Debtors routinely negotiate with landlords for modified lease terms. In the six months preceding the Petition Date, for example, the Debtors entered into more than 220 amendments to their real property leases, including lease modifications, extensions and terminations. For these reasons, the Debtors should be permitted to enter into any post-petition lease amendment in the ordinary course of business without notice or a hearing.

30.     Solely to the extent the Court determines that the Debtors' entry into post-petition amendments of their real property leases is not in the ordinary course of business, the Debtors request that the Court authorize the Debtors to enter into such amendments to the extent the

terms of such amendments provide a net benefit to the estates. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "sound business purpose" that justifies such action. In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (Bankr. D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" standard for transactions under section 363 of the Bankruptcy Code).

31. As referenced above in the context of the Debtors' determination to reject leases, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). When a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotation marks omitted).

32. Here, the Debtors' entry into amendments to the Remaining Leases on terms that provide a net benefit to the Debtors' estates is plainly an exercise of their sound business judgment. The Debtors are working to optimize their retail store network and have analyzed the financial performance of each of their retail stores. For certain of the Remaining Leases,

assumption by Debtors is economically feasible only to the extent the Debtors can obtain more favorable lease terms. For these reasons, the Debtors submit that their entry into amendments to the Remaining Leases on terms that provide a net benefit to the Debtors' estates is a sound exercise of their business judgment and that the Court should authorize the Debtors to enter into such amendments without the need for further notice or application to the Court.

## RESERVATION OF RIGHTS

33. Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; or (e) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

34. In addition, to successfully implement the relief requested herein, the Debtors request a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

35.  Similarly, for the reasons stated above, the Debtors request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## NOTICE

36.  Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the DIP Agent; (iv) counsel to the Prepetition ABL Agent; (v) counsel to the Prepetition Term Loan Lender; (vi) counsel to the exit term loan financing backstop group; (vii) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (ix) the United States Department of Justice; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Although Bankruptcy Rule 6007 requires the Debtors to serve a motion to abandon property on, among other parties, all of the Debtors' creditors, Local Rule 2002-1(b) abrogates that rule.  Accordingly, the Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and any further relief as the Court may deem just and proper.

Dated:  October 10, 2018
Wilmington, Delaware

SIDLEY AUSTIN LLP
Bojan Guzina
Matthew E. Linder
Blair M. Warner
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

SIDLEY AUSTIN LLP
Gabriel R. MacConaill (No. 4734)
Michael Fishel
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ashley E. Jacobs*
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Ashley E. Jacobs (No. 5635)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION