# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MATTRESS FIRM, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12241 (CSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: October 30, 2018 at 4:00 p.m. (ET)**<br>**Hearing Date: November 9, 2018 at 1:00 p.m. (ET)** |

**DEBTORS' FIFTH OMNIBUS MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING DEBTORS TO (A) REJECT CERTAIN
UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY *NUNC PRO TUNC* TO
OCTOBER 31, 2018 AND (B) ABANDON CERTAIN PERSONAL PROPERTY
IN CONNECTION THEREWITH AND (II) GRANTING RELATED RELIEF**

> **LANDLORDS RECEIVING THIS MOTION SHOULD LOCATE
> THEIR NAMES AND LEASE(S) ON THE SCHEDULE OF LEASES
> ATTACHED HERETO AS SCHEDULE 1 TO EXHIBIT A**

Mattress Firm, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") submit this motion (this "Motion"), pursuant to sections 105(a), 362(d), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to (a) reject certain unexpired leases (including any guarantees thereof and any amendments or modifications thereto or assignments or subleases thereof, collectively, the "Leases") of nonresidential real property located at the addresses of the Debtors' retail stores set forth on **Schedule 1** to **Exhibit A** attached hereto

---

[1] The last four digits of Mattress Firm Inc.'s federal tax identification number are 6008. The Debtors' mailing address is 10201 S. Main Street, Houston, Texas 77025. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. This information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/MattressFirm or by contacting counsel for the Debtors.

01:23752357.1

(collectively, the "Closing Stores"), *nunc pro tunc* to the Rejection Date (as defined below), and (b) abandon certain furniture, fixtures, equipment and other assets at the Closing Stores (collectively, the "Remaining Property"), each effective as of the Rejection Date (as defined below), and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1. On October 5, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors continue to operate the Debtors' businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested in this Motion are sections 105(a), 362(d), 365(a), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

## THE DEBTORS' PREPACKAGED PLAN OF REORGANIZATION

5. On the Petition Date, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates* [Docket No. 22] (the "Plan") and the related disclosure statement [Docket No. 23] (the "Disclosure Statement"). On October 9, 2018, the Court entered an order scheduling a combined hearing for November 16, 2018 to consider approval of the Disclosure Statement and confirmation of the Plan [Docket No. 181]. All classes of claims against the Debtors are unimpaired under the Plan.

## BACKGROUND OF THE DEBTORS

6. Additional information regarding the Debtors' business, capital structure and the circumstances preceding the Petition Date are set forth in the *Declaration of Hendré Ackermann in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 25].

## THE LEASES

7. As of the Petition Date, the Debtors operated approximately 3,230 retail stores in 49 states.[2] As a key component of their restructuring strategy, the Debtors are engaged in ongoing efforts to optimize their retail store network. The Debtors, in consultation with their advisors, have analyzed store-level earnings, occupancy costs, and other data and identified certain stores that are underperforming or competing with other stores operated by the Debtors. On and following the Petition Date, the Debtors filed four omnibus motions to reject a total of 306 unexpired leases of nonresidential real property that correspond to certain of the Debtors' retail stores (collectively, the "Pending Rejection Motions"). See Docket Nos. 38, 39, 40 & 190. By this Motion, the Debtors, in their reasonable business judgment, are requesting authority to reject the Leases of 99 additional stores—*i.e.*, the Closing Stores—as of October 31, 2018 (together with the Pending Rejection

---

[2] The Debtors' operations also include approximately 125 franchisee-operated stores in Alaska, Montana, New Mexico, North Dakota, South Dakota and West Virginia, as well as certain franchised markets in Georgia, Iowa, Mississippi, New York, Oklahoma, South Carolina and Texas, which also operate under the *Mattress Firm*® brand name.

01:23752357.1

Motions, collectively, the "Omnibus Lease Rejection Motions"), which is the date by which the Debtors will have ceased operations at the Closing Stores, vacated and surrendered possession of the Closing Stores, and delivered the keys to the Closing Stores to the respective landlords (such date, with respect to each Closing Store, the "Rejection Date").

8. The Leases provide no benefit to the Debtors' estates. By rejecting the Leases, the Debtors will save approximately $1.2 million per month in rent and associated costs. Absent rejection, the Debtors would be obligated to continue to pay rent under the Leases even though the Debtors will have ceased operations at, and will no longer continue in possession of, the Closing Stores. Moreover, in addition to their obligations to pay rent under the Leases, the Debtors would also be obligated to pay certain real property taxes, utilities, insurance and similar charges. The Debtors have determined in their business judgment that such costs constitute a waste of estate assets. The cost of maintaining the Closing Stores outweighs any revenues that the Closing Stores currently generate or are likely to generate in the future. Moreover, given the obligations under the Leases and current market conditions, the Debtors have concluded, in consultation with their advisors, that the Leases are not marketable and are unlikely to generate material value for the Debtors' estates.

