**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ X
                                 :

*In re*                                  :      Chapter 11

MATTRESS FIRM, INC., *et al.*,[1]   :      Case No. 18-12241 (CSS)

      Debtors.                  :      Jointly Administered

                                 :      Hearing Date (proposed): October 29, 2018 at 10:00 a.m. (ET)
                                 :      Obj. Deadline (proposed): October 26, 2018 at 4:00 p.m. (ET)
------------------------------------------------------------ X

**MOTION SEEKING ENTRY OF AN ORDER PURSUANT TO
§105(a) and §362(d) OF THE BANKRUPTCY CODE LIFTING THE AUTOMATIC
STAY TO ALLOW TEMPUR-PEDIC NORTH AMERICA, LLC,
TEMPUR-PEDIC MANAGEMENT, LLC AND DAN-FOAM APS
TO PROCEED WITH PENDING DISTRICT COURT LITIGATION**

Tempur-Pedic North America, LLC, Tempur-Pedic Management, LLC and Dan-Foam ApS (collectively, "Tempur Sealy") hereby file this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a) and 362(d) of title 11, United States Code (the "Bankruptcy Code"), lifting the automatic stay to allow Tempur Sealy to proceed with certain litigation pending before the United States District Court for the Middle District of Florida Tampa Division at Case No. 8:18-CV-02147-VMC-SPF (the "Florida Action") against Debtor Mattress Firm, Inc. ("Mattress Firm"). In support of this Motion, Tempur Sealy respectfully represents as follows:

---

[1] The last four digits of Mattress Firm, Inc.'s federal tax identification number are 6008. The Debtors' mailing address is 10201 S. Main Street, Houston, Texas 77025. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. This information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/MattressFirm or by contacting counsel for the Debtors.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Any proceeding with respect to the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); however, Tempur Sealy reserves all rights with respect to whether the claims and other matters underlying and relating to the Florida Action fall within the jurisdiction of this Court or constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 105(a) and 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. Venue of the Debtors' chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. Tempur Sealy develops, manufactures, markets, distributes and sells various bedding products, including mattresses, pillows and other comfort products under the Tempur-Pedic trademark.

5. On April 7, 2017, Tempur-Pedic North America, LLC, Sealy Mattress Company, Dan-Foam ApS, and Sealy Technology LLC (collectively, the "Texas Tempur Plaintiffs") commenced litigation against Mattress Firm in the United States District Court for the Southern District of Texas, Houston Division (the "Texas Federal Court"), Case No. 4:17-CV-01068 asserting causes of action for trademark infringement, unfair competition, trademark dilution, breach of contract and other state law violations in connection with certain improper use of Tempur Sealy trademarks by Mattress Firm and seeking injunctive relief and damages (the

"Texas Federal Action").[2] On July 11, 2017, the Texas Federal Court granted the Texas Tempur Plaintiffs' request for a preliminary injunction. The trial in the Texas Federal Action was scheduled to commence on October 10, 2018, but was stayed as a result of the Debtors' filing of petitions for relief under chapter 11 of the Bankruptcy Code. Tempur Sealy seeks no relief relating to the Texas Federal Action through this Motion.

6. On August 28, 2018, Tempur Sealy filed Case No. 8:18-CV-02147-VMC-SPF in the United States District Court for the Middle District of Florida, Tampa Division (the "Florida Court") against Mattress Firm and three unrelated additional defendants (collectively, "Defendants") asserting causes of action for trademark and trade dress infringement under federal, state and common law; dilution under federal and state law; and unfair competition under federal, state and common law (the "Florida Action"), which litigation is the subject of this Motion. At its core, the Florida Action is based on Defendants' manufacturing, advertising, and sale of mattresses with trade dress that is confusingly similar to Tempur-Pedic trade dress owned by Tempur Sealy, under the name "Therapedic", which, as used by Defendants, is confusingly similar to the Tempur-Pedic trade dress. The causes of action in the Florida Action are separate and apart from those asserted in the Texas Federal Action.[3]

7. On August 28, 2018, Tempur Sealy filed a motion for a preliminary injunction against Defendants in the Florida Action seeking to enjoin Defendants from infringing upon the Tempur-Pedic brand (which encompasses its marks and trade dress) during the pendency of the Florida Action, and on September 25, 2018, the Florida Court held a hearing on Tempur

---

[2] Mattress Firm and certain Tempur Sealy entities are also party to pending litigation in Texas state court, with respect to which litigation Tempur Sealy does not seek any relief through this Motion.

