## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MATTRESS FIRM, INC., *et al.*[1] | Case No. 18-12241 (CSS) |
| | (Jointly Administered) |
| | Objection Deadline: October 24, 2018 at 4:00 p.m. (ET) |
| | Hearing Date: October 29, 2018 at 10:00 a.m. (ET) |
| | **Re: Docket No. 16, 184** |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF PHILLIPS EDISON & COMPANY, RAMCO PROPERTIES TRUST, LEVIN MANAGEMENT CORPORATION, PHOENICIA DEVELOPMENT, LLC, RITTER PROPERTIES, LLC AND LREIN, LLC TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Phillips Edison & Company, Ramco Properties Trust, Levin Management Corporation, Phoenicia Development, LLC, Ritter Properties, LLC, and LREIN, LLC (the "Landlords"), by and through their counsel, Stark & Stark, P.C., and hereby files the following limited objection and reservation of rights (the "Objection") to the above-captioned debtors' (the "Debtors") Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 365 of the Bankruptcy Code and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting

---

[1] 1 The last four digits of Mattress Firm Inc.'s federal tax identification number are 6008. The Debtors' mailing address is 10201 S. Main Street, Houston, Texas 77025. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identificationmation may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/MattressFirm or by contacting counsel for the Debtors or the undersigned counsel.

1

Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief (the "Financing Motion").  In support of the Objection, the Landlords respectfully state as follows:

## BACKGROUND

1.    On or about October 5, 2018 (the "Petition Date"), Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court.

2.    Upon information and belief, Debtors operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    Landlords, as agents for landlords of the following locations or directly as landlords, lease retail space (collectively the "Premises") to one of the Debtors within several shopping centers (collectively the "Shopping Centers"):

**For Phillips Edison & Company, as agent for Nine (9) Leases**

    a.    a lease dated June 17, 2011, which was subsequently assigned to Broadway Station, LLC for property known as Broadway Plaza, 7865 E. Broadway Blvd. #165, Tucson, AZ 85710 (the "Broadway Lease");

    b.    a lease dated August 31, 2014, which was subsequently assigned to Fairfield Commons Station, LLC for property known as Fairfield Commons Shopping Center, 98 Wadsworth Blvd., Lakewood, CO 80226 (the "Fairfield Lease");

    c.    a lease dated September 10, 2015, which was subsequently assigned to Windmill Place Station, LLC for property known as Shoppes & Windmill Place, 79 S. Randall Road, Batavia, IL 60510 (the "Windmill Lease");

    d.    a lease dated August 27, 2007, which was subsequently assigned to Sudbury Crossing Station, LLC for property known as Sudbury Crossing Shopping Center, 421 Boston Post Road, Sudbury, MA 01776 (the "Sudbury Lease");

e.   a lease dated April 12, 2012, which was subsequently assigned to Shasta Station, LLC for property known as Shasta Crossroads Shopping Center, 1360 Churn Creek Rd., Ste. A, Redding, CA 96003 (the "Shasta Lease");

f.   a lease dated January 30, 2012, which was subsequently assigned to Richmond Station, LLC for property known as Richmond Plaza, 3435 Wrightsboro Road, Augusta, GA 30909 (the "Richmond Lease");

g.   a lease dated July 31, 2007, which was subsequently assigned to Highlands Plaza Station, LLC for property known as Highlands Plaza, 25 Robert Dr., South Easton, MA 02375 (the "Highlands Lease");

h.   a lease dated October 15, 2014, between Debtors and Collington Plaza Station, LLC for property known as Collington Plaza, 3560 Crain Hwy., Bowie, MD 20716 (the "Collington Lease");

i.   a lease dated September 9, 2013, between Debtors and Fairlawn Station, LLC for property known as Fairlawn Town Centre, 2755 W. Market St., Fairlawn, OH, 44333 (the "Fairlawn Lease")

