## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MATTRESS FIRM, INC., *et al.*,[1] | Case No. 18-12241 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 22, 23, 863, 864, 865, 866, 871 & 904** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND (II) CONFIRMING THE MODIFIED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION FOR MATTRESS FIRM, INC. AND ITS DEBTOR AFFILIATES

### Recitals

A.      On October 5, 2018 (the "Petition Date"), the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.      On the Petition Date, the Debtors filed, among other documents and pleadings, (i) the *Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates* [Docket No. 22] (the "Plan," and, as modified on the date hereof [Docket No. 904], the "Modified Plan");[2] (ii) the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates*, dated October 4, 2018

---

[1] The last four digits of Mattress Firm, Inc.'s federal tax identification number are 6008. The Debtors' mailing address is 10201 S. Main Street, Houston, Texas 77025. Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. This information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/MattressFirm or by contacting counsel for the Debtors.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Modified Plan. The rules of interpretation set forth in Article I.B of the Modified Plan shall apply to this Confirmation Order.

[Docket No. 23] (together with all exhibits thereto, the "Disclosure Statement"); and (iii) the *Debtors' Motion for Entry of an Order (I) Scheduling the Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing the Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Form and Manner of Notice, (V) Conditionally Directing that a Meeting of Creditors Not be Convened, (VI) Conditionally Extending Deadline to File Schedules and Statements, and (VII) Granting Related Relief* [Docket No. 21].

C.    On October 9, 2018, pursuant to rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 1126, 1128 and 1129 of the Bankruptcy Code, the Court entered the *Order (I) Scheduling the Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing the Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Form and Manner of Notice, (V) Conditionally Directing that a Meeting of Creditors Not be Convened, (VI) Conditionally Extending Deadline to File Schedules and Statements, and (VII) Granting Related Relief* [Docket No. 181] (the "Scheduling Order").

D.    In accordance with the Scheduling Order, the Court established (i) November 7, 2018 at 4:00 p.m. (prevailing Eastern Time) as the deadline by which any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan were to be filed (the "Objection Deadline"); (ii) November 13, 2018 as the date by which any replies in support of the Disclosure Statement or the Plan were to be filed; and (iii) November 16, 2018 at 9:30 a.m. (prevailing Eastern Time) as the date and time of the hearing at which the Court would consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing").

E.     Under the Scheduling Order, the Debtors were required, on or before October 10, 2018, to serve notice of, among other things, the commencement of the Chapter 11 Cases, the Combined Hearing, the Objection Deadline, and the procedures for objecting to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Combined Notice"). As evidenced by the *Affidavit of Service of Forest Kuffer*, dated October 11, 2018 [Docket No. 251] (the "Affidavit of Service"), the Debtors served the Combined Notice on October 10, 2018 upon all Holders of Claims or Interests, the United States Trustee for the District of Delaware ("U.S. Trustee"), all parties requesting notice under Bankruptcy Rule 2002, and other parties in interest.

F.     On November 13, 2018, the Debtors filed the following documents: (i) a notice of the initial form of Modified Plan [Docket No. 866]; (ii) the proposed form of this confirmation order (this "Confirmation Order"); (iii) the *Memorandum of Law in Support of Entry of an Order (I) Approving the Adequacy of the Disclosure Statement and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates* [Docket No. 863] (the "Confirmation Memorandum"); (iii) the *Declaration of Hendré Ackermann in Support of the Memorandum of Law in Support of Entry of an Order (I) Approving the Adequacy of the Disclosure Statement and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates* [Docket No. 865] (the "Ackermann Declaration") (iv) the *Declaration of Thomas Osmun in Support of the Memorandum of Law in Support of Entry of an Order (I) Approving the Adequacy of the Disclosure Statement and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization for Mattress Firm, Inc. and Its Debtor Affiliates* [Docket No. 864] (the "Osmun Declaration"); and (v) the *Notice of Filing of Proposed Exit Facility Documents* [Docket No. 871] (the "Exit Financing Documents" and, together with the proposed form of this Confirmation

01:23872713.1

3

Order, the Confirmation Memorandum, the Ackermann Declaration, and the Osmun Declaration, the "Confirmation Submissions").

WHEREFORE, the Court having: (a) reviewed the Modified Plan, the Combined Notice, the Affidavit of Service, the Confirmation Submissions, and all filed pleadings, exhibits, statements and comments regarding the approval of the Disclosure Statement and confirmation of the Modified Plan, including all objections, statements and reservations of rights; (b) held the Combined Hearing; (c) heard the statements and arguments made by counsel in respect of the approval of the Disclosure Statement and confirmation of the Modified Plan; (d) considered all oral representations, affidavits, testimony, documents, filings and other evidence regarding approval of the Disclosure Statement and confirmation of the Modified Plan, including, without limitation, evidence submitted or presented at the Combined Hearing; (e) overruled any and all objections to approval of the Disclosure Statement and to confirmation of the Modified Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and (f) taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence proffered or adduced and arguments presented in the Chapter 11 Cases;

NOW, THEREFORE, the Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Modified Plan has been adequate and appropriate as to all parties affected or to be affected by the Modified Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the Confirmation Submissions and all evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation

thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and orders:

**Findings of Fact and Conclusions of Law**

IT IS HEREBY FOUND AND DETERMINED THAT:

**A.    Findings of Fact and Conclusions of Law.**

1.    The findings and conclusions set forth herein, in the recitals, and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.    To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

**B.    Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409).**

2.    The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Approval of the Disclosure Statement and confirmation of the Modified Plan are core proceedings under 28 U.S.C. § 157(b)(2), and the Court has jurisdiction (a) to approve the adequacy of information contained in the Disclosure Statement and to determine whether the Modified Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) to enter a final order, consistent with Article III of the United States Constitution, with respect thereto.  Venue in this District was proper as of the Petition Date and remains proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  **Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On the same date, the Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b) [Docket No. 36].  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no statutory committee has been appointed.

D.  **Judicial Notice.**

4.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.  **No Solicitation of Votes.**

5.      All Classes of Claims and Interests are Unimpaired under the Modified Plan and are thus conclusively presumed to have accepted the Modified Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, the Debtors were not required to solicit acceptances of the Modified Plan from Holders of Claims or Interests.

F.  **DIP and Exit Financing Orders.**

6.      On October 9, 2018, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of Bankruptcy Code and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying Automatic Stay; and (V)*

*Granting Related Relief* [Docket No. 184]. On October 29, 2018, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of Bankruptcy Code and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying Automatic Stay; and (V) Granting Related Relief* [Docket No. 436] (the "Final DIP Order"). Also on October 29, 2018, the Court entered the *Order (I) Authorizing the Debtors to Assume the Exit Commitment Letter, (II) Approving the Commitment Fee, and (III) Authorizing the Debtors to File the Exit Facilities Fee Letter under Seal* [Docket No. 444].

**G.      Exit Financing Documents.**

7.      The Exit Financing Documents were filed on the docket of the Chapter 11 Cases in substantially final form on November 13, 2018, and notice of such documents was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and in compliance with the Bankruptcy Code and the Bankruptcy Rules. The Exit Financing Documents are integral to, part of, and incorporated by reference into, the Modified Plan.

**H.      Transmittal and Mailing of Materials; Notice.**

8.      As evidenced by the Affidavit of Service and the other affidavits of service and mailing filed with the Court prior to the Combined Hearing, the transmittal and service of the Combined Notice were adequate and sufficient under the circumstances and complied with the requirements of the Scheduling Order. All parties have been given due, proper, timely, and adequate notice of, and an opportunity to appear and be heard with respect to, the Disclosure Statement and the Modified Plan. The Combined Notice informed Holders of Claims, Holders of Interests, and other parties in interest that the Combined Hearing could be adjourned and informed them of how to access the electronic website maintained by the Claims and Noticing

01:23872713.1

Agent to obtain up-to-date information regarding the scheduling of the Combined Hearing and other relevant dates in the Chapter 11 Cases. Holders of Claims and Holders of Interests also were able to request that they be placed on the list of parties receiving notice of documents and pleadings filed on the docket of the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (the "Rule 2002 Service List"). Accordingly, due and proper notice has been given with respect to the Combined Hearing and the deadlines and procedures for filing objections to the approval of the Disclosure Statement and confirmation of the Modified Plan in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

## I.     Plan Modifications.

9.     On November 13, 2018, the Debtors filed an initial form of Modified Plan that contained certain non-material or technical modifications (as subsequently modified at Docket No. 904, the "Technical Modifications"). The Debtors served notice of the Modified Plan and a blackline comparison against the version of the Plan filed on the Petition Date on the Rule 2002 Service List. The Modified Plan, as subsequently modified, is attached hereto as **Exhibit A**. Adequate and sufficient notice of the Technical Modifications has been given, and, pursuant to section 1127 of the Bankruptcy Code and in accordance with Bankruptcy Rule 3019, no other or further notice, disclosure under section 1125 of the Bankruptcy Code, or solicitation of votes is required, as the Technical Modifications do not have a material adverse effect on the treatment of any Claims against or Interest in the Debtors under the Modified Plan.

**J.     The Modified Plan's and the Debtors' Compliance with the Bankruptcy Code.**

10.     The Modified Plan has complied, and the Debtors have complied, with all applicable provisions of section 1129 of the Bankruptcy Code.

**1.     Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

11.     As required by section 1129(a)(1) of the Bankruptcy Code, the Modified Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 thereof.

**(a)     Proper Classification of Claims and Equity Interests (11 U.S.C. §§ 1122 and 1123(a)(1)).**

12.     The classification of Claims and Interests under the Modified Plan is proper under the Bankruptcy Code. Article III of the Modified Plan designates Classes of Claims and Interests, other than Administrative Expense Claims, DIP Credit Facilities Claims, and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be classified. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Modified Plan, and the classifications were not promulgated for any improper purpose. The Modified Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**(b)     Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**

13.     Article III of the Modified Plan specifies that each Class of Claims or Interests is Unimpaired. The Modified Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

(c)    **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

14.    Article III of the Modified Plan specifies that no Class of Claims or Interests is Impaired under the Modified Plan.  Accordingly, section 1123(a)(3) of the Bankruptcy Code is not applicable to the Modified Plan.