## THE REMAINING PROPERTY

9. In the ordinary course of business, the Debtors have accumulated certain miscellaneous assets at the Closing Stores, including certain furniture, fixtures, and equipment of *de minimis* value. The Debtors generally will remove these assets from the Closing Stores and transport such assets to the Debtors' distribution centers or other stores. The Debtors have determined, however, in the exercise of their business judgment, that certain of these assets—*i.e.*, the Remaining Property—will be exceedingly difficult or expensive to remove or store. Accordingly, the Debtors

will not realize any economic benefit by retaining the Remaining Property.  Therefore, the Debtors are requesting authority to abandon any Remaining Property at the Closing Stores.

## RELIEF REQUESTED

10. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to (a) reject the Leases set forth on **Schedule 1** to **Exhibit A** attached hereto *nunc pro tunc* to the Rejection Date and (b) abandon the Remaining Property, each effective as of the Rejection Date, and (ii) granting related relief.  The Debtors reserve all rights to modify the schedule of Leases, including by removing one or more Leases from **Schedule 1**, without prejudice to their rights to reject such Leases at a later date.[3]

## BASIS FOR RELIEF

**I. The Court Should Authorize the Rejection of the Leases under Section 365(a) of the Bankruptcy Code as a Reasonable Exercise of the Debtors' Business Judgment.**

11. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The purpose behind section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property."  In re Republic Airways Holdings Inc., 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993)); see also Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to

---

[3] The Debtors may also request authority to reject additional leases if their efforts to renegotiate the terms of such leases are unsuccessful.  On October 10, 2018, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving Procedures for Rejecting Unexpired Leases of Nonresidential Real Property, (II) Authorizing the Debtors to Enter into Amendments to Certain Unexpired Leases of Nonresidential Real Property, and (III) Granting Related Relief* [Docket No. 211] (the "Rejection Procedures Motion").  If granted, the relief requested in the Rejection Procedures Motion would not apply to the Leases that are the subject of the Omnibus Lease Rejection Motions and would only apply to additional leases, if any, that the Debtors request authority to reject pursuant to the procedures set forth in the Rejection Procedures Motion.

01:23752357.1

a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); In re Exide Techs., 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization.").

12. The standard applied by courts to determine whether the assumption or rejection of an unexpired nonresidential lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate. See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R., 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); accord In re HQ Glob. Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003).

13. In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases. See Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.), 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion"); In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

14. The Debtors' rejection of the Leases is within the Debtors' business judgment and will serve the best interests of their estates. As stated above, the Debtors are engaged in ongoing efforts to optimize their retail network and, in consultation with their advisors, have determined to cease operations at the Closing Stores. The Debtors are requesting authority to reject the Leases to

01:23752357.1

avoid the incurrence of any additional, unnecessary administrative expenses in connection with the Closing Stores. The Debtors have concluded that the cost of maintaining the Closing Stores outweighs any revenues that the Closing Stores currently generate or are likely to generate in the future, and that the costs associated with the Leases exceed any marginal benefits that could potentially be achieved from the assignment or sublease of the Leases. For the foregoing reasons, the Debtors believe that rejecting the Leases is a reasonable exercise of their business judgment and should be approved.

## II. The Court Should Authorize the Rejection of the Leases Effective *Nunc Pro Tunc* to the Rejection Date.

15. The Debtors seek an effective rejection date for the Leases *nunc pro tunc* to the Rejection Date in order to avoid paying any unnecessary expenses related to the Leases. A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. See, e.g., Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028–29 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); In re DBSI, Inc., 409 B.R. 720, 734 n.4 (Bankr. D. Del. 2009) ("Under appropriate circumstances, [a] Court may enter a lease rejection order with an effective date earlier than the date the order is entered."); In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (finding that "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)" and granting retroactive relief to the date on which the debtors surrendered the premises to their landlords); In re Fleming Cos., 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection *nunc pro tunc* permitted to the date of the motion or the date the premises surrendered).