[3] On September 10, 2018, Mattress Firm moved to transfer the Florida Action to the Texas Federal Court, which motion was denied by the Florida Court on September 20, 2018 (Florida Action, Dkt. No. 51).

Sealy's motion for a preliminary injunction. The Florida Court entered an order on September 25, 2018 ordering the parties to meet and confer with respect to a Case Management Report setting deadlines for the proceedings, which they did on October 3, 2018.

8. On October 5, 2018 (the "Petition Date"), Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. Also on October 5, 2018, while the Magistrate Judge overseeing the Florida Action was in the process of preparing a report and recommendation on Tempur Sealy's motion for a preliminary injunction, the Florida Court entered an order staying the Florida Action pursuant to section 362(a) of the Bankruptcy Code in light of the chapter 11 filing by Mattress Firm, concluding that the proceeding could not continue against any of the Defendants in light of the automatic stay.

## RELIEF REQUESTED

10. By this Motion, Tempur Sealy seeks entry of the Proposed Order, pursuant to section 105(a) and 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1, lifting the automatic stay to allow Tempur Sealy to proceed with the Florida Action.

## BASIS FOR RELIEF

11. Section 362(d)(1) of the Bankruptcy Code authorizes the court to grant relief from the stay "for cause." Although the Bankruptcy Code does not provide guidance as to what constitutes "cause" under section 362, courts must determine whether cause exists to lift the stay on a case-by-case basis, "examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del 2009);

*see also Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Here, the totality of the circumstances clearly show that cause exists to lift the stay to permit the Florida Action to continue.

12.     In this district, bankruptcy courts generally rely upon a three-pronged balancing test to determine whether "cause" exists to lift the stay to allow pending litigation to proceed:  (a) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (b) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor; and (c) whether the creditor has a probability of prevailing on the merits.  *In re Tribune Co.* 418 B.R. 116, 126 (Bankr. D. Del 2009).  Importantly, the legislative history to section 362(d)(1) makes clear that it is "often…more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere."  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code & Admin. News 1978, pp. 5787, 5297); *see also In re Rexene Prod. Co.*, 141 B.R. at 576 (quoting legislative history).

13.     All three prongs point strongly in favor of lifting the stay to allow the Florida Action to continue.  <u>First</u>, there is no great prejudice to any of the Debtors or their estates by allowing the Florida Action to proceed.  To date, Tempur Sealy seeks only injunctive relief through the Florida Action[4] and thus, even if Tempur Sealy is successful in its claims, the Debtors'

---

[4] Tempur Sealy reserves all their rights to seek damages and other relief in the Florida Action.

estates will not be responsible for money damages and there is no threat of a collection action that could threaten estate property.[5]

14. Moreover, Mattress Firm itself appears to have taken the position that the Florida Action is not material to its business, as evidenced by its several contractual representations in connection with its proposed debtor-in-possession financing and prepackaged plan of reorganization that there are "no actions, suits, proceedings, claims or disputes pending…that would reasonably be expected to have a Material Adverse Effect."[6] In fact, permitting the Florida Action to proceed could benefit Mattress Firm's bankruptcy estate by resolving Mattress Firm's rights and eliminating uncertainty with respect to Mattress Firm's value and future business operations.[7]

15. <u>Second</u>, the hardship to Tempur Sealy as a trademark and trade dress owner considerably outweighs any potential hardship to Mattress Firm, which would primarily consist of the relatively immaterial cost of defending the Florida Action.[8] Tempur Sealy is being irreparably harmed on a daily basis through loss of goodwill and loss of control over its reputation by the alleged confusion that Mattress Firm is causing. Indeed, the Texas Federal Court already has recognized harm of this nature to Tempur Sealy in granting a preliminary injunction against Mattress Firm in the unrelated Texas Federal Action. Moreover, Mattress Firm *continues* to

---

[5] *See, e.g. In re Pan Am School of Travel Inc.*, 47 B.R. 242, 244 (Bankr. S.D.N.Y. 1985) (denying debtor's motion to vacate an order granting Pan Am relief from stay of a trademark infringement action because "what is at issue in Pan Am's lawsuit is not an attempt to collect a pre-petition debt but the propriety of an injunction barring further alleged infringement and unfair competition …").