**For Ramco Properties Trust as agent for Nine (9) Leases**

a.   a lease dated September 26, 2011, between Debtors and Ramco Jacksonville, LLC for property known as the River City Marketplace, 13141 City Station Drive (the "River City Lease");

b.   a lease dated December 3, 2010, between Debtors and Ramco-Gershenson Properties, L.P for property known as Front Range Village, 2721 Council Tree Ave., Suite 103, Fort Collins, CO 80525 (the "Front Range Lease");

4822-6802-3929, v. 2

c. a lease dated May 2, 2018, between Debtors and Ramco-Gershenson Properties, L.P for property known as Troy Marketplace, 802 E. Big Beaver Road, Troy, MI 48083 (the "Troy Lease");

d. a lease dated November 15, 2012, between Debtors and Ramco-Gershenson Properties, L.P for property known as Harvest Junction South, 15-425 Ken Pratt Boulevard, Longmont, CO 80501 (the "Harvest Junction Lease");

e. a lease dated May 7, 2014, between Debtors and Ramco Gateway, LLC for property known as Lakeland Center, 919 Lakeland Park Center Drive, Ste. 379, Lakeland Park, FL 33809 (the "Lakeland Lease");

f. a lease dated March 2, 2010 between Debtors and Ramco-Gershenson Properties, L.P for property known as Shoppes at Fox River, 1190 W. Sunset Dr., Ste. 106, Waukesha, WI 53189 (the "Fox River Lease");

g. a lease dated March 24, 2006 between Debtors and Ramco-Gershenson Properties, L.P for property known as Woodbury Lakes Shopping Center, 9220 Hudson Rd., Ste. 706, Woodbury, MN 55125 (the "Woodbury Lease").

h. a lease dated December 19, 2013, between Debtors and Ramco-Gershenson Properties, L.P for property known as Mount Prospect Plaza, 1020 E. Central Rd., Mt. Prospect, IL 60056 (the "Mt. Prospect Lease");

i. a lease dated November 4, 2005, between Debtors and Bridgewater Falls Station, LLC for property known as Bridgewater Falls, 3417 Princeton Rd., Fairfield Township, OH 45011 (the "Bridgewater Lease").

4822-6802-3929, v. 2

**For Levin Management Corporation as agent for Two Leases and a Sewer Easement**

    a.  a lease dated September 11, 2002, between Debtors and Hartford Corners Ownership, LLC for property known as the Hartford Corners Shopping Center, 1311 S. Fairview Street, Delran, NJ 08075 (the "Delran Lease");

    b.  a lease dated September 12, 2012, between Debtors and Levin Properties, L.P. for property known as the Hamilton Plaza Shopping Center, 1235 Highway 33, Ste. 1A, Hamilton Township, NJ 08690 (the "Hamilton Lease");

    c.  a sewer easement dated June 25, 2018, for a sewer line used by the Debtors and Levin Management Corporation from its Blue Star Shopping Center that connects to Debtors' store at 1702 Route 22, Watching, NJ 07068 (the "Sewer Easement").

**For Phoenicia Development, LLC as agent for Five (5) Leases**

    a.  a lease dated March 31, 2015, between Debtors and Orchid Bay Development, LLC for property known as 17435 US-441 #107, Eustis, FL 32726 (the "Mount Dora Lease");

    b.  a lease dated December 22, 2014, which was subsequently assigned to Byblos Development, Inc. for property known as 825 W. Main Street, Inverness, FL 33450 (the "Inverness Lease");

    c.  a lease dated June 16, 2015, between Debtors and Byblos Villages, LLC for property known as Signature Village, 4681 FL 44, Wildwood, FL, 34785, (the "Wildwood Lease");

    d.  a lease dated December 22, 2014, which was subsequently assigned to Byblos Development, Inc. for property known as 901 Airport Blvd., Pensacola, FL 32504 (the "Pensacola Lease");

4822-6802-3929, v. 2

e.   a lease dated October 28, 2014, which was subsequently assigned to Byblos

Development, Inc. for property known as 4911 Highway 90, Pace, Florida 32571,

(the "Pace Lease").