(d)    **No Discrimination (11 U.S.C. § 1123(a)(4)).**

15.    Article III of the Modified Plan provides for equality of treatment of each Claim or Interest within a particular Class, except in the case of Holders of Intra-Group Loan Guarantee Claims, which have agreed to less favorable treatment than other General Unsecured Claims.  Pursuant to the Plan Support Agreement, each Holder of an Allowed Intra-Group Loan Claim (*i.e.*, SEAG and Möbel) has agreed to receive no distribution under the Modified Plan solely on account of such Allowed Intra-Group Loan Guarantee Claims and has agreed to contribute its claims under the Intra-Group Loan Facilities (other than the Intra-Group Loan Guarantee Claims, which are discharged under the Modified Plan, and the Intra-Group Loan Guarantees, which are released under the Modified Plan) to the share capital of Stripes.  The Modified Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)    **Implementation of the Modified Plan (11 U.S.C. § 1123(a)(5)).**

16.    The Modified Plan and the Exit Financing Documents provide adequate and proper means for implementation of the Modified Plan, including, without limitation, (a) the good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Modified Plan; (b) funding distributions under the Modified Plan through Cash on hand, including Cash from operations and the proceeds of the DIP Credit Facilities, and the proceeds of the Exit Facilities; (c) entry into, and the incurrence of new indebtedness under, the Exit Facilities; (d) the assumption of Executory Contracts and Unexpired Leases not previously

rejected by the Debtors under section 365 of the Bankruptcy Code; (e) maintenance of the Debtors' Compensation and Benefits Programs and Indemnification Obligations; (f) the establishment of the Management Incentive Plan after the Effective Date; (g) the continued corporate existence of each Debtor on and after the Effective Date; (h) the cancellation of certain existing Liens, charges and encumbrances; (i) authorization and approval of all corporate actions contemplated under the Modified Plan; (j) exemption from transfer taxes pursuant to section 1146(a) of the Bankruptcy Code; and (k) preservation of certain of the Debtors' Causes of Action.  The Modified Plan therefore satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

#### (f)      Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

17.      Article V.F of the Modified Plan provides that the Debtors' organizational documents shall be amended to prohibit the Reorganized Debtors from issuing non-voting equity securities, to the extent necessary to comply with section 1123(a) of the Bankruptcy Code.  The Modified Plan therefore satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

#### (g)      Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).

18.      Article V.E of the Modified Plan provides that, after the Effective Date, the Reorganized Debtors' organizational documents, as each may be amended thereafter from time to time, shall govern the designation and election of directors of the Reorganized Debtors.  Such provision is consistent with the interests of creditors, equity security holders and public policy.  The Modified Plan therefore satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

#### (h)      No Debtor Is an Individual (11 U.S.C. §§ 1123(a)(8), 1123(c)).

19.     None of the Debtors is an individual.  Accordingly, sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are not applicable to the Modified Plan.

**(i)     Discretionary Contents of the Modified Plan (11 U.S.C. § 1123(b)).**

20.     The other provisions of the Modified Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.  The Modified Plan therefore satisfies the requirements of section 1123(b) of the Bankruptcy Code.

**(i)     Impairment or Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))**

21.     The Modified Plan specifies that each Class of Claims or Interests is Unimpaired. The Modified Plan therefore is consistent with section 1123(b)(1).

**(ii)    Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**

22.     Article VI of the Modified Plan governs the assumption or rejection of Executory Contracts and Unexpired Leases that were not otherwise rejected, or subject to rejection, pursuant to an order of the Court.

23.     On the Effective Date, all Executory Contracts or Unexpired Leases, including the Plan Support Agreement, shall be assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless any such Executory Contract or Unexpired Lease: (a) has previously been rejected by a Final Order of the Court; (b) has previously been rejected by an order of the Court as of the Confirmation Date, which order becomes a Final Order after the Confirmation Date; (c) is the subject of a Rejection Motion or Lease Rejection Notice pending as of the Confirmation Date and is subsequently rejected by a Final Order of the Court; or (d) is identified on the Schedule of Post-Effective Date Negotiated Leases as an Unexpired Lease as to which the counterparty has

consented in writing to the Debtors' deferral of their decision to assume or reject for the pendency of the Post-Effective Date Lease Negotiation Period; provided, however, that the Debtors or the Reorganized Debtors, as applicable, may assume any Unexpired Lease identified on the Schedule of Post-Effective Date Negotiated Leases at any time before termination of the Post-Effective Date Lease Negotiation Period on such terms as may be agreed with the relevant counterparty thereto.

24.    Entry of this Confirmation Order by the Court shall constitute an order approving the assumption of such Executory Contracts and Unexpired Leases as set forth in the Modified Plan, all pursuant to section 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.  Each Assumed Contract and Assumed Lease shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms (a) except as such terms may have been validly modified by order of the Court and (b) notwithstanding, to the maximum extent permitted by law, any provision in any such Assumed Contract or Assumed Lease that restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Assumed Contract or Assumed Lease (including any "change of control" provision); therefore, consummation of the transactions contemplated by the Modified Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

25.    Notwithstanding anything to the contrary in the Modified Plan, the Debtors and the Reorganized Debtors shall have the right to file one or more Lease Rejection Notices after the Effective Date up to and including the termination of the Post-Effective Date Lease

Negotiation Period to reflect their decision, if any, to reject Unexpired Leases of nonresidential real property listed on the Schedule of Post-Effective Date Negotiated Leases.

**(iii)** **Settlement, Preservation of Claims and Causes of Action, Releases, Injunction and Exculpation (11 U.S.C. § 1123(b)(3)).**

26. <u>Compromise and Settlement of Claims, Interests, and Controversies</u>. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Modified Plan, the provisions of the Modified Plan shall, as of the Effective Date, constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and equitable rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest and any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of this Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is, in each instance, in the best interests of the Debtors, the Estates, and Holders of Claims and Interests and fair, equitable, and reasonable. In accordance with the provisions of the Modified Plan without any further notice to or action, order, or approval of the Court, on and after the Effective Date, the Reorganized Debtors may compromise and settle Claims and the Debtors' Causes of Action against other Entities. Except as otherwise provided herein, as of the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations, and injunctions set forth in the Modified Plan and/or this Confirmation Order shall be effective and binding on all persons. The Modified Plan and this Confirmation Order shall have *res judicata*, collateral estoppel, and estoppel (judicial, equitable or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Modified Plan and/or this Confirmation Order,

including the release, injunction, exculpation, discharge, and compromise provisions contained in the Modified Plan and/or this Confirmation Order.

27.    <u>Releases, Injunctions and Exculpations</u>.    The Court has jurisdiction under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(e) to approve the releases, injunctions, and exculpations set forth in Article X of the Modified Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article X of the Modified Plan because, as has been established here, based upon the record in the Chapter 11 Cases and the evidence proffered or adduced at or prior to the Combined Hearing, such provisions (a) are made in exchange for good and valuable consideration, (b) were integral to the agreements among the various parties, including the Plan Support Agreement, and are essential to the formulation and implementation of the Modified Plan, as provided in section 1123 of the Bankruptcy Code, (c) confer substantial benefits on the Debtors and the Estates, (d) are integral to and non-severable from the Modified Plan, (e) are fair, equitable and reasonable, and (f) are in the best interests of the Debtors, the Estates, the Reorganized Debtors, creditors, and other stakeholders.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, injunctions, and exculpations set forth in the Modified Plan, as implemented by this Confirmation Order, are fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, the Reorganized Debtors, and all Holders of Claims or Interests.  The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the releases, injunctions, and exculpations provided for in Article X of the Modified Plan.  Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and the evidence proffered or adduced at or prior to the Combined Hearing, the Court finds that the

01:23872713.1

releases, injunctions, and exculpations set forth in Article X of the Modified Plan are consistent with the Bankruptcy Code and applicable law.

28.    <u>Debtor Releases.</u>  The releases by the Debtors set forth in Article X.D.1 of the Modified Plan (the "<u>Debtor Releases</u>") are fair to Holders of Claims or Interests, are necessary to the proposed reorganization, and are supported by fair consideration, thereby satisfying the requirements of *In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000), *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013), and *In re Zenith Electronics Corp.*, 241 B.R. 92, 110, 111 (Bankr. D. Del. 1999).  Each non-Debtor Released Party was instrumental to the formulation of the Plan and the Modified Plan and the successful prosecution of the Chapter 11 Cases and provided a substantial contribution to the Debtors, which, in turn, provided significant benefits to the Debtors and the Estates.  The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the Debtor Releases.

29.    <u>Third-Party Release.</u>  The releases set forth in Article X.D.2 of the Modified Plan (collectively, the "<u>Third-Party Release</u>"), pursuant to which the Releasing Parties are deemed to release the Released Parties to the extent set forth in Article X.D.2, were disclosed and explained in the Disclosure Statement, in the Modified Plan, and on the Combined Notice.  Such notice was timely, sufficient, appropriate and adequate notice to the Holders of Claims and Interests, was reasonably calculated under the circumstances to reach such parties, and no other or further notice is or shall be required.  The Third-Party Release is consensual in that all parties to be bound by the Third-Party Release were given due and adequate notice of the Third-Party Release and sufficient opportunity and instruction to elect to opt out of the Third-Party Release by completing and timely returning the Opt-Out Election Form.  The Third-Party Release is fair to Holders of Claims and Interests and is necessary to implement the proposed reorganization, and

are in exchange for, and are supported by, fair, sufficient, and adequate consideration provided by the parties receiving such releases and are a good-faith settlement and compromise of the claims released. Each non-Debtor Released Party was instrumental to the formulation of the Plan and the Modified Plan and the successful prosecution of the Chapter 11 Cases and provided a substantial contribution to the Debtors, which, in turn, provided significant benefits to the Debtors and the Estates. The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the Third-Party Release.