16. When principles of equity so dictate, courts may permit *nunc pro tunc* rejection to the date on which the counterparty to the lease was given definitive notice of the debtor's intent to reject. See In re KDA Grp., Inc., No. 16-21821-GLT, 2017 WL 4216563, at *4 (Bankr. W.D. Pa. Sept. 20, 2017) ("[M]any courts within the Third Circuit have adopted the notion that a lease may be retroactively rejected when principles of equity so dictate.") (quotations omitted); In re Fleming Cos., 304 B.R. at 96 ("[T]o grant *nunc pro tunc* rejection, the Debtors must have stated an unequivocal intent to reject the leases."). Courts in this jurisdiction have previously considered the question of retroactive rejection of unexpired leases. See In re Namco Cybertainment, Inc., Case No. 98-00173 (PJW) (Bankr. D. Del. Feb. 6, 1998). In Namco, the court permitted retroactive rejection on the conditions that (a) the property (and the keys thereto) subject to a lease were surrendered with an unequivocal statement of abandonment to the landlord or lessor, (b) the motion was filed and served on the landlord or lessor, (c) the official committee consented to the relief requested in the motion, and (d) the debtor acknowledged that it would not have the right to withdraw the motion prior to the hearing.

17. Here, the Debtors submit that the Court should authorize the rejection of the Leases *nunc pro tunc* to the Rejection Date. There is no remaining benefit to the Debtors' estates from the Leases because the Debtors are in the process of the exiting the Closing Stores. The Debtors do not need the leasehold interests created by the Leases of the Closing Stores to conduct their business. On the other hand, requiring the Debtors to continue to perform under the Leases after the Rejection Date could impose onerous obligations on the Debtors and their estates. Second, the Debtors believe that the filing and service of this Motion fulfills the purpose of the Namco factors—establishing an unequivocal relinquishment—under the circumstances. The filing of this Motion serves to underscore and reiterates the Debtors' unequivocal intent to abandon their interest in the premises of

the Closing Stores. Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for Leases that are not necessary to their ongoing business operations. Moreover, the lessors under the Leases will not be unduly prejudiced by rejection *nunc pro tunc* to the Rejection Date because, on the date hereof, the Debtors have served this Motion on each lessor and/or their agents or representatives, thereby advising the lessors that the Debtors intend to reject the Leases effective as of the Rejection Date. Furthermore, on or before the Rejection Date the Debtors will relinquish the keys to the premises of the Leases and will abandon the Premises and, in conjunction therewith, indicate that they are unequivocally surrendering possession as a result thereof. The keys will be delivered to the lessors under the Leases, together with an appropriate correspondence, on or before October 31, 2018.

18. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Leases under section 365(a) of the Bankruptcy Code, *nunc pro tunc* to the Rejection Date, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

**III.   The Court Should Authorize the Debtors to Abandon the Remaining Property under Section 554(a) of the Bankruptcy Code.**

19. Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In abandoning property under section 554, "the debtor 'need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon." In re Contract Research Sols., Inc., Case No. 12-11004 (KJC), 2013 Bankr. LEXIS 1784, at *11 (Bankr. D. Del. May 1, 2013). The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the

public's welfare.  See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

20. Any Remaining Property left at the Closing Stores is of inconsequential value to the Debtors' estates, and the cost to the Debtors of retrieving, storing, marketing, and reselling the Remaining Property will exceed any realistic economic benefit that might be realized by retaining such property.  Accordingly, the Debtors have determined, in the exercise of their sound business judgment, that their decision to abandon any Remaining Property will be in the best interests of the Debtors and their estates.

21. To facilitate the Debtors' abandonment of the Remaining Property, the Debtors also request authorization under section 362(d) of the Bankruptcy Code, which permits a modification of the automatic stay for "cause," to the extent necessary to permit the relevant landlords to dispose of any Remaining Property without further notice or any liability to the Debtors or any third parties and without waiving any claims against the Debtors.

## **RESERVATION OF RIGHTS**

22. Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual,

common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.

## **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS**

23.     In addition, by this Motion, the Debtors request a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, the Debtors require immediate relief in the form of an order authorizing their rejection of the Leases as of the Rejection Date.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

24.     Similarly, for the reasons stated above, the Debtors request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## **NOTICE**

25.     Notice of this Motion will be provided to (i) the landlords under the Leases; (ii) the U.S. Trustee; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iv) counsel to the DIP Agents; (v) counsel to the Prepetition ABL Agent; (vi) counsel to the Prepetition Term Loan Lender; (vii) counsel to the exit term loan financing backstop group; (viii) the United States Attorney's Office for the District of Delaware; (ix) the Internal Revenue Service; (x) the United States Department of Justice; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Although Bankruptcy Rule 6007 requires the Debtors to serve a motion to abandon property on, among other parties, all of the Debtors' creditors,

Local Rule 2002-1(b) abrogates that rule. Accordingly, the Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and any further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: October 16, 2018<br>Wilmington, Delaware | SIDLEY AUSTIN LLP<br>Bojan Guzina<br>Matthew E. Linder<br>Michael Fishel<br>Blair M. Warner<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br><br>-and-<br><br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Ashley E. Jacobs*<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Ashley E. Jacobs (No. 5635)<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>PROPOSED ATTORNEYS FOR THE DEBTORS<br>AND DEBTORS IN POSSESSION |