[6] *See* Section 5.6 "Litigation" of each of that certain Senior Secured Super-Priority Debtor-in-Possession ABL Credit Agreement and that certain Senior Secured Super-Priority Debtor-in-Possession Term Loan Credit Agreement, attached as Exhibit C to the Debtor's Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and its Debtor Affiliates [Dkt No. 23].

[7] *See, e.g.*, *In re Consol. Distribs., Inc.*, Case No. 13-40350 (NHL), 2013 WL 3929851, at *10 (Bankr. E.D.N.Y. July 23, 2013) (lifting the automatic stay with respect to trademark infringement litigation).

[8] Tempur Sealy further notes that (i) the cost of the Florida Litigation is shared with the other Defendants and (ii) such cost may be covered by Mattress Firm's licensor, Ther-A-Pedic Associates, Inc., which is the owner of the infringing trademark at issue in the Florida Action, further reducing the actual hardship to Mattress Firm itself.

infringe on Tempur Sealy's intellectual property post-Petition Date and in fact Tempur Sealy understands that Mattress Firm has expanded sales of their infringing products to new territories post-Petition Date. While the automatic stay remains in effect with respect to the Florida Action, Tempur Sealy is deprived of its ability to redress Mattress Firm's continuing and growing harm to the Tempur Sealy brand.

16. The Tempur-Pedic brand was developed with care and since 2005, Tempur Sealy has invested over $1 billion building the brand in North America. The Tempur-Pedic marks are a distinctive and well-known symbol of Tempur Sealy's goods and services and are widely recognized by the general consuming public in the United States and throughout the world. Mattress Firm's continued use of confusingly similar marks dilutes the distinctiveness of the Tempur-Pedic marks and lessens the capacity of the Tempur-Pedic marks to identify and distinguish Tempur Sealy's goods and services.

17. Mattress Firm's use of similar marks and trade dress causes confusion, deception, and mistake by creating the false and misleading impression that Mattress Firm's goods are manufactured or distributed by Tempur Sealy, or are associated or connected with Tempur Sealy, or have the sponsorship, endorsement, or approval of Tempur Sealy. Tempur Sealy's reputation and customer goodwill are suffering as a result of the Defendants' conduct and will continue to suffer in the absence of judicial relief protecting Tempur Sealy's rights. The substantial harm that Tempur Sealy will suffer if it is not permitted to vindicate its rights through the Florida Action far outweigh any minimal prejudice that Mattress Firm will suffer.

18. <u>Third</u>, Tempur Sealy has a more than sufficient probability of success on the merits of its claims in the Florida Action to justify lifting the stay. Tempur Sealy expects that the merits of its claims would have been judicially recognized and validated by the report and

recommendation of the Magistrate Judge on its motion for a preliminary injunction if Mattress Firm had not commenced these chapter 11 cases on the eve of such report and recommendation. Under the third prong of the test, even "a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 425 (D. Del. 1993). There can be no dispute that Tempur Sealy satisfies this low standard.

19. Tempur Sealy's complaint in the Florida Action, attached hereto as **Exhibit B** (the "Florida Complaint"), clearly alleges violations of Tempur Sealy's indisputable intellectual property rights in the Tempur-Pedic brand[9] by the Defendants under Section 32 and 43(a) of the Lanham Act, which provides for liability where a defendant "falsely suggest[s] affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship."[10] The likelihood of confusion necessary for a Lanham Act violation is determined by balancing a number of factors, and a plaintiff need not prove that all or even most of these factors favor liability to succeed on a claim.[11] Here, a number of key factors weigh heavily in favor of Tempur Sealy's likelihood of success on their claims in the Florida Action.