**For Ritter Properties, LLC for One (1) Lease**

a.   a lease dated February 26, 2016, which was subsequently assigned to Ritter

Properties, LLC for property known as 1331 W. 6th Street, The Dalles, OR 97058

(the "Dalles Lease").

**For LREIN, LLC for One (1) Lease**

a.   a lease dated March 26, 2014, which was subsequently assigned to LREIN, LLC

Properties, LLC for property known as 1307 E 79th St., Merrillville, IN 46410 (the

"Merrillville Lease").

Hereinafter the above-noted leases shall be collectively referred to as the "Leases".

4.   Each of the Premises are part of a "shopping center" as that term is referred to in

Bankruptcy Code §365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d. 1081 (3d Cir. 1990). As

such, Landlords are entitled to the protections of that section for the Premises within their

Shopping Center.[2]

5.   On or about October 5, 2018, Debtors filed the Financing Motion. An interim order was

entered on October 9, 2018 [Document No. 184].

6.   As of today's date, Debtors have yet to inform Landlords of their intentions regarding all

of the Leases for the Premises.

7.   Both pre-petition and post-petition rents for the Premises, respectively have not been paid.

Landlords reserve their right to assert additional amounts, including rent, reconciliation charges,

damages, attorneys' fees and costs.

---

[2] Due to the voluminous nature of the leases, Landlords reserve the right to provide a copy of the leases upon request.

4822-6802-3929, v. 2

## OBJECTIONS

### Stub Rent and Other Post-Petition Rent Should Be Paid Immediately & Provided in Budget

8.   Debtors' Motion seeks authorization to obtain post-petition financing pursuant to two post-petition facilities and to use cash collateral and provide adequate protection to fund operating needs including the closure of numerous stores and rejection of numerous lease agreements.

9.   Upon information and belief, the budget does not provide for the immediate payment of rent due and owing to Landlords for stub rent – the amounts between October 5, 2018 through October 31, 2017 (the "Stub Rent"), and has acknowledged that it has held back October rent.

10. Further, although the Financing Motion provides that post-petition obligations will be paid, it does not appear to provide that adequate amounts have been placed in reserve for Stub Rent.

11. Debtors' continuing use and occupancy of the Premises is critical to Debtors' ongoing operations. The use and occupancy of the Premises provides an actual, necessary, and ongoing benefit to Debtors, and the Court should require Debtors to pay Landlords Stub Rent. Authorizing use of the Premises for the benefit of the Debtors and the DIP Lenders without payment of Stub Rent is not supported by applicable law.

12. Landlords should not be forced to bear the risk of administrative insolvency, while other parties in interest benefit from ongoing operations and the store optimization plan.  See e.g., *In re ZB Company, Inc.*, 302 B.R. 316, 320 (Bankr. D. Del. 2003) (holding that rent should be paid to landlords on a per diem basis during the pre-rejection period in order to avoid the potential that the landlord could be left with an allowed administrative claim against an administratively insolvent estate).

4822-6802-3929, v. 2

13. As a condition to granting the Financing Motion, the Court should require that payment be remitted to Landlord for post-petition rent for the use of the Premises for the benefit of DIP and Prepetition Secured Lenders.

**Oppose Waiver of § 506(c) and 552(b)(2) Protections**

14. In addition, Landlords oppose waivers of § 506(c) and 552(b)(2).

15. Courts may require payment of Stub Rent under Section 506(c) of the Bankruptcy Code. This section provides that a trustee or debtor in possession may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim …." 11 U.S.C. § 506(c);

16. The basis for Section 506(c) is that unsecured creditors should not be forced to bear the costs of preserving a secured creditor's collateral. *See In re Evanston Beauty Supply Inc.*, 136 B.R. 171, 175 (Bankr. N.D. Ill. 1992). "Ample case authority exists which permits lessors to recover under Section 506(c) provided that the standards for recovery are met." *In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr. N.D.Ill.1987). The standards for recovery of a Section 506(c) surcharge are that the services were necessary and beneficial to the lender. *Visual Ind., Inc.*, 57 F.3d at 325. The DIP and Prepetition Secured Lenders are the primary beneficiaries of the post-petition use and sales at the Premises, and there is no legitimate reason that they should not pay for that benefit.