30.     Exculpation.  The exculpation contained in Article X.E of the Modified Plan (the "Exculpation") is appropriate under the circumstances, is limited to apply only to Estate Fiduciaries, and, solely to the extent provided in Section 1125(e) of the Bankruptcy Code, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Lender, the Intra-Group Lenders, the DIP Agents, the DIP Lenders, the Exit Agents, the Exit Lenders, the Plan Support Parties, and certain parties affiliated therewith, and complies with applicable law. The Exculpated Parties subject to the Exculpation have, and, upon entry of this Confirmation Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Modified Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Modified Plan.

31.     Injunctions.  The injunctions contained in Article X.F of the Modified Plan are appropriate under the circumstances, and are fair, equitable, reasonable and necessary to effectuate and support the Debtor Release of Article X.D.1, the Third-Party Release of Article X.D.2, and the Exculpation of Article X.E of the Modified Plan.

### (iv)    Modification of Rights (11 U.S.C. § 1123(b)(5)).

32.    In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of the Modified Plan leaves unaffected or, in the case of Holders of Intra-Group Loan Guarantee Claims, modifies on a consensual basis in accordance with section 1123(a)(4)of the Bankruptcy Code, the rights of Holders of Claims or Interests in each Class.

### (v)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).

33.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the Modified Plan includes additional appropriate provisions, including the retention of jurisdiction of the Court and certain release, injunction and exculpation provisions, that are not inconsistent with applicable provisions of the Bankruptcy Code.

### (vi)    Cure of Defaults (11 U.S.C. § 1123(d)).

34.    Article VI.B of the Modified Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to Assumed Contracts and Assumed Leases in compliance with section 365(b)(1) of the Bankruptcy Code. The Debtors have provided notice of such assumption and proposed Cure Amounts to applicable non-Debtor counterparties to Assumed Leases, which notice was appropriate and sufficient under the circumstances and no other notice need be given. The Modified Plan therefore complies with section 1123(d) of the Bankruptcy Code.

### 2.    Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

35.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically: (a) the Debtors were as of the Petition Date and continue to be eligible to be debtors under section 109 of the Bankruptcy Code and are proper proponents of the Modified Plan under section 1121(a) of

01:23872713.1

the Bankruptcy Code; (b) the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and (c) because all Classes of Claims and Interests are Unimpaired under the Modified Plan and therefore presumed to accept the Modified Plan and are not entitled to vote, the solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code do not apply to the Modified Plan.

### 3.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

36.    The Debtors have proposed the Modified Plan (and all documents necessary to effectuate the Modified Plan) in good faith and not by any means forbidden by law.  The Chapter 11 Cases were filed, and the Plan and the Modified Plan were proposed, with an honest belief that the Debtors were in need of reorganization and with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing, and other proceedings held in the Chapter 11 Cases.  The Modified Plan and the contracts, instruments, releases, agreements and documents necessary and related to implementing, effectuating and consummating the Modified Plan, including, without limitation, the Plan Support Agreement, is the culmination of extensive good-faith, arm's-length negotiations among the Debtors, the Plan Support Parties, the Backstop Group, and their respective representatives and professionals.  Further, the Modified Plan's classification, indemnification, release, injunction, and exculpation provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable law in this Circuit and are each necessary

for the Debtors' successful reorganization.    In determining that the Modified Plan satisfies section 1129(a)(3) of the Bankruptcy Code, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Modified Plan itself, and the process leading to Confirmation.   The Modified Plan therefore satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

4.    **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

37.    Except as otherwise provided or permitted by the Modified Plan or other orders of the Court, the payments for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Modified Plan and incidental to the Chapter 11 Cases, in each case incurred prior to the Effective Date, including Claims for professional fees that have been or will be paid by the Debtors, have been, hereby are, or will be, authorized by order of the Court or are otherwise permitted under the Bankruptcy Code.   The Modified Plan therefore satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

5.    **Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)).**

38.    In compliance with section 1129(a)(5)(A)(i) of the Bankruptcy Code, the Debtors have disclosed in the Disclosure Statement the identity and affiliations of the initial directors and officers of the Reorganized Debtors, which will be the same as the current directors and officers of the Debtors.    Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5)(A)(i) of the Bankruptcy Code.   The retention of the Debtors' directors and officers will allow the Reorganized Debtors to benefit from the directors' and officers' familiarity with the Debtors' business and industry going forward.   As such, the continuation in office of each of the proposed directors and officers of each of the Reorganized Debtors is consistent with the

interests of Holders of Claims and Interests and with public policy. The Modified Plan therefore satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**6.      No Rate Changes (11 U.S.C. § 1129(a)(6)).**

39.      The Modified Plan does not provide for any change in rates subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Accordingly, section 1129(a)(6) of the Bankruptcy Code does not apply to the Modified Plan.

**7.      Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).**

40.      Section 1129(a)(7) of the Bankruptcy Code specifies that each Holder of an Impaired Claim or Impaired Interest either shall have accepted the Modified Plan or shall receive under the Modified Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. As the Modified Plan provides that each Class of Claims or Interests is Unimpaired, the liquidation analysis does not apply to any Class. Accordingly, section 1129(a)(7) of the Bankruptcy Code is not applicable to the Modified Plan.

**8.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

41.      Section 1129(a)(8) of the Bankruptcy Code requires that each Class of Claims or Interests must either accept the Modified Plan or be Unimpaired under the Modified Plan. Each Class of Claims or Interests is Unimpaired under the Modified Plan and therefore conclusively presumed to have accepted the Modified Plan under section 1126(f) of the Bankruptcy Code. The Modified Plan, therefore, satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

9.  **Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).**

42.     The treatment of Administrative Expense Claims, including Professional Fee Claims, under Article II.A of the Modified Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Tax Claims under Article II.C of the Modified Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The treatment of Other Priority Claims under Article III.B.1 of the Modified Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  No Holder of an Allowed Administrative Expense Claim other than a Holder of a Professional Fee Claim (which must file an application with the Court for Allowance of such Professional Fee Claim) is required to file a Proof of Claim.  For the avoidance of doubt, Allowed Priority Tax Claims shall be Reinstated under the Modified Plan and this Confirmation Order and survive the Effective Date.

10.  **Acceptance of At Least One Impaired Class, If Any (11 U.S.C. 1129(a)(10)).**

43.     All Classes of Claims are Unimpaired under the Modified Plan and thus conclusively presumed to have accepted the Modified Plan under section 1126(f) of the Bankruptcy Code.  Accordingly, section 1129(a)(10) of the Bankruptcy Code is not applicable to the Modified Plan.

11.  **Feasibility (11 U.S.C. § 1129(a)(11)).**

44.     The Modified Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Ackermann Declaration, the Osmun Declaration, the Confirmation Memorandum, and the financial projections attached to the Disclosure Statement as Exhibit B (a) was reasonable, persuasive, accurate and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) has not been controverted by other evidence; (c) utilizes reasonable

and appropriate methodologies and assumptions; (d) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Modified Plan; and (e) establishes that confirmation of the Modified Plan is not likely to be followed by a liquidation or need for a further reorganization of the Reorganized Debtors. Accordingly, the Debtor has established that the Modified Plan has a reasonable likelihood of success. The Modified Plan therefore is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**12.     Payment of Certain Fees (11 U.S.C. § 1129(a)(12)).**

45.     Article II.A.3 of the Modified Plan provides for payment of all fees payable by the Debtors under 28 U.S.C. § 1930. The Modified Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**13.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

46.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. Article VI.D of the Modified Plan provides that all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated—including, among other things, retiree benefits—shall be deemed to be, and shall be treated as though they are, Assumed Contracts, and the Debtors' and Reorganized Debtors' obligations under the Compensation and Benefits Programs will survive Confirmation and be fulfilled in the ordinary course of business. The Modified Plan therefore satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

14.    **Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16)).**

47.    The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.  Accordingly, sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to the Modified Plan.

15.    **Confirmation of Only One Plan (11 U.S.C. § 1129(c)).**

48.    The Modified Plan is the only plan of reorganization for the Debtors proposed and considered by the Court for Confirmation.  The Modified Plan therefore satisfies the requirements of section 1129(c) of the Bankruptcy Code.

16.    **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

49.    The principal purpose of the Modified Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and no governmental unit has objected to the confirmation of the Modified Plan on any such grounds. The Modified Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

K.    **Burden of Proof.**

50.    The Debtors, as proponents of the Modified Plan, have met their burden of proving the applicable elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  Further, the Debtors have proven the elements of section 1129(a) of the Bankruptcy Code by clear and convincing evidence.

L.    **Executory Contracts and Unexpired Leases**

51.    The Debtors have exercised sound business judgment in determining whether to reject or assume each of their Executory Contracts and Unexpired Leases pursuant to sections

365 and 1123(b)(2) of the Bankruptcy Code and Article VI of the Modified Plan. Except as set forth herein and/or in separate orders entered by the Court relating to rejection of Unexpired Leases, the Debtors have cured or provided adequate assurances that the Debtors will cure any defaults under or relating to each Executory Contract or Unexpired Lease assumed under the Modified Plan.

52.    Nothing in the Modified Plan or this Confirmation Order shall prevent a party to an Unexpired Lease rejected pursuant to an order of the Court from filing a Proof of Claim based on such rejection before the Rejection Damages Bar Date. Nothing in the Modified Plan or this Confirmation Order shall prevent a party to an Unexpired Lease assumed pursuant to the Modified Plan from continuing to prosecute an objection to the Cure Amount related to such assumed Unexpired Lease if such objection was timely filed before November 2, 2018 at 4:00 p.m. (prevailing Eastern Time) (*i.e.*, the deadline specified in the Cure Notice) but not resolved before the Confirmation Date.

**M.    Good Faith.**

53.    The Debtors and the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Lender, the Intra-Group Lenders, the DIP Agents, the DIP Lenders, the Exit Agents, the Exit Lenders, and the Plan Support Parties (and each of the foregoing parties' Related Parties, directors, officers, and professionals) have been and will be acting in good faith if they proceed to (a) consummate the Modified Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed by this Confirmation Order, in each case, to the extent such actions are consistent with the Modified Plan or this Confirmation Order, as applicable.