---

[9] The validity of Tempur Sealy's rights in the Tempur-Pedic brand are beyond dispute. Tempur-Pedic trademarks are covered by long-held registrations and are entitled to "conclusive evidence" of validity pursuant to 15 U.S.C. § 1115(b). Additionally, Tempur-Pedic registered trade dress is also covered by federal registrations, which constitute "prima facie evidence" of validity. In either case, "a registered trademark automatically invokes a statutory presumption that the trademark is valid. . . . [and] shifts the burden of proof to the party challenging the validity of the mark." *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 593 (6th Cir. 1989).

[10] *Prof'l Golfers Ass'n v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975).

[11] *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984) (listing factors, including: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and the defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does he hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

20. First, the Tempur-Pedic brand (including its marks and trade dress) is strong both conceptually due to the inherent distinctiveness of its marks and trade dress[12] and commercially due to the extensive expenditures on advertising and promotion of the brand by Tempur Sealy. Second, Tempur Sealy has alleged that Mattress Firm uses nearly identical reproductions of every element of the Tempur-Pedic brand. Third, Tempur Sealy and Mattress Firm compete in the same market, for identical customers, using similar advertising and channels of distribution. Fourth, Tempur Sealy has alleged that Mattress Firm's branding is nearly a carbon copy of Tempur Sealy's Tempur-Pedic brand. Lastly, actual confusion is inevitable given the overwhelming similarities between Mattress Firm's Therapedic mattresses and Tempur Sealy's Tempur-Pedic Pro-Adapt mattresses.[13] Accordingly, there can be no dispute that Tempur Sealy's likelihood of success more than satisfies the standard under the test to lift the automatic stay with respect to its pending litigation.

21. Finally, the interests of judicial economy and the economical resolution of the Florida Action favor lifting the stay rather than this Court adjudicating Tempur Sealy's causes of action. The Florida Action is already pending in the Florida Court and has been for over two months. A hearing on Tempur Sealy's request for a preliminary injunction, which took nearly three hours, has already been held and a decision on such request was pending at the time of Mattress Firm's bankruptcy filing. In addition, the claims alleged in the Florida Action relate to intellectual property and unfair competition law, including Florida unfair competition law, and not

---

[12] *See generally John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974 (11th Cir. 1983) ("A purely fanciful or arbitrary mark is generally considered strong and is given protection over a wide range of related products and variations in appearance of the mark.") (internal quotation marks omitted)); *Taco Cabana, Int'l., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 932 (5th Cir. 1991) (combination of restaurant design elements held inherently distinctive).

[13] *See* Florida Complaint, attached hereto as Exhibit B, p. 14.

bankruptcy law, and thus the Florida District Court is at least equally competent as this Court to adjudicate the issues.

## WAIVER OF STAY OF ORDER

22. Tempur Sealy respectfully submits that, in light of the nature of the stay relief requested, a waiver of the fourteen-day period under Bankruptcy Rule 4001(a)(3) is appropriate in this case and requests that the relief set forth in the Proposed Order be effective immediately.

## NOTICE

23. Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Debtors; and (iii) all parties requesting notice pursuant to Rule 2002 of Federal Rules of Bankruptcy Procedure.

[*Remainder of Page Left Intentionally Blank*]

Dated: October 22, 2018  
      Wilmington, Delaware

Respectfully submitted,

*/s/ Aaron H. Stulman*  
Christopher M. Samis (No. 4909)  
L. Katherine Good (No. 5101)  
Aaron H. Stulman (No. 5807)  
WHITEFORD, TAYLOR & PRESTON LLC  
405 North King Street, Suite 500  
Wilmington, Delaware 19801  
Telephone:  (302) 353-4144  
Facsimile:        (302) 661-7950  
Email: csamis@wtplaw.com  
      kgood@wtplaw.com  
      astulman@wtplaw.com

-and-

James L. Bromley (*pro hac vice* pending)  
Benjamin S. Beller (*pro hac vice* pending)

CLEARY GOTTLIEB STEEN & HAMILTON LLP  
One Liberty Plaza  
New York, New York 10006  
Telephone: 212-225-2000  
Facsimile: 212-225-3999  
Email: jbromley@cgsh.com  
      bbeller@cgsh.com

*Counsel for Tempur-Pedic North America, LLC, Tempur-Pedic Management, LLC and Dan-Foam ApS*