17. Courts may surcharge lenders for post-petition rents and related charges owed to them for storing lender's collateral, as necessary and directly beneficial to the lender. *In re Scopetta-Senra Partnership III*, 129 B.R. 700 (Bankr.S.D.Fla.1991) (holding that landlord who provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); *In re Gain Electronics Corp.*, 138 B.R. 464, 465 (Bankr. D.N.J. 1992); *In re World Wines, Ltd.*, 77 B.R. at 658 (holding that landlord was entitled payment

8

from the bank for the use and occupancy of its premises for storage of wine pursuant to Section 506(c)); *In re Proto–Specialties*, Inc., 43 B.R. 81 (Bankr. D. Ariz.1984).

18. Here, the Premises are being used to sell the Lenders'collateral.  In addition, the post petition use of the Premises allows for the continuing operations of the Debtors and the ability to sell the Debtors' assets and inventory.  The Stub Rent owing to Landlords are reasonable and necessary costs for the preservation and disposal of the DIP Lenders' collateral, and provides them with a direct benefit. Moreover, allowing the Prepetition Secured Lenders access to storage and preservation and disposition of collateral at no cost would "result in a windfall benefit to the secured creditor to the detriment of a third party." In re So Good South Potato Chip Co., 116 B.R. 144, 146 (Bankr. E.D.Mo.1990). Based on the above, the Court should require the payment of Stub Rent for the preservation of the DIP and Prepetition Secured Lenders' collateral under Section 506(c).

19. The Court should not allow Debtors to place the financing of their case on the backs of Landlords, while using the Landlords' Premises, and should also not allow the surcharge waivers contemplated by the Financing Motion.

**Stub Rent as Adequate Protection**

20. Landlords request that Stub Rent should be paid as adequate protection under section 363(e).  This section authorizes the granting of adequate protection to creditors. See, *In re Intran Corp.,* 62 B.R. 435 (Bankr. D. Minn. 1986) (debtor obligated to pay its use of leased property); Regarding property lessors, like Landlords, courts have granted adequate protection. See, e.g., *Matter of Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993) (adequate protection available under § 363(e) for a decrease in value due to the use, sale, or lease of an entity's interest in property); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) ("landlord's  right to adequate protection seems to follow clearly from the language of Section

363(e)...”); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 966-67 (Bankr. W.D. Wash. 1997) (finding that adequate protection is available to real property lessors under Section 363(e));

21. Here, it is appropriate for adequate protection to take the form of immediate cash payments for post-petition use of the Premises. See 11 U.S.C. § 361. *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002).

## JOINDER IN OBJECTIONS RAISED BY
## OTHER LANDLORDS AND RESERVATION OF RIGHTS

22. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Financing Motion. Further, Landlords reserve all rights to make further and or future objections.

**WHEREFORE**, Landlords respectfully requests that Stub Rent be paid immediately and the waivers under § 506(c) and 552(b)(2) be denied, and for such other and further relief as the Court deems proper.

**STARK & STARK**
**A Professional Corporation**

By: /s /*John R. Weaver, Jr.*
        John R. Weaver, Jr.

Dated: October 24, 2018

181 N. Tatnall St., Ste 200
Wilmington, Delaware 19801
(302) 428-1077 (main)
(302) 655-7371 (direct)
jrweaverlaw@verizon.net

and

Thomas S. Onder
Joseph H. Lemkin
**STARK & STARK**
**A Professional Corporation**

10

993 Lenox Drive
Lawrenceville, NJ 08648
(609) 219-7458 (direct)
(609) 896-9060 (main)
(609) 895-7395 (facsimile)
Attorneys for Phillips Edison & Company,
Ramco Properties Trust, Levin Management
Corporation, Phoenicia Development, LLC,
Ritter Properties, LLC, and LREIN, LLC

11