01:23872713.1

N.    **Bankruptcy Rule 3016.**

54.    As required by Bankruptcy Rule 3016(a), the Modified Plan is dated and identifies the Debtors as the proponents.    The Debtors appropriately filed the Disclosure Statement and the Modified Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions of the Disclosure Statement and Modified Plan describe all acts to be enjoined and identify the Entities that will be subject to the injunctions, and each of the injunction, release, and exculpation provisions were set forth in bold, conspicuous language in the Combined Notice that was mailed to all known creditors of the Debtors, thereby satisfying Bankruptcy Rule 3016(c).

O.    **Bankruptcy Rule 3017.**

55.    The Debtors have given proper and sufficient notice of the Combined Hearing and have therefore satisfied the requirements of Bankruptcy Rules 3017(a) and 3017(d), as modified by the Scheduling Order.    Given that solicitation of acceptances of the Modified Plan was not necessary, Bankruptcy Rule 3017(e) is not applicable to the Modified Plan.

P.    **Bankruptcy Rule 3018.**

56.    No Class of Claims or Interests is Impaired under the Modified Plan, and all Classes of Claims or Interests is conclusively deemed to have accepted the Modified Plan under section 1126(f) of the Bankruptcy Code.    Accordingly, no solicitation of acceptances or rejections was necessary, and Bankruptcy Rules 3018(a) and 3018(b) are not applicable to the Modified Plan.

Q.    **Plan Support Agreement.**

57.    The Plan Support Agreement was negotiated in good faith and at arm's length, is fair, reasonable, and critical to the success and feasibility of the Modified Plan, and is necessary

01:23872713.1

and appropriate for the consummation of the Modified Plan.  The Debtors' assumption of the

Plan Support Agreement is a reasonable exercise of their business judgment, is in the best

interest of the Estates, and is authorized under section 365 of the Bankruptcy Code.

**R.      Exit Term Loan Facility.**

58.      Based on the evidence proffered or adduced at or prior to Combined Hearing,

including the Ackermann Declaration, the Osmun Declaration, and the Confirmation

Memorandum, the proposed terms and conditions of the Exit Term Loan Facility, including the

issuance of the Stripes Stock and the Stripes PIK Debt to the Exit Term Loan Lenders, are fair

and reasonable.  The Exit Term Loan Facility and the proceeds thereof are essential elements of

the Modified Plan and the Debtors' ability to emerge from chapter 11, and entry into and

consummation of the transactions contemplated by the Exit Term Loan Facility and related

documents, including the Exit Term Loan Documents related thereto, are in the best interests of

the Debtors, the Estates, and Holders of Claims and Interests and are approved in all respects.

The Debtors have exercised reasonable business judgment consistent with their fiduciary duties

in connection with the Exit Term Loan Facility and the proposed terms and conditions

thereunder have been negotiated in good faith and at arm's length, and without intent to hinder,

delay, or defraud any creditor of the Debtors, and each party thereto may rely upon the

provisions of this Confirmation Order in closing the Exit Term Loan Facility.  The proposed

terms and conditions of the Exit Term Loan Facility, and the financial accommodations extended

thereunder, as well as the issuance by Stripes of the Stripes stock and the Stripes PIK Debt, are

fair and reasonable, do not conflict with applicable law, and are supported by reasonably

equivalent value and fair consideration, and are approved.  The Debtors have provided sufficient

and adequate notice of the Exit Term Loan Facility to all parties in interest in the Chapter 11

Cases.  The Exit Term Loan Documents shall not contain any provisions that: (a) provide for Liens on the Debtors' leasehold interests, provided that the Liens securing the obligations under the Exit Term Loan Facility shall attach to the proceeds of the Debtors' leasehold interests; or (b) grant lenders or their agents the right to access and use the store premises beyond the rights, if any, provided in the applicable lease, by applicable law, or by separate agreements entered into among the applicable landlord and the applicable lenders.

S.      **Exit ABL Facility.**

59.     Based on evidence proffered or adduced at or prior to the Combined Hearing, including the Ackermann Declaration, the Osmun Declaration, and the Confirmation Memorandum, the proposed terms and conditions of the Exit ABL Facility are fair and reasonable.  The Exit ABL Facility and the proceeds thereof are essential elements of the Modified Plan and the Debtors' ability to emerge from chapter 11, and entry into and consummation of the transactions contemplated by the Exit ABL Facility and related documents, including the Exit ABL Documents related thereto, are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests and are approved in all respects.  The Debtors have exercised reasonable business judgment consistent with their fiduciary duties in connection with the Exit ABL Facility and the proposed terms and conditions thereunder have been negotiated in good faith and at arm's length, and without intent to hinder, delay, or defraud any creditor of the Debtors, and each party thereto may rely upon the provisions of this Confirmation Order in closing the Exit ABL Facility. The proposed terms and conditions of the Exit ABL Facility, and the financial accommodations extended thereunder, are fair and reasonable, do not conflict with applicable law, and are supported by reasonably equivalent value and fair consideration, and are approved.  The Debtors have provided sufficient and adequate notice of the Exit ABL Facility to

all parties in interest in the Chapter 11 Cases. The Exit ABL Documents shall not contain any provisions that: (a) provide for Liens on the Debtors' leasehold interests, provided that the Liens securing the obligations under the Exit ABL Facility shall attach to the proceeds of the Debtors' leasehold interests; or (b) grant lenders or their agents the right to access and use the store premises beyond the rights, if any, provided in the applicable lease, by applicable law, or by separate agreements entered into among the applicable landlord and the applicable lenders.

**T.      Expiration of Challenge Period.**

60.      Pursuant to the Final DIP Order, the Challenge Deadline (as defined in the Final DIP Order) expired on November 16, 2018.

**U.      Implementation.**

61.      The restructuring documents contemplated by the Modified Plan, including the Plan Support Agreement, the Exit Term Loan Documents, the Exit ABL Documents and all other relevant and necessary documents (collectively, the "Plan Documents") have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, non-avoidable and enforceable agreements.

**V.      Retention of Jurisdiction.**

62.      Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, the Court, except as otherwise provided in the Modified Plan or herein, shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Modified Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article X of the Modified Plan. Notwithstanding anything to the contrary herein or in the Modified Plan to the contrary, the Court's retention of jurisdiction pursuant to this Confirmation Order or the Modified Plan

shall not govern the enforcement or adjudication of any rights or remedies relating to or arising in connection with the Exit Facilities or the Exit Facilities Documents.

**W.    Waiver of Stay.**

63.    Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) and any other Bankruptcy Rules, if applicable, be waived.

**X.    Satisfaction of Confirmation Requirements.**

64.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Modified Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Y.     Conditions to Effective Date.**

65.     Entry of this Confirmation Order shall satisfy the conditions to the Effective Date set forth in Article IX.A.1 (other than the condition that this Confirmation Order shall have become a Final Order) and Article IX.A.4 of the Modified Plan.  The conditions precedent to the Effective Date set forth in Article IX.A of the Modified Plan may be waived in whole or in part by the Debtors with the prior written approval of the Exit Term Loan Lenders and the Plan Support Parties, without notice, leave, or order of the Court or any formal action.  For the avoidance of doubt, this Confirmation Order does not include or constitute any finding as to the satisfaction of conditions precedent to the effectiveness of the Exit Facility Documents.

**Decrees**

WHEREFORE,  IT  IS  HEREBY  ORDERED,  ADJUDGED,  DECREED  AND DETERMINED THAT:

**A.     Disclosure Statement.**

66.     No solicitations of acceptances were required under the Modified Plan.  The Disclosure Statement contains "adequate information" (as such term is defined in Bankruptcy Code section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Modified Plan, and the transactions contemplated thereby.  Accordingly, the Disclosure Statement is hereby **APPROVED**.

**B.     Confirmation.**

67.     The Modified Plan, attached hereto as **Exhibit A**, is hereby **CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Modified Plan and the Debtors' entry into the Plan Documents and performance thereunder, including, without limitation, the Exit Facility Documents, are hereby authorized and approved.  The Debtors and the Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and

consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Modified Plan, including entry into the Exit Facility Documents. The terms of the Modified Plan, the Plan Documents, and all exhibits thereto, shall be effective and binding as of the Effective Date.

**C.    Objections.**

68.    All objections (including any reservations of rights contained therein) to approval of the Disclosure Statement or Confirmation of the Modified Plan (other than objections as to the payment or amount of the Cure Amounts with respect to any Assumed Contract or Assumed Lease, or the assumption by the Debtors of any Assumed Contract or Assumed Lease) that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, are **OVERRULED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

**D.    References to and Omissions of Plan Provisions.**

69.    References in this Confirmation Order to any article, section, paragraph, or provision of the Modified Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Modified Plan. The failure to specifically include or to refer to any particular article, section, paragraph, or provision of the Modified Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, paragraph, or provision, it being the intent of the Court that the Modified Plan be confirmed in its entirety, except as expressly modified herein, and that the Plan Documents and all exhibits and schedules thereto, and all other agreements, instruments, or other documents filed in connection with the Modified Plan and/or executed or to be executed in connection with

the transactions contemplated by the Modified Plan, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Modified Plan governing such amendments and modifications, are approved in their entirety.

**E.      Headings.**

70.      Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Modified Plan or this Confirmation Order for any other purpose.

**F.      Classifications.**

71.      The terms of the Modified Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.

**G.      Restructuring Transactions; Exit Facilities.**

72.      This Confirmation Order shall and shall be deemed to, pursuant to section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Modified Plan.

**1.      Restructuring Transactions.**

73.      On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Modified Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Modified Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any

01:23872713.1

33

property, right, liability, duty, or obligation on terms consistent with the terms of the Modified Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Reorganized Debtors determine are necessary or appropriate.

### 2.    Exit Facilities.

74.    On the Effective Date, contemporaneously with the repayment in full and termination of the DIP ABL Credit Facility (except for certain letters of credit issued thereunder, which shall be cash collateralized and remain outstanding) and the DIP Term Loan Credit Facility and satisfaction of the DIP Credit Facilities Claims in accordance with Article II.B of the Modified Plan, the Reorganized Debtors will enter into the Exit ABL Facility as provided in the Exit ABL Documents and the Exit Term Loan Facility as provided in the Exit Term Loan Documents, and Stripes will issue the Stripes Stock and the Stripes PIK Debt to the Exit Term Loan Lenders.  Confirmation of the Modified Plan shall constitute this Court's approval of the Exit Facilities and the Exit Facility Documents, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, costs, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents (including any amendments or modifications to the Exit Facility Documents), and such other documents as may be required to effectuate the Exit Facilities, and to enter into amendments to the foregoing documents in accordance with their terms, all without further notice to or order of this Court, or any act or action under applicable law, regulation, order or rule or vote, consent, authorization or approval of any Entity.  Pursuant to section 1142(b) of the Bankruptcy Code and without further action by this Court or by the

shareholders, directors, members or partners of any of the Reorganized Debtors, the Reorganized Debtors are authorized to enter into and implement the Exit Facilities and to execute and deliver the Exit Facility Documents and to take all other actions and execute, deliver, record, and file all other such agreements, documents, instruments, financing statements, mortgages, releases, applications, reports and any changes, additions and modifications thereto in connection with the consummation of the transactions contemplated by the Exit Facilities and the Exit Facility Documents, including, without limitation, the making of such filings, or the recording of such security interests, as may be required by the Exit Facilities and the Exit Facility Documents, and Stripes is directed to issue the Stripes Stock and Stripes PIK Debt to the Exit Term Loan Lenders. Each of the Exit Facility Documents, once executed, shall constitute a legal, valid, binding, non-avoidable and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

75.    The guarantees, mortgages, pledges, Liens and other security interests, and all other consideration granted pursuant to or in connection with the Exit Facilities, including the issuance of the Stripes Stock and the Stripes PIK Debt to the Exit Term Loan Lenders, are or will be (as the case may be) and are hereby deemed to be granted in good faith, for good, valuable, reasonably equivalent consideration and for legitimate business purposes as an inducement to the Lenders (as defined in the Exit Facilities) to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance or recharacterization and shall not subject the Lenders or Agents (each as defined in the Exit Facilities) to any liability by reason of incurrence of such obligation or grant of such guarantees, mortgages, pledges, Liens, or security interests under applicable federal or state law, including, but not limited to, successor or transferee liability.

Notwithstanding anything to the contrary in the Disclosure Statement, the Modified Plan, any other Plan Document or this Confirmation Order (excluding, however, the Exit Facility Documents) or applicable non-bankruptcy law, pursuant to section 1123(a)(5) of the Bankruptcy Code, upon execution and delivery, subject to the occurrence of the Effective Date, the Exit Facility Documents shall create valid, perfected, non-avoidable and first priority Liens on, and security interests in, all of the Debtors' and Reorganized Debtors' assets which secure the obligations under the Exit Facilities, in each case to the extent provided by the Exit Facility Documents, and this Confirmation Order shall be sufficient and conclusive evidence of the first priority, perfection and validity of such Liens, pledges and security interests without the need for any further action including, without limitation, the filing or recording of any financing statements or other documents that may otherwise be required under federal or state law in any jurisdiction.

**H.      No Action.**

76.      Pursuant to the appropriate provisions of section 303 of the Delaware General Corporation Law and section 1142(b) of the Bankruptcy Code, no action of the stockholders, members, managers, or directors of the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Modified Plan and any contract, assignment, certificate, instrument, or other document to be executed, delivered, filed, adopted, amended, restated, consummated, or effectuated, as the case may be, in connection with implementation of the Modified Plan.

01:23872713.1

36

## I.    Immediate Binding Effect.

77.    Pursuant to Article X.A of the Modified Plan, as of the Effective Date, all provisions of the Modified Plan, including all agreements, instruments and other documents filed with the Court in connection with the Modified Plan by the Debtors or the Reorganized Debtors, including the Plan Support Agreement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims against and Interests in the Debtors and each such Holder's respective successors and assigns, and all other parties that are affected in any manner by the Modified Plan, including, without limitation, all non-Debtor parties to Executory Contracts and Unexpired Leases.  Except as otherwise expressly provided in the Modified Plan or this Confirmation Order, all agreements, instruments, and other documents filed in connection with the Modified Plan, including the Plan Support Agreement, shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.  Entry of this Confirmation Order shall constitute a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

## J.    Implementation of the Plan.

78.    The provisions of Article V of the Modified Plan governing the means for implementation of the Modified Plan are hereby approved in their entirety. Prior to, on, and after the Effective Date, the Debtors and the Reorganized Debtors, and the directors, managers, officers, and authorized persons thereof, are authorized to and may issue, execute, deliver, file or record such contracts, instruments, releases, and other agreements and documents and take such

actions may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Modified Plan and the Exit Facility Documents, without the need for any further approvals, authorizations, or consents except for those expressly required pursuant to the Modified Plan, the Plan Support Agreement, or the Exit Facility Documents.

**K.    Plan Support Agreement.**

79.    The Debtors shall assume the Plan Support Agreement, and the Plan Support Agreement is hereby assumed, under section 365 of the Bankruptcy Code, and the Debtors are authorized and directed to perform their obligations thereunder.    The Plan Support Agreement shall be enforceable and binding upon the Debtors and the Reorganized Debtors.

**L.    Exemption from Certain Transfer Taxes.**

80.    To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, consistent with Article V.I of the Modified Plan, any transfers of property pursuant to the Modified Plan (including, without limitation, the execution and delivery of the Exit Facilities) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.  Notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Notice of Confirmation Order"), (a) shall have the effect of an order of the Court, (b) shall constitute sufficient notice of the entry of this Confirmation Order to such state

or local governmental officials or agents, and (c) shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

**M.      Return of Adequate Assurance Deposits.**

81.      All utilities, including any Entity that received a deposit or other form of adequate assurance of future performance under section 366 of the Bankruptcy Code during the Chapter 11 Cases under the *Final Order (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Utility Service, (II) Determining Adequate Assurance of Payment for Future Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, (IV) Authorizing the Debtors to Honor Obligations to Payment Processors in the Ordinary Course of Business, and (V) Granting Related Relief* [Docket No. 747], entered by the Court on November 7, 2018, shall return such funds to the Debtors or the Reorganized Debtors, as applicable, either by setoff against post-petition indebtedness or by cash refund, within thirty (30) days following the Effective Date.

**N.      Cancellation of Liens.**

82.      Except as otherwise provided in the Modified Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Modified Plan, on the Effective Date, in consideration for the distributions to be made on the Effective Date pursuant to the Modified Plan, all Liens, charges, and encumbrances related to any Claim (other than any Lien securing an Other Secured Claim, solely to the extent such Claim is Reinstated pursuant to the Modified Plan), shall be terminated, null and void and of no force or effect.  Each Holder of an Allowed Other Secured Claim (solely to the extent such Claim is not Reinstated pursuant to the Modified Plan), an Allowed Prepetition ABL Claim, and/or an Allowed Prepetition Term Loan Claim shall be authorized and directed to

release any collateral or other property of the Debtors (including any Cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of any Lien, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).  The Debtors (or the Reorganized Debtors, as the case may be) and any of their respective agents, attorneys or designees, shall be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, intellectual property assignments, mortgage or deed of trust releases, or such other forms or release documents as may be necessary or appropriate to implement this provision.

83.    To the extent that any Holder of an Allowed Other Secured Claim (solely to the extent such Claim is not Reinstated pursuant to the Modified Plan), an Allowed Prepetition ABL Claim, or an Allowed Prepetition Term Loan Claim that has, in each case, been discharged in full pursuant to the Modified Plan, or any agent for such Holder, has publicly filed or recorded any Liens and/or security interests to secure such Holder's Secured Claim, then such Holder (or the agent for such Holder) shall, as soon as practicable on or after the Effective Date, take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit ABL Agent or the Exit Term Loan Agent (solely in their respective capacities as such) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**O.      Preservation of Rights of Action and Settlement of Ordinary Litigation Claims.**

84.      In accordance with section 1123(b)(3) of the Bankruptcy Code, but subject to the releases set forth in Article X.D.1 of the Modified Plan, all Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of, the Court.  **No Entity may rely on the absence of a specific reference in the Modified Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Modified Plan**, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of, the Confirmation or the occurrence of the Effective Date.  Notwithstanding any provision in this Plan or any Final Order entered in the Chapter 11 Cases, the Debtors and Reorganized Debtors forever waive, relinquish, and release any and all Causes of Action the Debtors and their Estates had, have, or may have that arise under sections 544, 547, 548 and/or 549 of the Bankruptcy Code against any non-Debtor counterparties to an Executory Contract or Unexpired Lease or any trade vendor with which the Debtors were conducting business as of the Petition Date.

01:23872713.1

P.    **Corporate Action.**

85.    On the Effective Date, all other actions contemplated by the Modified Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors, the Reorganized Debtors, or any other Entity, including: (a) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (b) the execution of and entry into the Exit ABL Documents and the Exit Term Loan Documents; and (c) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Modified Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Modified Plan involving the company structure of the Debtors or the Reorganized Debtors, and any company action required by the Debtors or the Reorganized Debtors in connection with the Modified Plan (including the Plan Support Agreement), shall be deemed to have timely occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

Q.    **Continued Legal Existence.**

86.    Except as otherwise provided in the Modified Plan, each of the Debtors shall continue to exist on and after the Effective Date as a separate corporation, limited liability company, or other form of Entity, as the case may be, with all of the powers of such Entity under applicable law in the jurisdiction in which each Debtor is organized, incorporated, or otherwise formed and pursuant to such Debtor's articles of incorporation or formation, operating agreement, by-laws (or other analogous formation and governance documents) in effect immediately prior to the Effective Date (provided that such organizational documents shall be

amended to prohibit the Reorganized Debtor from issuing non-voting equity securities, to the extent necessary to comply with section 1123(a) of the Bankruptcy Code), without prejudice to any right of the Reorganized Debtors to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**R.      Vesting of Assets in the Reorganized Debtors.**

87.      Except as otherwise explicitly provided in the Modified Plan, on the Effective Date, all property comprising the Estates—including, without limitation, all Causes of Action not released pursuant to Article X.D.1 of the Modified Plan, all Assumed Contracts and Assumed Leases, and any property acquired by any of the Debtors, but excluding all Remaining Property that has been abandoned pursuant to an order of the Court (including without limitation, Remaining Property abandoned under the Lease Rejection Procedures Order)—shall vest in each respective Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided by the Modified Plan, this Confirmation Order, and excepting the Liens, Claims and charges arising under the Exit Facility Documents.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

**S.      Specified Unimpaired Claims.**

88.      Notwithstanding anything to the contrary in the Modified Plan, each Holder of an Allowed Other Priority Claim in Class 1, an Allowed Other Secured Claim in Class 2, an Allowed General Unsecured Claim in Class 5 other than a Rejection Damages Claim or an Intra-Group Loan Claim, an Allowed Intercompany Claim in Class 6, or an Allowed Priority Tax

Claim (each such Allowed Claim, a "Specified Unimpaired Claim") shall be entitled to enforce its rights in respect of such Specified Unimpaired Claim against the Reorganized Debtors until such Specified Unimpaired Claim has been either (a) paid in full in accordance with applicable law, or on terms agreed to between the Holder of such Specified Unimpaired Claim and the Debtors or Reorganized Debtors, or in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Specified Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. **Holders of Specified Unimpaired Claims shall not be required to file a Proof of Claim with the Court and shall retain all their rights under applicable non-bankruptcy law to pursue their Specified Unimpaired Claims in any forum with jurisdiction over the parties.** If the Debtors or the Reorganized Debtors dispute any Specified Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

**T.      Rights and Defenses of the Debtors and the Reorganized Debtors.**

89.      The Debtors and the Reorganized Debtors shall retain all rights and defenses, both legal and equitable, under the Bankruptcy Code or other applicable bankruptcy and non-bankruptcy law with respect to any Unimpaired Claim (other than the power to Impair such Claim within the meaning of section 1124 of the Bankruptcy Code), including, but not limited to, legal and equitable rights of setoff and/or recoupment with respect to the Unimpaired Claims; provided, however, that (x) the foregoing shall not apply with respect to the Prepetition ABL Claims and the Prepetition Term Loan Claims, which are Allowed in full under the Modified Plan without defenses, counterclaims, setoff or recoupment, and (y) for the avoidance of doubt, neither the Debtors, the Reorganized Debtors, or any other Entity shall retain such rights and defenses with respect to (i) any Causes of Action held by the Debtors or their Estates or the

Reorganized Debtors that are released pursuant to Article X.D.1 of the Modified Plan, (ii) any Causes of Action held by the Debtors or their Estates or the Reorganized Debtors that are released pursuant to Article V.H of the Modified Plan (clauses (i) and (ii), together, the "Debtor Released Claims") or (iii) any Claims or Causes of Action released by certain Holders of Claims pursuant to Article X.D.2 of the Modified Plan (the "Third Party Released Claims"). Such Debtor Released Claims and Third Party Released Claims shall be deemed settled, satisfied, resolved, released, discharged, barred and enjoined by the applicable provisions under, and pursuant to the express terms of, the Modified Plan on the Effective Date.

**U.     Reinstated Claims.**

90.     Notwithstanding anything to the contrary in the Modified Plan or this Confirmation Order, nothing shall affect, diminish, or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim, including, but not limited to, legal and equitable rights of setoff and/or recoupment against the Holders of any Reinstated Claims; provided, however, that the foregoing shall not apply with respect to any Prepetition ABL Claims and the Prepetition Term Loan Claims, which are Allowed in full under the Modified Plan without defenses, counterclaims, setoff or recoupment. Additionally, and notwithstanding anything contained in the Modified Plan to the contrary, any Unimpaired Claim in Classes 1, 2 or 5 (other than a Claim in Class 5 arising from the rejection of an Unexpired Lease) not paid in full in Cash by the Debtor on the Effective Date (or as soon thereafter as reasonably practicable) shall constitute a Reinstated Claim.

**V.     Professional Fee Claims.**

91.     All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 328, 330, 331, 503(b) and/or section 1103 of the Bankruptcy Code

for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Cases) shall file and serve final requests for allowance and payment of Professional Fee Claims no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for a hearing on twenty-one (21) days' notice by the Professional asserting such Professional Fee Claim. The Reorganized Debtors shall promptly pay all amounts owed on account of Professional Fee Claims upon entry of an order of the Court allowing such Claims on a final basis.

**W.    DIP Facilities Claims.**

92.    On the Effective Date, each Holder of an Allowed DIP Credit Facilities Claim shall receive, on account of and in full and final satisfaction, settlement, release, and discharge of each Allowed DIP Credit Facilities Claim, indefeasible payment in full in Cash as contemplated by Article II.B of the Modified Plan. Upon the payment or satisfaction of the Allowed DIP Credit Facilities Claim in accordance with Article II.B of the Modified Plan, all Liens and security interests granted to secure the Allowed DIP Credit Facilities Claim will be automatically terminated and of no further force or effect without any further notice to or action, order, or approval of, the Court or any other Entity.

## X.    Treatment of Executory Contracts and Unexpired Leases.

### 1.    Assumption of Executory Contracts and Unexpired Leases.

93.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article VI of the Modified Plan, including the procedures regarding the resolution of any and all disputes concerning the assumption of such Executory Contracts and Unexpired Leases, are hereby approved in their entirety.  Pursuant and subject to Article VI.A of the Modified Plan, as of the Effective Date, all Executory Contracts or Unexpired Leases, including the Plan Support Agreement, shall be assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365(a) and 1123 of the Bankruptcy Code, unless any such Executory Contract or Unexpired Lease: (a) has previously been rejected by a Final Order of the Court; (b) has previously been rejected by an order of the Court as of the Confirmation Date, which order becomes a Final Order after the Confirmation Date; (c) is the subject of a Rejection Motion or Lease Rejection Notice pending as of the Confirmation Date and is subsequently rejected by a Final Order of the Court; or (d) is identified on the Schedule of Post-Effective Date Negotiated Leases as an Unexpired Lease as to which the counterparty has consented in writing to the Debtors' deferral of their decision to assume or reject for the pendency of the Post-Effective Date Lease Negotiation Period; provided, however, that the Debtors or the Reorganized Debtors, as applicable, may assume any Unexpired Lease identified on the Schedule of Post-Effective Date Negotiated Leases at any time before termination of the Post-Effective Date Lease Negotiation Period on such terms as may be agreed with the relevant counterparty thereto.  Any provision in any Assumed Contract or Assumed Lease that prohibits or conditions the assumption and assignment of any such Assumed Contract or Assumed Lease or allows the party to any such Assumed Contract or Assumed Lease to

terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and assignment of any such Assumed Contract or Assumed Lease, constitutes an unenforceable anti-assignment provision that is void and of no force or effect in connection with the Reorganized Debtors' assumption of any such Assumed Contract or Assumed Lease pursuant to the Modified Plan and this Confirmation Order; therefore, consummation of the transactions contemplated by the Modified Plan shall not entitle the non-Debtor party to any Assumed Contract or Assumed Lease to exercise any default-related rights with respect thereto.  This Confirmation Order shall constitute an order of the Court under sections 365 and 1123 of the Bankruptcy Code approving the assumptions of Assumed Contracts and Assumed Leases (including the Plan Support Agreement), as described herein, as of the Effective Date.

94.    With respect to any Assumed Leases, nothing in the Modified Plan or this Confirmation Order shall affect or modify the rights, if any, of any counterparty to such Assumed Leases to assert any right of setoff, subrogation or recoupment that such counterparties may have under applicable law, or the obligation of the Debtors or the Reorganized Debtors to pay to the counterparties to such Assumed Leases, whether accruing prior to or after the effective date of assumption of Assumed Leases, any: (1) amounts owed under such Assumed Leases that are unbilled or not yet due as of the date of the Cure Notice for common area maintenance, other maintenance or repair obligations, insurance, taxes, and similar charges, and any regular or periodic year-end adjustments and reconciliations of such charges provided for under the terms of the Assumed Leases, as such charges become due in accordance with the terms of the Assumed Leases; (2) percentage rent not currently in default that may come due under the Assumed Leases as such charges become due in accordance with the terms of the Assumed

01:23872713.1

Leases; (3) undisputed and unpaid Cure Amounts under the Modified Plan; or (4) any other obligations under the Assumed Leases, including, without limitation, indemnification obligations, regardless of the period to which such obligations may relate. Notwithstanding anything to the contrary in the Modified Plan or this Confirmation Order, and for the avoidance of doubt: (a) in the event of an inconsistency between this Confirmation Order, the Modified Plan, and any Assumed Lease, and except to the extent there continues to be a dispute regarding the Cure Amount under an Assumed Lease, the terms of each Assumed Lease and all obligations arising or coming due thereunder (including with respect to any indemnification provisions), as applicable, shall control; (b) Assumed Leases shall become the obligations of the Reorganized Debtors as of the Effective Date; and (c) all obligations arising or coming due under the Assumed Leases after the Effective Date will be assumed by the Reorganized Debtors, and all valid setoff rights with respect thereto will be reserved and preserved.

### 2.    Cure Amounts.

95.    The Debtors or the Reorganized Debtors, as applicable, and the counterparties to Assumed Leases shall use commercially reasonable efforts to consensually resolve any disputed Cure Amounts. If the parties determine, after having made commercially reasonable efforts to consensually resolve the disputed Cure Amounts, that they cannot resolve the dispute without judicial intervention, then the Debtors or the Reorganized Debtors, on the one hand, or the non-Debtor counterparty to the relevant Assumed Lease, on the other hand, may, on at least twenty-one (21) days' notice to the other party, file with the Court and serve on the other party a notice of hearing on the disputed Cure Amounts at a previously-scheduled omnibus hearing in the Chapter 11 Cases. A status conference regarding the resolutions of disputed Cure Amounts shall be held at the omnibus hearing scheduled for November 27, 2018 at 12:00 p.m. (prevailing

Eastern Time), or, in the event such omnibus hearing is adjourned by the Debtors, no later than the next-scheduled omnibus hearing in the Chapter 11 Cases.

96.    The Reorganized Debtors shall pay the undisputed portion of all Cure Amounts under any Assumed Lease, including October 2018 rent payments, no later than fourteen (14) days following the Effective Date. The Reorganized Debtors' assumption of any Assumed Lease pursuant to the Modified Plan and their payment in full of all Cure Amounts under any Assumed Lease shall be deemed to cure all defaults, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Lease at any time prior to the effective date of assumption. In the event of a dispute as to any Cure Amount, the Reorganized Debtors shall pay the disputed portion of the Cure Amount upon the earlier of (a) a settlement of such dispute between the Reorganized Debtors and the relevant counterparty and (b) entry of a Final Order resolving such dispute.

97.    The Cure Notice served by the Debtors on each counterparty to an Unexpired Lease listed the Cure Amount that the Debtors believe must be paid to cure all defaults under the Unexpired Leases, except for amounts that were not yet reconciled and billed as of the date of the Cure Notice, which amounts will be paid in the ordinary course of business under the applicable Unexpired Lease (provided that such Unexpired Lease is actually assumed by the Debtors). Any objection by an Unexpired Lease counterparty to a proposed Cure Amount listed on the Cure Notice was required to be filed and served so as to be actually received by the Debtors no later than 4:00 p.m. (prevailing Eastern Time) on November 2, 2018. Any counterparty to an Unexpired Lease that failed to timely object to the Cure Amount is deemed to have assented to such Cure Amount; provided, however, that nothing in the Plan or this Confirmation Order shall prejudice any such Unexpired Lease counterparty's rights to assert a

Claim for (a) additional amounts not yet reconciled and billed as of the date of the Cure Notice and/or (b) defaults that occur between the date of the Cure Notice and the Effective Date.

98.    Any Cure Amount shall be deemed fully satisfied, released, and discharged upon payment by the Debtors of any one of the following: (a) with respect to Unexpired Leases only, the Cure Amount listed on the Cure Notice (if no objection to the Cure Amount is filed within the applicable objection period) and any additional amounts that were not yet reconciled and billed as of the date of the Cure Notice; (b) the Cure Amount agreed to by the Debtors and the applicable counterparty; or (c) entry of a Final Order fixing such Cure Amount; provided, however, that nothing in the Modified Plan or this Confirmation Order shall prevent the Reorganized Debtors from paying any Cure Amount despite the failure of the relevant counterparty to file such request for payment of such Cure Amount. The Reorganized Debtors may settle any Cure Amount without any further notice to or action, order, or approval of, the Court.

99.    Unless otherwise determined by the Court pursuant to a separate Final Order or otherwise agreed to by the parties prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Executory Contract assumed pursuant to the Modified Plan. The requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and the only required adequate assurance of future performance of any Executory Contract that is assumed in connection with the Modified Plan shall be the promise of the Reorganized Debtor to perform all obligations under any Executory Contract under the Modified Plan.

01:23872713.1

### 3.    Rejection of Unexpired Leases.

100.    October 2018 rent payments for all Unexpired Leases, including for rejected Unexpired Leases, will be made no later than fourteen (14) days following the Effective Date unless otherwise agreed by the Debtors and the applicable counterparty.  Pursuant to Article VII.B of the Modified Plan, **Proofs of Claim with respect to Rejection Damages Claims must be filed with the Claims and Noticing Agent no later than the Rejection Damages Claims Bar Date**.  The Debtors shall specify the Rejection Damages Claims Bar Date in the notice that all conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with Article IX of the Modified Plan, substantially in the form attached hereto as **Exhibit C** (the "Notice of Effective Date").  Any Rejection Damages Claim not filed within such time shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their properties, or any of their interests in properties as agent, successor or assign, without the need for any objection by the Reorganized Debtors, or further notice to, or action, order, or approval of the Court or any other Entity, and any such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged, notwithstanding a Proof of Claim to the contrary.  Nothing in the Modified Plan or this Confirmation Order shall affect the rights, if any, of any counterparty to any rejected Unexpired Lease, on the one hand, or the Debtors or the Reorganized Debtors, on the other hand, to assert any right of setoff, subrogation or recoupment (or defenses thereto) that such counterparties may have under applicable law, which rights and defenses shall survive the Effective Date.

01:23872713.1

**Y.      Application of 11 U.S.C. § 502(b)(6).**

101.    All Claims for damages resulting from the termination or rejection of a lease of real property shall be Allowed under the Modified Plan only to the extent provided under section 502(b)(6) of the Bankruptcy Code.

**Z.      Claims Reconciliation Process.**

102.    Any objection to a Rejection Damages Claim shall be filed and served no later than 180 days after the applicable Rejection Damages Bar Date, subject to extension by order of the Court, and any objection to a Claim other than a Rejection Damages Claim for which a Proof of Claim is filed with the Court or with the Claims and Noticing Agent shall be filed and served no later than 30 days after the Effective Date; provided, however, that the Debtors and the Reorganized Debtors may contest the amount and validity of any disputed, contingent, or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced.

**AA.     Survival of Indemnification Obligations.**

103.    Notwithstanding anything in the Modified Plan to the contrary, each Indemnification Obligation shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise. Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose. For the avoidance of doubt, Article VI.E of the Modified Plan affects only the obligations of the Debtors and Reorganized Debtors with respect to any Indemnification Obligations owed to or for the benefit of past and present

directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Entity owed to or for the benefit of such directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors.

**BB.    Procedures for Resolving Disputed Claims.**

104.    The procedures for resolving disputed claims contained in Article VII of the Modified Plan are hereby approved in their entirety.  The Debtors and the Reorganized Debtors are authorized, consistent with the terms of the Modified Plan and this Confirmation Order, to settle, pay, or otherwise resolve Claims, and the Court shall, except as otherwise provided in the Modified Plan or this Confirmation Order, retain jurisdiction to resolve, at the request of the Debtors or the Reorganized Debtors, any such Claims that the Debtor or Reorganized Debtor is unable to resolve consensually with the Holders thereof.

**CC.    Distributions under the Plan.**

105.    The provisions governing distributions contained in Article VIII of the Modified Plan are hereby approved in their entirety.

**DD.    Discharge, Release, Exculpation, and Injunction and Related Provisions.**

106.    The discharge, release, exculpation, injunction, and related provisions set forth in Article X of the Modified Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Entities to the extent provided therein.

**1.    Discharge.**

107.    The provisions of Article X.C of the Modified Plan are approved and authorized and are incorporated by reference as if fully set forth herein, and such provisions are effective

and binding on all Entities to the extent provided therein. Without limiting the foregoing and except as expressly provided in the Modified Plan or this Confirmation Order (including to the extent any Claims are Reinstated under the Modified Plan), all consideration distributed under the Modified Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and, regardless of whether any property shall have been abandoned by order of the Court, retained, or distributed pursuant to the Modified Plan on account of such Claims, upon the Effective Date, each of the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (d) the Holder of a Claim based upon such debt is deemed to have accepted the Modified Plan.

## 2.    Discharge Injunction.

108.    As of the Effective Date, except as expressly provided in the Modified Plan or this Confirmation Order (including to the extent any Claims are Reinstated under the Modified Plan or otherwise survive the Effective Date, including, without limitation, pursuant to Article VII.A of the Modified Plan), all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors any Claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors that have been released, discharged, or exculpated pursuant to the Modified Plan and which are based upon any act, omission, transaction,

occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as explicitly provided in the Modified Plan or this Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all Claims and other debts and liabilities against the Debtors pursuant to section 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim.

**3.      Releases by the Debtors.**

109.    The provisions of Article X.D.1 of the Modified Plan are approved and authorized and are incorporated by reference as if fully set forth herein, and such provisions are effective and binding on all Entities to the extent provided therein.

**4.      Releases by Certain Holders of Claims.**

110.    The provisions of Article X.D.2 of the Modified Plan are approved and authorized and are incorporated by reference as if fully set forth herein, and such provisions are effective and binding on all Entities to the extent provided therein.

**5.      Exculpation.**

111.    The provisions of Article X.E of the Modified Plan are approved and authorized and are incorporated by reference as if fully set forth herein, and such provisions are effective and binding on all Entities to the extent provided therein. Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the reasonable and informed advice of counsel with respect to their duties and responsibilities under the Modified Plan.

**6.      Injunctions Related to Releases.**

112.    The provisions of Article X.F.1 of the Modified Plan are approved and authorized and are incorporated by reference as if fully set forth herein, and such provisions are effective

and binding on all Entities to the extent provided therein. Without limiting the foregoing and except as expressly provided in the Modified Plan or this Confirmation Order (including to the extent any Claims are Reinstated under the Modified Plan or otherwise survive the Effective Date, including, without limitation, pursuant to Article VII.A of the Modified Plan), as of the Effective Date, all Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action or liability of any nature whatsoever, of the types described in Article X.D.2 of the Modified Plan and relating to the Debtors, the Reorganized Debtors or any of their respective assets and property and/or the Estates, the Chapter 11 Cases, the Plan Support Agreement, the DIP Credit Facilities, the Intra-Group Loan Guarantees, the Exit Facilities, the Modified Plan and/or the Disclosure Statement are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.C of the Modified Plan; and/or (e)

01:23872713.1

commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Modified Plan or this Confirmation Order.

### 7.    Injunctions Related to Exculpation.

113.    The provisions of Article X.F.2 of the Modified Plan are approved and authorized and are incorporated by reference as if fully set forth herein, and such provisions are effective and binding on all Entities to the extent provided therein.  Without limiting the foregoing and except as expressly provided in the Modified Plan or this Confirmation Order, as of the Effective Date, all Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action or liability of any nature whatsoever, of the types described in Article X.E of the Modified Plan and relating to the Debtors, the Reorganized Debtors or any of their respective assets and property and/or the Estates, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation

against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.C of the Modified Plan; and/or (e) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Modified Plan or this Confirmation Order.

**EE.    Setoff and Recoupment.**

114.    Except with respect to the Prepetition ABL Claims and the Prepetition Term Loan Claims, which are Allowed in full under the Modified Plan without defenses, counterclaims, setoff or recoupment, the Reorganized Debtors may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to the Modified Plan in respect of such Claim, or claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; provided, however, that, prior to any set off and/or recoupment by the Debtors or the Reorganized Debtors against any Claim arising prior to the Effective Date, the Debtors shall provide ten (10) days' written notice to the Holder of such Claim, and such Holder shall, before the expiration of such ten-day period, be entitled to challenge the Debtors' action in this Court or any other court of competent jurisdiction; provided further, however, that neither the failure to assert rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any claim that the Debtors or the Reorganized Debtors may assert against any Holder of an Allowed Claim, and all setoff and/or recoupment claims of the Debtors and/or the Reorganized Debtors are hereby preserved.

**FF.    Term of Injunctions or Stays.**

115.    Unless otherwise expressly provided in the Modified Plan, this Confirmation Order, or a separate order of the Court, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Modified Plan or this Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Modified Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**GG.    Payment of Statutory Fees.**

116.    All fees payable pursuant to 28 U.S.C. § 1930, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code or as agreed to by the U.S. Trustee and the Reorganized Debtors shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  The Reorganized Debtors shall file with the Court quarterly reports in a form reasonably acceptable to the U.S. Trustee until the entry of a final decree pursuant to Bankruptcy Rule 3022 to close the Chapter 11 Cases of such Reorganized Debtors.

**HH.    Reversal or *Vacatur* of Confirmation Order.**

117.    If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or *vacatur* shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Modified Plan prior to receipt of written notice of such order by the Debtors. Notwithstanding any such reversal, modification, or *vacatur* of this Confirmation Order, any such acts or obligations incurred or undertaken pursuant to, and in

01:23872713.1

reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or *vacatur* shall be governed in all respects by the provisions of this Confirmation Order, the Modified Plan, all documents relating to the Modified Plan, including the Plan Documents, and any amendments or modifications to any of the foregoing.

## II.    Retention of Jurisdiction.

118.    Notwithstanding the entry of this Confirmation Order, the occurrence of the Effective Date, or the closing of the Chapter 11 Cases, and without limiting any other retention of jurisdiction set forth in this Confirmation Order, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise explicitly provided in the Modified Plan or this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent permitted by law, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Modified Plan.

## JJ.    Post-Confirmation Modifications.

119.    Subject to the limitations set forth in the Modified Plan, and subject to the terms of the Plan Support Agreement, after entry of this Confirmation Order but prior to the substantial consummation of the Modified Plan the Debtors may alter, amend, or modify the Modified Plan in accordance with section 1127(b) of the Bankruptcy Code; provided, however, that the Debtors shall file any such altered, amended or modified version of the Plan on the docket of the Chapter 11 Cases concurrently with the Notice of Effective Date.  Notwithstanding the foregoing, subject to the terms of the Plan Support Agreement and the Exit Facilities, the Debtors are authorized to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Modified Plan, the Plan Documents, and this Confirmation Order.

**KK.    Resolutions to Objections and Comments of Certain Non-Debtor Entities.**

   **1.    Reservation of Rights in Favor of Governmental Units.**

   120.    Notwithstanding any provision in the Modified Plan, this Confirmation Order or the related Plan Documents, nothing discharges or releases the Debtors and Reorganized Debtors or any non-debtor from any claim, liability or cause of action of the United States or any State, or impairs the ability of the United States or any State to pursue any claim, liability, right, defense or cause of action against any Debtor, Reorganized Debtor or non-debtor.  Contracts, leases, licenses, permits, covenants, guaranties, indemnifications, operating rights agreements or other interests or agreements with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All claims, liabilities, rights, causes of action, or defenses of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; provided, that nothing in the Modified Plan or this Confirmation Order shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under nonbankruptcy law with respect to any such claim, liability or cause of action. Without limiting the foregoing, for the avoidance of doubt: (i) the United States and any State shall not be required to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any claim, liability or cause of action; (ii) nothing shall affect or impair the exercise

01:23872713.1

62

of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) nothing shall be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, leases, licenses, permits, guaranties, indemnifications, grants, agreements or interests; (iv) nothing shall affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; and (v) nothing shall constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law.

### 2.    United States Securities and Exchange Commission.

121.    Notwithstanding any language to the contrary contained in the Modified Plan and/or this Confirmation Order, no provision of the Modified Plan or this Confirmation Order shall (a) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

### 3.    Chubb Insurance Program.

122.    Notwithstanding anything to the contrary in this Confirmation Order, the Modified Plan, the Disclosure Statement, the Plan Support Agreement, or any other document related to any of the foregoing or any other order of the Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release, requires a party to opt out of any releases, or confers Bankruptcy Court jurisdiction): (a) on the Effective Date, the Reorganized Debtors jointly and severally shall assume all insurance policies

01:23872713.1

which were previously issued by ACE American Insurance Company, ACE Indemnity Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, Westchester Fire Insurance Company, Federal Insurance Company, Vigilant Insurance Company, and Executive Risk Indemnity Inc. (collectively with their affiliates and successors, "Chubb") to or providing coverage to any of the Debtors or any of their affiliates or predecessors, all extensions and renewals thereof, and all agreements, documents or instruments related thereto (each as amended, modified or supplemented and including any exhibit or addenda thereto, collectively, the "Chubb Insurance Program") in their entirety pursuant to sections 105 and 365 of the Bankruptcy Code; (b) on and after the Effective Date, the Reorganized Debtors shall be substituted for the Debtors for purposes of responsibility for all of the obligations of the Debtors under the Chubb Insurance Program (regardless of whether such obligations arise before or after the Effective Date) without the need or requirement for Chubb to file or serve any objection to a notice of proposed cure Claim (or lack of such notice) or file or serve a request, motion, or application for payment of or proof of any Claim or Administrative Expense Claim (and further and for the avoidance of doubt, any Claim bar date or similar deadline or provision of the Modified Plan governing a cure Claim or Administrative Expense Claims shall not be applicable to Chubb); (c) nothing alters, modifies or otherwise amends the terms and conditions of Chubb Insurance Program including, but not limited to, any agreement to arbitrate disputes; all rights and obligations under the Chubb Insurance Program shall be determined under the terms thereof and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred; and (d) nothing releases or discharges the Obligations due and owing to Chubb arising from or pursuant to the Chubb Insurance Program.

01:23872713.1

LL.    **Management Incentive Plan.**

123.    Nothing in the Plan or this Confirmation Order shall or shall be deemed to approve or authorize the terms of the Management Incentive Plan, the terms of which shall become effective only after the Effective Date and which is a post-bankruptcy incentive plan and provides no awards for actions taken by any of the Debtors' employees during the Chapter 11 Cases.

**MM.    Governmental Approvals Not Required.**

124.    Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Modified Plan and the Disclosure Statement, and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Modified Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

**NN.    Waiver of Filing Requirements and Cancellation of Section 341 Meeting.**

125.    Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for post-confirmation reporting obligations to the U.S. Trustee), including, without limitation, any requirement that the Debtors file any statements of financial affairs or schedules of assets and liabilities, is waived as to any such list, schedule, or statement not filed as of the entry of this Order.    Additionally, the requirement that the U.S. Trustee convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is waived.

**OO.    Notices of Entry of Confirmation Order and Occurrence of the Effective Date.**

126.    Pursuant to Bankruptcy Rules 2002 and 3020(c), (a) as soon as reasonably practicable after the entry of this Confirmation Order, the Debtors shall serve the notice of the Court's entry of this Confirmation Order, substantially in the form annexed hereto as **Exhibit B** (the "Notice of Confirmation Order"), and (b) as soon as reasonably practicable after the occurrence of the Effective Date, the Debtors shall serve the Notice of Effective Date, together with a copy of the Opt-Out Election Form, substantially in the forms annexed hereto as

**Exhibit C**.  The Notice of Confirmation Order and the Notice of Effective Date shall be served on the U.S. Trustee and other parties in interest, including, without limitation, creditors, equity interest holders, and any party subject to the injunction provisions of Article X of the Modified Plan.  Such notices are approved and are hereby deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

## PP.    Plan and Confirmation Order Nonseverable and Mutually Dependent.

127.    The provisions of the Modified Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

## QQ.    Confirmation Order Supersedes.

128.    It is hereby ordered that this Confirmation Order shall supersede any Court orders issued in the Chapter 11 Cases prior to the Confirmation Date that may be inconsistent with this Confirmation Order, in each case solely to the extent of the inconsistency.

## RR.    Recording.

129.    The Debtors and the Reorganized Debtors hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Modified Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer, and such officer shall accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Court and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

01:23872713.1

**SS.    Documents, Mortgages, and Instruments.**

130.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Modified Plan, the transactions contemplated thereby, and this Confirmation Order.

**TT.    Substantial Consummation.**

131.    Substantial consummation of the Modified Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**UU.    Conflicts Between This Confirmation Order and the Modified Plan.**

132.    To the extent that any provision of the Disclosure Statement or any other order of the Court (other than this Confirmation Order) referenced in the Modified Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing) conflicts with or is in any way inconsistent with any provision of the Modified Plan, the Modified Plan shall govern and control. To the extent that any provision in the Modified Plan conflicts with or is in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

**VV.    Applicable Non-Bankruptcy Law.**

133.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Modified Plan and any related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**WW.    Effectiveness of Confirmation Order; Final Order.**

134.    For good cause shown, notwithstanding Bankruptcy Rules 3020(e) and 6004(h), or any other provision of the Bankruptcy Code or the Bankruptcy Rules, this Confirmation Order

01:23872713.1

shall be effective immediately. This Confirmation Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon entry hereof.

## XX.    The Record.

135.    The record of the Combined Hearing is closed.

Dated: November 16, 2018
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:23872713.1